62,970-06

In The Court of Criminal Appeals
of Texas

No. WR-62,970-06

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 12 2015

Abel Acosta, Clerk

In Re; Michael Dean Perry, Relator

Motion To Supplement Record with Habeas
Corpus 11.07, Count II B, Memorandum of Law,
Affidavits, Exhibits, Exhibit list, Appendix

To The Honorable Justices of The Court of Criminal Appeals;

now comes Michael Dean Perry, Relator, pro se, and in forma pauperis, in
The above styled and numbered cause and files This, his supplement to his
Writ of Mandamus in support of his previously filed Writ of Habeas Corpus
Art. 11.07 of the Code of Criminal Procedures of Texas, and for good cause
Relator would show this honorable Court The following;

1. Relator avers That he will now submit his Writ of Habeas Corpus Art. 11.07
Count II paragraph B That he previously filed in the 188th District Court on
June 1, 2015. The same Writ Application That was discarded by the assistant
District Attorney. Included will be the Memorandum of Law for both
Counts, Count I and Count II B. Also included will be the Exhibits List of
70 exhibits, but only part of the exhibits will be included at This time
as Appendix A. Less they be discarded as well. (Witness Affidavits.)

1.

Included in Appendix A, Will be an Affidavit by Tanya Reed to the State bar of Texas, Alanna Mckinney's Affidavit exhonerating Relator, Letters written to Relator from Alanna Mckinney trying to tell the truth, Wilma Mckinney's Affidavit of No Search Warrant, Police this conduct, Police Report, False Probable Cause Affidavit. And acknowledgment by the District Clerk of the Rules regarding the processing of the Writ of Habeas Corpus.

2. Appendix B will include evidence of one delay after another in and of Relators Appeal. And a Mandate issued by the Sixth Court of Appeals acknowledging the fact that Relator is indigent Whereas, The Court Notes That The appellant, Michael Perry, has adequately indicated his inability to pay costs of appeal. Therefore, We waive payment of costs. Exhibit #5

3. Relator avers that not only have respondents, and even his Court appointed attorney on appeal, unnecessarily delayed his right of Appeal and Rights to Due Process over and over again and continue to do so unimpeded, but respondents have created an unnecessary financial burden upon Relator. As evident by this White paper. Relator is Completely indigent. No writing paper, No postage stamps, and No help from anyone at this time. Relator avers that he will have to use the Prison systems indigent program in order to Continue to file papers and motion in his appeal. Furthermore, Relator is of the belief that the Respondents should bear the costs of all the additional expense due to the discarding of his Writ of Habeas Corpus and Evidence. Including Relators Labor costs. See also Exhibit #5 of Appendix B Relator Maintains that Prison Officials keep a record of any and all indigent supplies used and debit the trust fund account of the offender and whenever any money is deposited into the account. Prison Officials deduct whats owed. Relator avers that he already spent an exorbant amount of money file papers on this case and on Appeal. The error was Respondants for discarding his Writ of Habeas Corpuses, both of them, and his evidence.

2.

4. Relator avers that as according to the Code of Criminal procedures under Art. 11.08 Applicant Charge with a felony; If a person is confined after indictment on a charge of a felony, he "may" apply to the judge of the court in which he is indicted; or if there be no judge within the district, then the judge of any district whose residence is nearest to the courthouse of the county in which the applicant is held in custody! Also see: In Re: Piper, 105 S.W. 3d 107 (Tex. App.-Waco 2003) In a case where a judge refuses to issue the requested writ of habeas corpus or denies an applicant the requested hearing on the merits of his claim, an applicants remedies are limited! Some remedies available to an applicant in that situation are to present the application to another District Judge having jurisdiction (unless the writ is discarded) or under proper circumstances, to pursue the writ of mandamus! Ex parte: Hargett 819 S.W. 2d 866, 868 (Tex. Crim. App. 1991) In some cases, a remedy at law may technically exist; however, it may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate or ineffective as to be deemed inadequate. State ex rel, Homes V. Court of Appeals, 885 SW 2d 389, 394 (Tex Crim App 1994) (quoting Smith V. Flack 728 SW 2d 784, 792 (Tex Crim App 1987); accord In re Davis, 990 SW 2d 455, 457 (Tex App.-Waco 1999, orig. proceeding).

Relator avers and asserts that the remedy of refiling his writ of habeas corpus in another court and/or with a different Judge in the same jurisdiction is not an adequate remedy in the case at bar! Relator also filed a motion motion for a change of venue because he cannot receive a fair adjudication of his habeas corpus in Gregg County, Tx! Whereas, A technically available legal remedy will not defeat a petitioners entitlement to mandamus relief when the remedy is so uncertain, tedious, burdensome, slow, inconvenient, inappropriate or ineffective as to be deemed inadequate! Davis, 990 SW 2d at 457 (citing State ex rel. Homes V. Court of Appeals 885 SW 2d 389, 394 (Tex Crim App. 1994); Kozacki V. Knize, 883 SW 2d 760, 762 (Tex App.-Waco 1994 orig proceeding) We also observed that under proper circumstances relief by mandamus might be appropriate!

3

Id. (Citing Ex parte: Hargett, 819 SW2d at 868); see also Kozacki, 883 SW2d at 262 (Mandamus is available to correct judicial action that ignores clear, binding precedent because, Trial Judges do not enjoy freedom to ignore the Law!

Although Relator can file his Writ of Habeas Corpus in the Court of Criminal Appeals see; Code of Criminal Procedures Art. 11.05 the Court of Original jurisdiction and of which also have the power to issue the Writ of Habeas Corpus!

Relator avers that he has already been imprisoned for (3) three years of a Crime and/or Crimes he did Not Commit, see; Appendix A Relator is of the belief that he is entitled to the relief requested herein!

5. Relator will now resubmit his Writ of Habeas Corpus Count II paragraphs B and both Memorandums of the Law and the List of Exhibits # 70! Relator will at some point in the near future attempt to Locate and then resubmit all, or close to all, 70 exhibits!

### Prayer

Wherefore, premises considered, Relator respectfully prays that he be granted the relief he requested in and of the Writ of Mandamus, to issue the Writ of Mandamus and grant him an Evidentiary hearing thereon, the Merits of his Writ of Habeas Corpus and to be able to present all of his exculpatory and impeachment evidence in support of his actual innocence, and such other and further relief to which he may show himself to be Justly entitled at Law and in Equity.

Respectfully Submitted,

Michael Dean Perry

October 7, 2015

4.

## Unsworn Declaration

I, Michael Den Perry TDCJ No. 1838827 being presently incarcerated in the Texas Department of Criminal Justice at The Ellis Unit, 1697 FM980 Huntsville, Tx 77747 Declare under penalty of perjury that the above and foregoing is True and Correct.

Executed on This the 7 day of October, 2015.

By: Relators/ Michael Den Perry TDCJ No. 1838827

## Certificate of Service

I, Michael Den Perry TDCJ No. 1838827 do hereby certify That a True and Correct copy of The above and foregoing Motion, unsworn declaration and Certificate of Service have been Served by placing Same in the U.S. Mail, first Class postage prepaid on This the 7 day of October, 2015.

By Relators x Michael Den Perry TDCJ No. 1838827

Return Service Requested

# APPENDIX A

Exhibit #32 A

**GRIEVANCE NUMBER 201403874**

*[handwritten: 11.07]*

*[handwritten: Violated Protective Order/ Exhibit #3A]*

| State of Texas | § | *[handwritten: She claims there wasn't one!]* |
|---|---|---|
| County of Gregg | § | *[handwritten: Gave false testimony about knife that police took!]* |

**AFFIDAVIT**

BEFORE ME, the undersigned authority, personally appeared Tanya Louise Reed, who was sworn by me and stated under oath:

"My name is Tanya Louise Reed. I am of sound mind and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

"I am employed by the Gregg County Criminal District Attorney's Office as an Assistant Criminal District Attorney, in charge of prosecuting felony cases in the 188th Judicial district court. I have been in that position for seven years, and prior to that I worked for the Angelina County Attorney's office since I became a member of the bar in 2003. I have had no prior grievances filed against me. I am not represented by an attorney in this matter.

"This complaint grows out of Cause Number 42,139-A, a criminal case I tried where Michael Dean Perry was the defendant. Mr. Perry was ably represented by the Honorable Tim Cone, who had formerly been an elected prosecutor in Upshur County. The judge who presided over the case was the Honorable David Brabham. The case, is currently on appeal, pending an opinion from the Sixth Court of Appeals, Texarkana, Texas as Cause Number 06-13-0051-CR, styled Michael Dean Perry, Appellant, v. The State of Texas, Appellee.

"Perry accused me in his appellate brief of misconduct by using a similar knife as a demonstrative tool after I had agreed not to introduce the actual knife that he used in the attack or to discuss the fact that it was found in his backpack. Tim Cone had agreed not to question where the actual knife was. I had not agreed not to use a similar knife as a demonstrative tool. I was careful to state, each time I showed the knife, that it was not the actual knife used, but a similar one. The judge did not abuse his discretion in allowing the use of the similar knife. That issue is pending before the Sixth Court of Appeals. I will attach excerpts from the State's Brief which address this topic. See Appendix A. As stated in the brief, courts of appeals have differed on the issue, and thus the law is not clear. The issue of the trial court's discretion to allow demonstrative evidence is legal in nature, not ethical.

"I have read Michael Dean Perry's allegations, which are all meritless, and I will respond to each one below:

*[handwritten: Note: Tanya Reed violated their own trial court orders in limine by not giving the defense a (5)five day prior notice of her intent to use a Demonstrative knife as evidence at trial! Jailhouse phone call too! Deception!]*

*Newly disclosed other Police Officers Names, or Search of Home!*

"I did not withhold discovery from Perry's counsel. Perry's allegation that I did so is a false statement. *Illegal Search of Home, Cops picked up real knife and took it.*

"I did not withhold from Perry's counsel any detail of the procurement of the knife actually used in the crime. Perry's allegation that I did so is a false statement.

"I timely provided the pictures taken at the crime scene and of the victim to Perry's attorney. I do not know when his attorney showed them to Perry. *Not to Perry. I didn't know about any of it.*

"I did disclose to Tim Cone the fact that the victim had been indicted. Even though I did know about the victim's charges, I was not the prosecutor on the case, did not review the case and did not talk to the victim about her pending case. Additionally, the victim was never offered any type of deal or plea agreement for her testimony in this case or any other case. (She was indicted on November 15, 2012, for using someone else's identification to cash a check on or about August 11, 2012, and for attempting, on or about August 15, 2012, to pass a check on someone else's account made out to someone else. She was adjudicated guilty on March 7, 2014, and sentenced to serve nine months in State Jail. Cause Number 42, 023-B. See Appendix B, indictment and judgment.) *They're all part of the same team!*

"Perry's victim was given no preferential treatment for her testimony. Her testimony at trial was not helpful to the State's case, but was impeached by the police to whom she spoke on the date of the incident, by other witnesses, and by her own words during the phone call to Perry while he was in jail. I never coerced her testimony. Her testimony, different from what she had earlier told police, and different from the accounts given by the other witnesses, was intended to help Perry. She testified she did not wish for Perry, her uncle, to go to jail for 25 years. *She was trying to tell the truth!*

"Many victims of assault family violence attempt to drop charges against the family members, but they do not make the decision to dismiss charges. Only a member of the District Attorney's office can make that decision. This victim was uncooperative with me, and refused to talk to me until the day before trial. I did disclose to Tim Cone that the victim was uncooperative and did not want to go forward with the charges against the Defendant. *Because she was trying to tell the truth!*

"I did not coerce the victim to call Perry at the jail, or even suggest that she do so. Once again, I never spoke to the victim until shortly before trial began. I listened to recorded jail phone calls between the victim and the Defendant as is sometimes customary to do on criminal cases in the District Attorney's Office. *Either Reed is lying about the phone call*

"I did not violate any emergency protective order. No emergency protective order has ever been entered prohibiting me from doing anything. I did not encourage anyone to violate any protective order.

*Protective Order # 132-EPO-12 JP 1 Court (10-16-2012)*

*Tanya Reed is just as culpable as Zan Brown Law of the Parties. The entire Team is at fault*

"I did not write the appellate brief in this case, but the only content of that phone call used at trial was as follows: Alanna (victim): "I'm going to tell them that you used the knife not to come at me but just to try to get into the door." 5 RR 128. State's Brief at 12, 19, 21. Nothing that Perry said in that phone call was mentioned. This excerpt from the phone call was presented to show the victim's intent to lie about his use of the knife because she did not want the Defendant to be convicted of the offense.

*Where's the Transcript ?*


Tanya Louise Reed, Affiant
State Bar Number 24039204

**SUBSCRIBED AND SWORN TO** before me, the undersigned notary public, on this the

31 day of ___July___, 2014.

Notary Public, State of Texas

MARCIA DEAN
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 02-04-2017

Exhibit # 3A Protective Order Finalized on Dec. 16th 2012 at 1:40 pm !
Relator Could Not have called his Niece on The Jail Phone! Monday!
The D.A. Set That up! No Search Warrant!

132-EPO-12

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE JUSTICE COURT |
| | § | PRECINCT 1 |
| MICHAEL DEAN PERRY | § | GREGG COUNTY, TEXAS |

## MAGISTRATE'S EMERGENCY PROTECTIVE ORDER

On the 16th day of October, 2012 there came the request of NIKKI WILLIAMS Applicant who is ☐ the victim, ☐ the victim's guardian; ☒ a peace officer; or ☐ the State's attorney.

Applicant is seeking [OPTIONAL: The court, on its own motion, has determined that the statutory requirements have been satisfied to invoke the court's authority under Article 17.292, Texas Code of Criminal Procedure to issue] a Magistrate's Emergency Protective Order against MICHAEL DEAN PERRY, Defendant, based on the findings set forth below.

### FINDINGS

The court finds that, on October 15, 2012 MICHAEL DEAN PERRY Defendant was arrested by N. Williams duly authorized Longview Police Department for the offense of
☒ *family violence* as defined in Section 71.004, Texas Family Code;
　　　　　　　　☐ involving serious bodily injury; AND/OR
　　　　　　　　☒ involving use or exhibition of a deadly weapon; AND/OR
☐ an act in furtherance of *stalking*, an offense under Section 42.072, Texas Penal Code.
　　　　[OPTIONAL: The court further finds that , Defendant, is licensed to carry a concealed handgun, such license being issued by the State of Texas; and]
　　　　The court further finds that application was properly made and [OPTIONAL: The court, on its own motion, finds] there is good cause to issue a Magistrate's Emergency Protective Order.
　　　　[OPTIONAL ADDITIONAL FINDING: The court finds that (Applicant has requested confidentiality of addresses) or (confidentiality of addresses is necessary) for the protection of the persons named herein].
　　　　THEREFORE, it is the JUDGMENT of this court that NIKKI WILLIAMS, Applicant shall have Judgment against MICHAEL DEAN PERRY, Defendant, according to the terms of the court's Order set out below.

---

### WARNING
"A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER MAY BE PUNISHABLE BY A FINE OF AS MUCH AS $4,000.00 OR BY CONFINEMENT IN JAIL FOR AS LONG AS ONE YEAR OR BY BOTH. AN ACT THAT RESULTS IN FAMILY VIOLENCE OR A STALKING OFFENSE MAY BE PROSECUTED AS A SEPARATE MISDEMEANOR OR FELONY OFFENSE. IF THE ACT IS PROSECUTED AS A SEPARATE FELONY OFFENSE, IT IS PUNISHABLE BY CONFINEMENT IN PRISON FOR AT LEAST TWO YEARS. THE POSSESSION OF A FIREARM BY A PERSON OTHER THAN A PEACE OFFICER, AS DEFINED BY SECTION 1.07, PENAL CODE, ACTIVELY ENGAGED IN EMPLOYMENT AS A SWORN, FULL-TIME PAID EMPLOYEE OF A STATE AGENCY OR POLITICAL SUBDIVISION, WHO IS SUBJECT TO THIS ORDER MAY BE PROSECUTED AS A SEPARATE OFFENSE PUNISHABLE BY CONFINEMENT OR IMPRISONMENT.
　　　　"NO PERSON, INCLUDING A PERSON WHO IS PROTECTED BY THIS ORDER, MAY GIVE PERMISSION TO ANYONE TO IGNORE OR VIOLATE ANY PROVISION OF THIS ORDER. DURING THE TIME IN WHICH THIS ORDER IS VALID, EVERY PROVISION OF THIS ORDER IS IN FULL FORCE AND EFFECT UNLESS A COURT CHANGES THE ORDER"

---

It is a Misdemeanor offense to violate a protective order by communicating with the person protected by this order, or by going near the residence or place of employment of the person protected. It is

Our decisions have respected The private realm of family life Which The State cannot enter!

Prince Vs. Massachusetts, 321 U.S. 158, 166 (1944)
an opinion of The United States Supreme Court.

*Exhibit #2 A Police Officer filed a False Police Report/Facts to the Court in order to get Probable Cause Warrant, She spoke to me and Arrested me first before she ever spoke to anyone else! No Probable Cause!*

## MAGISTRATE'S REVIEW OF ARREST WITHOUT WARRANT

| SUSPECT: Perry, Michael | | DATE OF ARREST: 10-15-201 | | CASE # 12-19452 | |
|---|---|---|---|---|---|
| RACE: white | SEX: male | DATE OF BIRTH | 10-22-1959 | TIME OF ARREST: | 2310 hrs |

**CHARGES:** Agg Assault FV F1, Interference with Emergency Phone Call MA

*Wrong↑*
*23:36  22:56 ?*

### PROBABLE CAUSE FOR ARREST

**Please indicate facts that indicate the suspect committed the offense(s) charged. Please include facts relevant to each offense.**

*5.* On 10-15-2012, at approximately 2300 hrs, I, Officer Williams #441 was dispatched to 5 W Broadway Ct in reference to an Assault Family Violence. The victim advised that her uncle assaulted her and tried to stab her. The victim and suspect live together.

*4.* I made contact with the victim, who advised her uncle (suspect) got upset because she locked her bedroom door where she and her three friends were visiting. The victim advised that the suspect broke down the door and entered her bedroom with a knife. She advised that he came at her with the knife, but the victim was able to grab his hand and disarm him. The victim felt in fear that the suspect would stab her. The victim advised that the suspect punched her several times, held her down, and also pulled her hair. The victim advised that this assault caused her pain. The victim had a cut on her lip. The victim also complained of pain on the right side of her face and the back of her head.

*3.* I spoke to a witness, who advised that she attempted to dial 911. She advised that the suspect knew she was calling for help and took the phone away from her. *Not Charged*

*1A* I spoke to the suspect, who was intoxicated. He advised that nothing happened. *No Probable Cause!*

*2B* The suspect was arrested for the above charges and transported to the Gregg Co Jail for booking. The suspect was read his Miranda → *At the Jail!* Warning, but refused to waive his rights and answer questions.

*6.* An EPO was filed on behalf of the victim. *See Tanya Reeds Affidavit*   *500°° Bond ?*

*Note: No Drug Paraphernelia charge! Time Served 13 days No Plea!*

*Police Report Not Filed until November 5, 2012  22:29*

*N Williams #441*   *(21 days later)*   *Sgt Laughlin 246*
**ARRESTING OFFICER** — **APPROVING SUPERVISOR**

**I, the undersigned magistrate, find probable cause for detention of this suspect for the following offense (s):**

1. *Agg Ba FV*
2. *Int w/ Emer Call*
3. _____

*(signature)*   *10/16*   *23:0*
**Magistrate** — **Date** — **Time**

**I, the undersigned magistrate, find there is no probable cause to detain this subject based on the information presented.**

_____ — _____ — _____
**Magistrate** — **Date** — **Time**

LPD FORM 4/23/2007

*Probable Cause Not issued until next day 10-16-12*
*Note: Time of Arrest falsely reported!  Arrest date 10/15/12*

*(handwritten top margin)* EXHIBIT 25
No Search Warrant For Home, Nothing Said about Police Officer Nikkie Williams Picking up Knife off Floor and Taking it with her, Contaminating Crime Scene.
No Chain of Custody of Actual Knife!

**12-19452**

Supplement No
ORIG /

## Longview Police Department

| Prop # | Involvement | Invl Date | In Custody? | Security | Tag No | Item No |
|---|---|---|---|---|---|---|
| 2 | EVIDENCE | 10/15/2012 | Yes | No | 120000589 | 2 |

| Description | | Typ |
|---|---|---|
| black handle kitchen knife | | A |

| Cat | | Article | IBRS Type | Entered Date |
|---|---|---|---|---|
| Household appliances and housewares | | Knife | Household goods | 10/16/2012 |

| Entered Time | RMS Transfer | Control | |
|---|---|---|---|
| 05:29 | Successful | 64242 | 1017121001 |

*(handwritten)* Not Filed until Nov-5, 2012 21days!

### Modus Operandi

| Premise Type | Victim's Race | Victim's Sex | Victim's Age | Crime Code(s) |
|---|---|---|---|---|
| Residential-house | White | Female | Adult | ASSAULT |

### Narrative

On Oct 15, 2012, at approximately 2300 hrs, I, Officer Williams #441 was dispatched to 5 Broadway Ct #B in reference to an Assault Family Violence. Dispatch advised that a male was assaulting his niece and exhibiting a knife during the assault. *(handwritten: The Word Bitch Never mentioned, Period!)*

Upon arrival, I observed a black female (witness 1 - Oajuntae Johnson) walking towards my vehicle pointing to a white male (arrestee 1 - Michael Dean Perry). Oajuntae stated that Michael assaulted his niece, Alanna McKinney (Victim 1). *(handwritten: Alanna Never stated That She was in fear That Michael was going To stab her.)* I immediately placed Michael in custody for my safety. The backpack he was wearing was removed. He was patted down for weapons. A boxcutter and a pocket knife was removed from his person. A black handled kitchen knife was found in his backpack. Michael was put in the back seat of my patrol car while I continued my investigation. *(handwritten: Lies)*

*(handwritten: Alanna Assaulted me First, I Just Defended myself!)*

I spoke to Alanna. Alanna stated that she and her friends (Oajuntae, Dawn Ayres, and Chase Neal) were in her room visiting. She advised that Michael, her uncle, was drunk so she locked the door to her room so that he would not bother them. Alanna advised that Michael got mad that the door was shut so he started yelling. Alanna advised that he then broke the bedroom door down and came in holding a knife. Alanna described the knife was a black handled kitchen knife. Alanna advised that he came after her with the knife but she was able to grab his hand and disarm him. Alanna stated that she was in fear that Michael was going to stab her. Alanna advised that after the knife was taken away from him, Michael started hitting her with closed fists on her face and the side of her head. Alanna stated that Michael also pulled her hair. Alanna advised that Michael must have hit her more than 8 times. She advised that she then pushed Michael off of her. The police were then called by Oajuntae. Alanna advised that as Oajuntae was attempting to call for help, Michael took the phone out of her hand and hit her ("uppercut"). *(handwritten: Did Not Hit Oajuntae. Door Not Broken Down)* Alanna had a cut lip and complained of pain on her face and back of her head. *(handwritten: Where? Not Fixing, Not Bitch.)*

I spoke to Oajuntae. She advised that Michael broke the door to the room and came in with a knife. She advised that Michael tried to stab her but the knife was taken away from him. Oajuntae advised that Michael then started punching Alanna. Oajuntae stated that she went for the phone after telling them she was going to call the police. Oajuntae advised that Michael took the phone away from her and uppercut her in the jaw. She had no injuries and advised that it didn't hurt. *(handwritten: Lies)*

*(handwritten: Dawn Says Nothing about me hitting or Stabbing Oajuntae! I dropped Knife (Butter knife))*

I spoke to Dawn Ayres. Dawn advised that she observed Michael break the door and come in the room with a knife. Dawn stated that Michael then started punching Alanna after the knife was taken from him. *(handwritten: Knife dropped)*

*(handwritten: Never charged with Public Intoxication.)*

I then spoke to Chase Neal. Chase advised that Alanna closed the door because Michael was drunk. Chase advised that Michael then kicked the door down and came at Alanna with a knife in his hand. Chase advised that the knife was taken away from Michael so he started punching Alanna. Chase stated that he punched Alanna several times. *(handwritten: Chase Says Nothing about me Trying To Stab Oajuntae or hitting her. Coercion.)*

At that point, I attempted to record a FV statement. Alanna refused saying that it would be hard because they are family. I was able to convince her to allow me to take photographs of her injuries. Pictures were taken and Alanna was given a Notice to Adult Victims of Family Violence card. No other witness wanted to give a video statement.

*(handwritten: No Video Statements. Wheres the Pictures? No Mention of Search of House.)*

Michael was placed into custody for Aggravated Assault Family Violence F1 and Interference with an Emergency Phone Call MA and transported to the Gregg Co Jail for booking. On-scene at the jail, I read Michael his Miranda Warning. He refused to give a statement without his lawyer present. *(handwritten: No Possession of Dangerous [illegible])*

| Report Officer | Printed At | |
|---|---|---|
| 63990/WILLIAMS, NIKKI | 11/05/2012 22:29 | Page 5 of 6 |

*(handwritten bottom margin)* Police Lied. No Mention of other Police Officers.
8. Theres Nothing Said about Searching my house, Taking pictures of door, or Taking THE KNIFE!

# STATEMENT

Exhibit #1B

I Alanna Renee mcKinney the neice of michael DeaN Perry state that He did not Hit me first, He only used self defense, because I Alanna mcKinney shoved Him first. I Also want to state that michael Dean perry, Did Not Point the Knife at, nor towards me! To my Acknoledgement He was Trying to get into my Locked room door with the Knife, He couldn't so instead He Kicked the door IN.

Alanna Renee McKinney

Sworn to and subscribed before me this 9th day of July, 2013.

Jhan Goolsby
Notary Public, State of Texas

JHAN GOOLSBY
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 9-3-2013

# Statement

I Alanna Renee McKinney, The neice of michael Dean Perry state that michal Perry did not threaten me with a Knife nor Point it at me. He only tried Using the Knife to open my Locked Bedroom door, But instead Kicked the door open. Michael Perry Only Hit me using self defense Because I Shoved him first.

Alanna Renee McKinney
**Alanna Renee McKinney**

Sworn to and subscribed before me, by Alanna Renee McKinney, on the 20th day of August, 2013.

Jhan Goolsby
**Notary Public, State of Texas**



JHAN GOOLSBY
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 9-3-2013

Note: Original recant Statement Submitted on July 9th 2013 Which is in The possession oG Appellant Michael Dan Perry!

# Uncle Michael,

Hey how are you? Well we have gotten 2 month rent paid by the adult protective services because I called and made a report about mimi. Now all we have to worry about is when her check will come in because the VA said it could take up to 8 months. I dont understand why their doing this to an 80 yr old woman. Trust me I call them every single week day and they tell us the same shit! But I will not give up! I have filled out the Affidavit and made a copy to send to Lew Dunn. I am going to get them notarized and sent out by today which today is tuesday so you should get this no later than friday im thinking! I hope my statement sounds good Because thats everything i remember from that night. I said things to the cops that night that I didnt mean because i was so freakin upset and my mother had Just died a few days before that night! So whats in this statement is the trueth from how i remember everything that night. (I did let the (cop) inside because she wanted to take a picture of the door and (she must have picked up the knife) on the way out.) I want you to know that I do love you very much and I understand everything that →

Are you a monkeys uncle? Lmao

Witnesses Committed Perjury at Trial

is going on. I am doing the very best
I can to help you get out of that Hell
Hole because its ridiculous and they
were Judgeing you on your Past mistakes
that you have already done time for.
Well I hope the very best comes out of
all of this because (you have been wrongfully
accused by my friend and everything they
lied about in court.) All I know is my
Affridavit statement is the trueth and
nothing but the trueth no matter what.
I wrongfully said that night, I was upset!
Well write me Back soon uncle michael.
I Love you forever and Always.

They All lied at Trial
Just like I said from the Beginning.

Alan King

may -19-2014
Michael, another Letter I found
I am pissed. Mom
BoBBy has Been in marshall since
Last Thes, I Cant check The mail.

I also found a
letter I had written
to aranna in feb.

May 19 2014

Aleena Tells The Truth →

Some how these Letter
Didn't get mailed. Just
found them 10 min. ago
In a Drawer in Bobbys Room
9:05 AMother

uncle michael,

Well i know my letter is a
little on the late side But atleast
im sending one out today lol. today
is monday. c: yay. 3 more days till
Christmas and its just not
the same here without my mother
and you. Sometimes i cant help
but ask myself why god would
intend for me to end up with
No family in the end. And i mean
Blood family that includes mimi,
grandpa, momma, uncle michael. I only
have 2 people Alive today and
one i may never see ever again which
is you and the other is mimi
and we both know she will not
be around forever But i hope
she's around for as many years
to come. I honestly dont know
What i will do without my
mimi. Anyways ~~told~~ APS paid
october rent and November rent
thanks to me making a Report...
they will not help her again they
said... But we call the VA office.

every damn day of the week. they give us the same Bullshit stating they are trying to see if mimi has remarried and if she's eligable it could take up to 8 months. I dont understand why they are giving this 80 yr old woman ~~that~~ such a hard time. We've even faxed them all the evidence on her marriage's and divorce with mac. We even faxed VA the eviction notice saying she ~~~~ needs her money sent to her because she cannot support herself with even rent without that VA check... they are Bullshitting. I have called churches, Longview ministries, Salvation Army, hopes closet, Adult protective services and nobody can help her at this time. She didn't get her check for december so we will be getting another eviction really soon. I wrote my statement in that Afridavit and gave my true facts of what I remember from that night. ~~truth~~ ~~truth~~ ~~truth~~ Its nothing But ~~the~~ ~~truth~~

Filed False Police Report - Hearsay!
And I dont care what Anybody sais. That night that this happend I was pissed and upset and told the cops some untruthful statements because I was so upset, we both said thing that night about eachother that weren't true. But this is your Life on the Line here and I've got to tell the truth of what I remember clearly now, And so be it, in that statement! I Love you uncle michael and I hope to hear from you soon. W/B

LOVE Always,

Alana
McKinley

Alanna Lied To Police!
Gave a False Statement To get me out of The way, and Steal my debit Card!
They were broke and Needed The Money!

Exhibit #3-A-1

Michael Dean Perry                          Exhibit #3-A-1

V.                              No. 06-13-00051-CR

State of Texas                  Trial Court No. 42,139-A


## AFFIDAVIT


Before Me, The undersigned authority, personally appeared
Wilma McKinney, who was sworn by me and stated under oath.


My name is Wilma McKinney. I am of sound mind and capable
of making this affidavit and I am over the age of 18 years.
The facts stated in this affidavit are within my personal
knowledge and are True and correct;
   On October 16th 2012 at My home
5 B W. Broadway Longview, Tx.
Police officer Nikki Williams
Presented herself as lawful authority
and entered my home without consent
and without a valid search warrant.
She and another police officer searched
my home and retrieved a knife that
my son allegedly used to pry open
the bedroom lock of My Granddaughters
room and then took the knife with
them. The police also began taking
Pictures of the bedroom door and
of Alanna McKinney. I was never

1 of 2

Provided a valid search warrant
Nor was I advised that I did not have
to consent to the search of my home.
Furthermore I did not witness an assault
Nor did I see any injuries of my Grand-
daughter. She was not shaking or
Hysterical. She was of sound Mind.

x Wilma McKinney
Wilma McKinney, Affiant

State of Texas
Gregg County

Subscribed and Sworn To before me, The undersigned notary
public on This The 17th Day of September 2014

x Camille Creal
Notary Public, State of Texas

CAMILLE CREAL
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 5-28-16

Acknowledgment of the Rules for Processing Habeas Corpus by Clerk!
Included with response to Court Order on Mandamus!
Exhibit #6

# INMATE CORRESPONDENCE REPLY

TO: _Michael Dean Perry_          FROM: _Barbara Duncan_
_____          DISTRICT CLERK: GREGG COUNTY
_____          LONGVIEW, TEXAS
_____

CAUSE NO. _42,139-A_          STATE OF TEXAS VS. _Michael Dean Perry_

DEAR _Mr. Perry_          FILE DATE_____

[ ] Upon receipt of proper fee, the copies you requested will be prepared and mailed. Certified and Non- Certified copies are $1.00 per page. The cost for the copies requested will be $_____.

[ ] We will need a court order to prepare the copies you requested at no charge to you.

[ ] Contact the Court Reporter listed below to request a copy of the Statement of Facts and Fees.
    Name: _____
    Address: _____

[ ] Your Petition for Writ of Habeas Corpus has been received and filed. Article 11.07 of the Texas Code of Criminal Procedure affords the State 15 days to answer. After that 15 days, the Court has 20 days in which it may order a hearing. If no order has been entered 35 days from the filing date, the petition will be forwarded to the Court of Appeals for their consideration.

[ ] The following document has been filed in the above listed case: _____
    A file- stamped copy of document is attached.

[ ] This date, the transcript of your Petition for Writ of Habeas Corpus has been forwarded to the Court of Appeals.

[ ] This is to acknowledge your motion for Shock Probation, please be advised the Court has GRANTED/DENIED same.

[ ] Other: _District Clerk's Response to Petitions Writ of Mandamus -Appendix A+B Motion and Order; Appendix C- Writ of Application_ _____

All further correspondence should indicate the above cause number,

                              Yours Truly,

                              _____
                              DISTRICT CLERK, GREGG COUNTY

# APPENDIX B

 *Exhibit #1*



**Court of Appeals**
*Sixth Appellate District*
**State of Texas**

CHIEF JUSTICE
JOSH R. MORRISS, III

JUSTICES
JACK CARTER
BAILEY C. MOSELEY

CLERK
DEBRA K. AUTREY

BI-STATE JUSTICE BUILDING
100 NORTH STATE LINE AVENUE #20
TEXARKANA, TEXAS 75501
(903) 798-3046

February 10, 2014

Zan Colson Brown
Assistant District Attorney
101 E Methvin St, Ste 333
Longview, TX 75601
* DELIVERED VIA E-MAIL *

Lew Dunn
201 East Methvin Street
Suite 102
P. O. Box 2226
Longview, TX 75606-2226
* DELIVERED VIA E-MAIL *

**RE:**   Appellate Case Number:   06-13-00051-CR
         Trial Court Case Number:   42,139-A

**Style:** Michael Perry
         v.
         The State of Texas

The Court entered its order this date in the referenced proceeding whereby State's Motion for Extension to File Brief was **GRANTED**; the time was extended to and including: **March 12, 2014**.

Respectfully submitted,

Debra K. Autrey, Clerk

By _Molly Pate_
                              Deputy

# COURT REPORTER'S REQUEST FOR EXTENSION OF TIME

THIS RECORD IS DUE ON _Aug. 28, 2013_

THIS RECORD WAS ORIGINALLY DUE ON _June 28, 2013_

I AM REQUESTING _30_ DAYS

THIS RECORD IS APPROXIMATELY _500_ PAGES LONG

IS THIS APPEAL ACCELERATED? ___YES _✓_NO

SIXTH COURT OF APPEALS CAUSE NO. _06-13-00051-CR_

STYLE OF CASE: _the State of Texas vs Michael Dean Perry_

TRIAL COURT _188th District Court_

TRIAL COURT CAUSE NO. _42,139-A_

I am responsible for preparing a record in this appeal, but am unable to file the record by the original due date for the following reason(s): (Check all that apply – attach additional pages if necessary.)

☐ To the best of my knowledge, the Appellant has made no claim of indigence, or has been found to be not indigent, and has failed to either pay the required fee or to make arrangements to pay the fee for preparing the record.

☑ My duties listed below preclude working on this record: _I am finishing up State v. Johann Dupree (06-13-00067-CR) and this record is next on my list to do. I apologize for any inconvenience._

☐ Other (explain): _____

In compliance with TEX. R. APP. P. 9.5(e), I certify that a copy of this notice has been served on counsel for all parties to the trial court's judgment or order being appealed. I further certify by my signature below that the information contained in this notice is true and within my personal knowledge.

Sept. 5, 2013
Date

903. 237. 2488
Office Phone Number

_____
E-mail address (if available)

Gwendlyn Freeman
Signature

Gwendlyn Freeman
Printed Name

_____
Official Title

The following parties have been served with a copy of this document:
(Information may be either printed or typed.)

**Lead Counsel for Appellant(s):**

Name: Hon. Lew Dunn

Address: P. O. Box 2226

Longview, TX 75606

Phone No. _____

Attorney for: _____

**Lead Counsel for Appellee(s):**

Name: Hon. Zan Colson Brown

Address: _____

Gregg County Courthouse

Phone No. _____

Attorney for: _____

FAX TO: Molly Pate (Deputy Criminal Clerk) or Kim Robinson (Deputy Civil Clerk)

Sixth Court of Appeals, Texarkana, at

903 798-3034

(to be followed by a printed version by mail)

06-13-00051-
SIXTH COURT OF APPI
TEXARKANA, TE)
2/10/2014 11:50:38
DEBBIE AUT
CLI

*Exhibit #3*

## No. 06-13-00051-CR

| | | |
|---|---|---|
| **MICHAEL DEAN PERRY** | § | **IN THE COURT OF APPEALS** |
| | § | |
| **VS.** | § | **IN AND FOR THE 6TH DISTRICT** |
| | § | |
| **THE STATE OF TEXAS** | § | **OF THE STATE OF TEXAS** |

### STATE'S FIRST MOTION TO EXTEND TIME FOR FILING STATE'S BRIEF

THE STATE OF TEXAS by and through the undersigned Assistant District Attorney, and respectfully moves the Court to extend the time for filing of the Appellee's Brief in accordance with Rule 10.5 of the Texas Rules of Appellate Procedure. In support of its motion, the State respectfully offers the following:

- The Appellee's brief is due on FEBRUARY 10, 2014, and is only about 75% complete. The reporter's record in this case is nine volumes, and the appellant's brief contains fourteen issues.

- The State seeks an additional 30 days, or until Wednesday, March 12, 2014. I will nevertheless attempt to complete it before that deadline.

- In the past thirty days, I have prepared the following documents for filing:

  - A response to Habeas Writ Application in *Ex parte Reed*, Cause Number 38,535-B-H-1, filed January 14;
  - A response to Habeas Writ Application in *Ex parte Houston*, Cause Number 39,622-A-H-1, filed January 17.
  - A response to Habeas Writ Application in *Ex parte Porter* Cause Number 33782-A-H-2, filed February 4.
  - A response to Habeas Writ Application in *Ex parte Houston*, Cause Number 30276-A-H-7, filed February 4.
  - A response to Habeas Writ Application in *Ex parte Houston*, Cause Number 30278-A-H-3, filed February 4.

I also prepared and appeared at a hearing at status hearings for Andres Alvarez, Cause Number 42,168A ,and Anthony Johnson Cause Number 42,168A, as well as keeping up with my usual bond forfeiture docket and appeals from JP courts.

In the next 15 days, I have the following tasks:

- Complete an appellee's brief in *Stephenson v. State,* Cause No. 06-13-0181-CR, also due today.
- An appellee's brief in *Thomas v. State,* Cause no. 06-13-00067-CR, DUE February 13, 2014.
- Respond to a request for counsel from Derek Howard, Cause Numbers 06-14-00006-CR and 06-14-00007-CR on order of this Court, due Friday, February 14, 2014.

This motion to extend time is not being sought for the purpose of delay, but so that justice may be done.

Respectfully submitted,

*Zan Colson Brown*

Zan Colson Brown
Texas Bar No. 03205900
Assistant District Attorney
101 East Methvin St., Suite 333
Longview, TX 75601
Telephone: (903) 236–8440
Facsimile: (903) 236–3701

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing will be forwarded to counsel of record by electronic service or fax at (903) 757-6712.

Mr. Lew Dunn
P.O. Box. 2226
Longview, Texas 75606

On this 10[h] day of February, 2014.

*Zan Colson Brown*
Zan Colson Brown
Assistant District Attorney

Direct Appeal   Actual Innocence   Get Paid!   Gov Code 930 Co126.00

Abbot V Young 265 S.W. 3rd 697 (2009)

Supreme Court has ruled that Ineffective assistance of counsel and other procedural claims must be treated the same as substantive claims of innocence, the Comptroller will approve compensation in cases that lack DNA evidence

2012

*Exhibit #4*

### Return for Correction/Rejected Filing Notification for filing on Case/Envelope: 06-13-00051-CR (Michael Perry vs. The State of Texas)

**webmail 7**

Subject    Return for Correction/Rejected Filing Notification for filing on Case/Envelope: 06-13-00051-CR (Michael Perry vs. The State of Texas)

From       <No-Reply@eFileTexas.gov>

To         <dunn@texramp.net>

Date       07.01.2014 08:19

This is a rejected filing notification for filing on Case: 06-13-00051-CR (Michael Perry vs. The State of Texas)

Date Submitted: 12/30/2013 10:24:15 AM

Filing Description: Appellant's Brief

Reason(s) for rejection:

Other

word count limit is extended from 15,000 to 19,000 words and edited brief must be received by 1-17-14. motion overruled in part,gr

This message was automatically generated from the Texas E-Filing Manager; do not reply to this email.
Should you need technical assistance, please contact your E-Filing Service Provider.

1-7-2014

Michael—
Got this today + have been working on paring the brief down. Hope to get it re-submitted by end of week.

L. Dunn

Exhibit #5



# THE STATE OF TEXAS
## MANDATE

TO THE 188TH DISTRICT COURT OF GREGG COUNTY, GREETINGS:

Before the Court of Appeals for the Sixth Court of Appeals District of Texas, on the 15th day of August, A.D. 2014, the cause upon appeal to revise or reverse your Judgment was determined; and therein our said Court made its order in these words:

Michael Perry, Appellant                    No. 06-13-00051-CR

v.                                          Trial Court No. 42,139-A

The State of Texas, Appellee

As stated in the Court's opinion of this date, we find there was partial error in the judgment of the court below. Therefore, we modify the trial court's judgment to delete the assessment of attorney fees. As modified, the judgment of the trial court is affirmed.

We note that the appellant, Michael Perry, has adequately indicated his inability to pay costs of appeal. Therefore, we waive payment of costs.

WHEREFORE, WE COMMAND YOU to observe the order of our said Court in this behalf, and in all things to have it duly recognized, obeyed, and executed.

WITNESS, the Hon. Josh R. Morriss, III, Chief Justice of our said Court of Appeals, with the seal thereof annexed, at the City of Texarkana, this the 13th day of February, A.D. 2015.

DEBRA K. AUTREY, Clerk

*Debbie Autrey*

Cause No. 42189A-W-1   Count I OW
Count II B

Court of Criminal Appeals of Texas

FILED
GREGG COUNTY, TEXAS
JUN 15 2015
9:00 O'CLOCK ____ M
BARBARA DUNCAN DISTRICT CLERK
BY _____ DEPUTY

Application For a Writ of Habeas Corpus
Seeking Relief From Final Felony Conviction
Under Code of Criminal Procedures, Article 11.07

Michael Dean Perry                    October 22, 1959

Texas Department of Criminal Justice          TDCJ No. 1838827
Ellis Unit
1697 Fm 980                          188th District Court
Huntsville, Tx 77343                  In And For
                                     Gregg County Texas


## List of Exhibits

1. Exhibit A, American Justice For The World To see
        Presumption of Innocence

2. Exhibit B  Ex-DA Says its Too Late for discipline
     The Prosecutor Ken Anderson (Judge Anderson) is accused of withholding
     Evidence in 1987 case. Lead To Michael Morton Act

3. Exhibit C, Motion To Dismiss Criminal Trespass at They own Home.
        Release Report Adam Sloan Assaulted me
            Civil Suit 6:14cv 829 Exhibits D
        Thorn in The Side of Government
                    1 oF9



4. Exhibit E Previous Prisoners Civil Rights Suit of Which Bill Jennings and LVN Alexander were also Defendants Perry was Not in Default See Also, Exhibits x 3 Exhibit O Civil Suit No. 6:12cv 829

5. Exhibit 2B States Motion Designating Expert Witnesses; Several people who Testified at Applicants Trial Not Listed to wit: Bill Jennings, Ms. Alexander LVN, Nikkie Williams, Lisa Chatterton

6. Exhibits 5 and 6 Alanna McKinneys Indictment, Judgment, Probation

7. Exhibit #12B Police Report: Printed at (11/05/2012) 21 days later! Entry Date: (10/16/2012)

8. Exhibit #2A Probable Cause Affidavit Not Filed until 10/16/2012 (Police Report Not Filed until Nov. 5, 2012 21 days later!)

9. Exhibit #4A 911 Phone Call Transcript Alanna Not Hysterical!

10. Exhibit #A21 Tampering w/Physical Evidence Reversed on Appeal! Time Served with Subsequent Plea Bargain With No Attorney!

11. Exhibit #A22 News Paper Article Knife/Pills Tampering W/Evidence Reversed on Appeal

12. Exhibit #21B Classification Notice Gregg County Jail, Solitary; Possion of Drug Paraphernalia 13 days Time Served, No Trial and No Attorney; Exhibit #2c Jennings/Adam Sloan assaulted her, Possession of Drug Paraphernalia, Time Served! No Trial!

2 of 9

13. Exhibit #2B Memorandum Opinion and Partial Order of Dismissal of a Prisoners Civil Rights Suit No. 6:07cv536 Involving the Tampering w/Physical Evidence Case That was reversed on Appeal! William Jennings was a Defendant, so was the Assistant District Attorneys' Lisa Charleton as well! I was arrested without a Warrant or Probable Cause in that case as well!

14. Exhibit #3 #4 Wilma Mckinneys Affidavit Police Search Home (10/16/2012)

15. Exhibit #3A Alanna Mckinney Sworn Statement (8/20/2013)

16. Exhibit #2 Letter From Wilma Mckinney stating that I was giving Time For my past Crimes, That I paid my dues For all That! 81 years Old Saw right Through the Subterfuges and deception!

17. Exhibit #3B Letter From Wilma Mckinney acknowledging Alanna Stole all of her money from bank with Debit Card, just like mine!

18. Exhibit #1959 Proof of my SSI payment For November 25, 2012 Through January 2012! The entire Time I was locked up! Exhibit #4 Stole all of my mothers money!

19. Exhibit #1B Another Sworn Statement From Alanna Mckinney admitting That she assaulted me First, That I only used self defense, That I did Not Point a knife in her Direction! see also Exhibit #1A All her letters! 3B/1C

20. Exhibits #1C At or about 12 letters From Alanna Mckinney to Michael Dan Perry Exhonerating him! Admitting That the witnesses

306 9



21. Exhibit #10 Letter To Court Appointed Attorney Michael B. Lewis (11/13/2012)

22. Exhibit #11 Letter To Tim Cone (2/18/13)

23. Exhibit #12 Letter To Lew Dunn (3/18/14)

24. Exhibits #14 D, A, B, B1, C, C1, D, E, F, G, H, and I : All Letters from The Honorable Lew Dunn Conflict of Interests, Brady Violations, inter alia, Faretta V. California.

25. Exhibits #15, A, B, C. Reo. 201403874 Grievance Letters Tanya Reed (7/9/14)

26. Exhibit #16 Grievance Letter on Tim Cone R(N#201404220 (8/27/14)

27. Exhibits #17A, 17B, 31. Letters To Chief Disciplinary Counsel Jolene Bartlett (9/11/14) (9/22/14) Exhibit #17C Letter To Chief Disciplinary Counsel (7/30/14

28. Exhibit #32A Grievance No. 201403874 Tanya Louise Reed Affidavit (7/31/14)

29. Exhibit #3A (132-EPO-12) Emergency Protective Order (10/16/12)

30. Exhibit #20 Discovery Compliance Form To Tim Cone (Bill Jennings, and LUN K. Alexander listed, but not on the designated Expert Witness list. (Defendants in Civil Rights Suit-Conflict of Interest)

31. Exhibit #18 Charge of The Court before Amendment : (2/28/13) Exhibit #19 Charge on Punishment 2/28/13

4069

40. Exhibit #22A Tim Cones letters and Mine to him! 12/27/12 Tim Cones long explanation letter, 3 pages (3/12/13) Examining Trial Motions, Motion for Private Investigator, Recorded Recant Statement from Alanna long before Trial!

41. Exhibit #17 Writ of Habeas Corpus Access to Courts 188 District Court (1/11/13) pro se

42. Exhibit #27 Motion for Discovery pro se (1/24/13)

43. Exhibit #30 Petition for Writ of Habeas Corpus Examining Trial pro se Justice of the Peace Precinct 1 (10/22/12) My Birthday! Ha! (Writ No. WR-62,970-05 (Tex. Crim App. 12/19/2012)

44. Exhibit #31 Petition for Writ of Habeas Corpus Examining Trial pro se 188th District Court (10/30/12) Writ No. WR-62,970-05 (Tex. Crim App. 12/19/2012)

45. Exhibit #32 Motion for a Private Investigator pro se 188th District Court (10/30/12) Writ No. WR-62,970-05 (Tex. Crim. App. 12/19/2012)

46. Exhibit #33 Motion for a Speedy and Public Trial pro se (1/4/13)

47. Exhibit #34 Motion for Bail Reduction pro se (1/4/13)

48. Exhibit #35 Motion for Pre-Trial Discovery filed: (12/13/12) Pro Se

49. Exhibit #4A Magistrates Warning and Rights (10/15/2012) (7.) Do you request Appointment of Counsel? (NO) pro se! I had the Right to an Examining Trial! My Right!

6069

32. Exhibits #1 Through 31 Letters To Lew Ann', Self Explanatory!

33. Exhibit #13 Motion To Suppress! Stamp filed on February 25, 2013 but Not Signed by a Deputy and There is No Court Seal!

34. Exhibit #51 Supplement To Writ of Mandamas plus Appendix Denied! on The Back of Tim Cones letter! I was out of Paper! Exhibit #9 Original Mandamus Proceeding Judgment (10/11/13) Denied!

35. Exhibit #49 letter To Judge David Brabham Mis Conduct Duty To Report Canon 3 D(2)

36. Exhibit #27 Designation of Record on Appeal 188th District Court

37. Exhibit #11 "Example only" Discovery Order Paragraph (1) Defendant is entitled to inspect Affidavit/Search Warrant a Copy Thereof - Wheres Mine? (2) Any photographs I never got to inspect any photographs, Period!

38. Exhibit #8 124th and 188th District Court Standing Pre-Trial Orders The State and Trial Court Violate all most all of These rules even The In Limine Orders Pending Charges Against The Victim/Search Warrant All exculpator statements Shall I go on, The List of Violations is Staggering! Heavy as an Engine Block, Sharp as a Razor!

39. Exhibit #50 Court of Appeal Sixth Appellate District of Texas Standards of Conduct for Attorneys et al; No Excuses! Texas Rules of Professional Conduct Code of Judicial Conduct,

50. Exhibit #36 Original Mandamus proceeding/ Sixth Court of Appeals IN RE: Michael Perry NO. 06-13-00216-CR (10/11/13)

51. Exhibit #37 Supplement To Writ of Mandamus on file (4/3/14) Plus 33 Exhibits as an Appendix; Sixth Court of Appeals, Texarkana, Tx!

52. Exhibits #1 Through 8 Letters from Lew Dunn Whereas Lew Dunn discusses everything From The Jail house phone call, To Motion for New Trial, Search and Seizure, Amending The Indictment, Courts charge, He Went be raising Ineffective Assistance of Counsel on Direct Appeal!

53. Exhibit #61/10 Motion To Withdraw as Counsel Whereas, Perry filed a pro se motion for New Trial Raising 17 grounds like, Ineffective Assistance of Counsel, Illegal Search and Seizure of House' The record pretty much speaks for itself, but See Perrys Writ of Habeas Corpus Art. 11.07 And Memorandum of Law plus all of These Exhibits!

54. Exhibit #12 Motion for Hearing Pursuant To Faretta V. California, Filed by Lew Dunn (4/4/13) Perry was also bench warranted for the Hearing but after bench warrant to attend hearing on Motion for New Trial'

55. Exhibit #8 Lew Dunns Motion for New Trial (3/25/13) Denied May 1, 2013 Appellant bench warranted to attend hearing on both (MNT)! Robinson V. State, Supra'

56. Exhibit #55 Michael Don Perry Indictment before Amendment at Trial (12/13/12) Applicant Never provided copy of Amended Indictment (See also Exhibit #56 Doctrine of Carving)

52. Exhibit #9 Letter from Judge David Brabham denying Appointment of Alternate Counsel on Appeal due to Conflict of Interest (8/12/13)

58. Exhibit #18 Motion For Appointment of Attorney, pro se (4/29/13)

59. Exhibit #20 Habeas Corpus/Motion For New Trial C.C.P. Art. 40.001 pro se (8/20/13)

60. Exhibit #26 Habeas Corpus/Writ of Mandamus pro se 188th District Court Filed: (2/11/13)

61. Exhibit #23 Memorandum of Law in Support of New Trial Appointment of Counsel pro se Filed: (4/23/13) 188th District Court

62. Exhibit #23A Appellants request For Ruling on Appointment of Counsel, See also Exhibit #9 (Denied/Filed: 8/20/13)

63. Exhibit #27 Open Records Request-Final Judgment Cause No. 36,182-A (4/1/13)

64. Exhibit #22 Sworn Affidavit/Motion For New Trial pro se (3/24/13)

65. Exhibit #24 Motion For New Trial pro se Filed: (3/24/13)

66. Exhibit #25 Addendum to Motion For New Trial pro se Filed: (5/1/13)

67. Exhibit #28 Freedom of Information Act/Discovery pro se (1/16/14)

68. Exhibit #30 Petition For Writ of Habeas Corpus, Application For Appointment of Counsel, Post Conviction Art. 11.07 C.C.P. Habeas Corpus (10/22/14) pro se and Exhibit #31 Memorandum of Law in Support of Appointment of Counsel 11.07

69. Exhibit #29 Brief in Support of Freedom of Information Act/Discovery pro se (1/20/14)

70. On File Texas Court of Criminal Appeals P.D.R. + Supplement pro se PD-1209-14 (11/14/14) (12/18/14) Supplement Never ruled on

8 of 9

Applicant would inform this honorable Court That The Two motions for Rehearing filed in The Sixth Court of Appeals Should in all Things be part of The Record on Appeal. The original motion for Rehearing was filed on or about August 27, 2014 and the Amended motion for Rehearing was filed on or about September 15, 2014. The Appellant is exhausted and out of Supplies and Not able to make additional copies of These motions of which will require Appellant To rewrite all by hand. Also The Writ of mandamus, of which is quite long, which is marked as exhibit #37, will remain with The Appellant. If for some reason This honorable Court is of The believe That Appellant will be denied relief for failing To provide These motions, by all means Timely Notify him and be will do everything possible To write The writs over or send The only copies to the Court, with a promise That The Court will direct The Clerk To make Copies and send The originals back. Thank you.

Respectfully Submitted,

Michael Ray Prose

*This is a Copy of Original of Which has a Whited out File date!
Submit to Court Court I*

**42139-A-W-1**

## COURT OF CRIMINAL APPEALS OF TEXAS
### APPLICATION FOR A WRIT OF HABEAS CORPUS
### SEEKING RELIEF FROM FINAL FELONY CONVICTION
### UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

**FILED**
GREGG COUNTY, TEXAS

JUN 15 2015

8:41 O'CLOCK ___ M
BARBARA DUNCAN, DISTRICT CLERK
BY _____ DEPUTY

### INSTRUCTIONS

1. You must use the complete form, which begins on the following page, to file an application for a writ of habeas corpus seeking relief from a final felony conviction under Article 11.07 of the Code of Criminal Procedure. (This form is not for death-penalty cases, probated sentences which have not been revoked, or misdemeanors.)

2. The district clerk of the county in which you were convicted will make this form available to you, on request, without charge.

3. You must file the entire writ application form, including those sections that do not apply to you. If any pages are missing from the form, or if the questions have been renumbered or omitted, your entire application may be dismissed as non-compliant.

4. You must make a separate application on a separate form for each judgment of conviction you seek relief from. Even if the judgments were entered in the same court on the same day, you must make a separate application for each one.

5. Answer every item that applies to you on the form. Do not attach any additional pages for any item.

6. You must include all grounds for relief on the application form as provided by the instructions under item 17. You must also briefly summarize the facts of your claim on the application form as provided by the instructions under item 17. Each ground shall begin on a new page, and the recitation of the facts supporting the ground shall be no longer than the two pages provided for the claim in the form.

7. Legal citations and arguments may be made in a separate memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not.

8. You must verify the application by signing either the Oath Before Notary Public or the Inmate's Declaration, which are at the end of this form on pages 11 and 12. You may be prosecuted and convicted for aggravated perjury if you make any false statement of a material fact in this application.

9. When the application is fully completed, mail the original to the district clerk of the county of conviction. Keep a copy of the application for your records.

10. You must notify the district clerk of the county of conviction of any change in address after you have filed your application.

*Perry retains Original for evidence of Fraud!*



True and Correct copy of original filed in the Gregg County District Clerk Office.

Rev. 01/14/14

Count I

Cause No. 42139-A-W-1

Court of Criminal Appeals of Texas

Application for A Writ of Habeas Corpus
Seeking Relief From Final Felony Conviction
Under Code of Criminal Procedures, Article 11.07

Michael Dean Perry                           October 22, 1959

Texas Department of Criminal Justice         TDCJ No. 1838827
Ellis Unit
1697 Fm 980                                  188th State District Court
Huntsville, Tx 77343                         In And For
                                             Gregg County Texas

## Memorandum of Law

To The Honorable Judge of Said Court:

Comes now Michael Dean Perry, hereinafter referred to as Appellant,
and files this his Application for a Writ of Habeas Corpus, pursuant to
Article 11.07 Texas Code of Criminal Procedures, challenging Final Felony
Convictions Cause No. 42,139-A, and in Support there of Appellant files
this his Memorandum of Law that is in Compliance with Texas Rules
of Appellate Procedures 73 and does not exceed 50 pages.

## STATEMENT OF THE CASE

This is an appeal of a judgment of conviction under an indictment returned for the offenses listed in two counts: Count I alleged an assault upon a member of the accused's household by hitting the victim with his hand; Count II (A) alleged an assault upon a member of the accused's household by causing bodily injury to the victim by hitting her with his hand and during the course of the assault used or exhibited a deadly weapon; Count II (B) alleged an assault by threatening the victim with imminent bodily injury by holding the blade of a knife in her direction and during the course of the assault using or exhibiting a deadly weapon, a knife. The date of the occurrence of the alleged offenses was October 15, 2012. Appellant pleaded "not guilty", selected a jury on February 26, 2013, and after trial to the jury on February 27, 2013, Appellant was convicted in Count I and Count II(B) the following day, February 28, 2013. Count II(A) was not submitted to the jury. After hearing evidence at the punishment phase, the jury assessed punishment at 60 years imprisonment with a fine of $10,000 for each count on February 28, 2013(CR ). Appellant timely filed his "Notice of Appeal" on or about March 25, 2013, (CR ) and a "Motion for New Trial" on that same date, which was overruled after a hearing on May 1, 2013(CR 49). Appeal of the conviction comes on the record duly made.

18

Discovery is the linchpin of the search for Truth, and affording parties full discovery promotes fair resolution of disputes by the Courts. See Texas Code of Criminal Procedures Art. 39.14 Discovery. Also see Brady vs. Maryland, 83 S.ct. 2892 (1963) or the Michael Morton Act S.B. No. 1611. Also see State V. Lowry, 802 S.W.2d 669, 671 (Tex 1991)

In re Carbo Ceramics Inc.; 81 S.W.3d 369 (1) When the Appellate Court cannot cure the Trial Courts discovery order (2) When the parties ability to present a viable claim or defense is vitiated or severely compromised, and (3) When the Trial Court disallows, or abuses its discretion in, discovery and the missing discovery cannot be made a part of the Appellate record, thereby precluding Appellate review. Notwithstanding, ineffective assistance of counsel at Trial and on First appeal as of right. See Evitts V. Lucey, 469 U.S. 387, 105 S.Ct. 830, Brady V. Maryland, supra. Michael Morton Act No. 1611, supra (May 17, 2013.) Texas also passed another bill as a result of Morton's wrongful conviction, the Prosecutor Accountability Act (Senate Bill 825), enacted in June 2013.

Under Ake V. Oklahoma, 470 U.S. 68 (1985), Appellant had the right to have an investigator appointed to interview witnesses. There was in fact one other witness that ran off before Police arrived. Police were advised of this fact. In fact, Nikkie Williams said she would have interviewed him (supra brief p.24) The failure to do so in the case at bar irreparably harmed Appellant in the preparation of his case. The missing witness would have provided more information on the facts of the incident from which counsel would have been better able to assess the Truth (or inconsistencies) from other witnesses and therefore provide additional evidence in support of his theory of the case, or to impeach other witnesses. Nothing could be more clear than the sworn Notorized Affidavits of Mrs. Wilma McKinney and the alleged victim, the granddaughter, Alanna McKinney. By failing to adequately

2

interview the witnesses, Appellant was denied Sixth Amendment rights and Texas Constitutional, Art. 1§10, rights to compulsory process, confront witnesses and Fourteenth Amendment Due Process of Law and Fifth Amendment Due Process of Law and the Due Course Law provisions under Art. 1§19, Tex. Const. There was no strategic reason to neglect this evidence, whose importance was stressed by trial counsel when he was questioning Mr. Neal (VRR 119-120) Notwithstanding the fact that trial counsel failed to subpoena Wilma McKinney who was also an eye witness and she states that Nikkie Williams and another Police Officer searched the kitchen without a search warrant or without an informed consent, picked up the actual knife used to pick the lock and took it with them, contaminating the entire scene! Only later to claim that they found the knife in Appellant's backpack. There was no chain of custody of "THE KNIFE". Wilma McKinney also states that Alanna, her granddaughter, had no injuries and was not hysterical. In a close case and this one absent all of this exculpatory and impeachment evidence, any one fact witness was critical to Appellant's defense. In fact the alleged victim states in her affidavit that the Appellant was only defending himself because she attacked him first and that she never threatened him with a knife! The missing witness would have confirmed some of these facts. Therefore, it cannot be said that this presence in court along with Wilma McKinney, would have not made any difference in the outcome of the trial. Three witnesses, including the victim, said Appellant did not brandish the knife as he came in the bedroom; only one said otherwise. The black girl that was caught lying on the witness stand! The evidence of bodily injury was also hotly contested. The missing witness and the testimony of Wilma McKinney and her granddaughter, the alleged victim would have provided more evidence on these crucial

3.

issues. Trial Counsel was ineffective for failing to investigate and get an investigator to do so as well. Trial Counsel told Wilma McKinnon that he did not want them to engage the jury. There was No recorded statement from any of the witnesses T.C.C.P. Art. 38.22 Trial Counsel Tape recorded a recant statement from the victim, but never produced it at Trial or provided it to Appellant.

To be sure, Appellant, acting prose, Made a concerted effort to assert his rights to a fair and Impartial Trial. see Gideon V. Wainwright, 372 U.S. 335 83 S. Ct. 792, 9 L Ed 2d 799 (1963) By filing numerous pro se motions in an effort to assist in his own defense, including but not limited to Two (2) Motions For Discovery T.C.C.P. Art. 39.14, Two (2) Motions for an Examining Trial. In the JP 1 Court and The 188th District Court. Appellant also filed a Motion For a Private Investigator. The Court and Appellant's Court Appointed Attorney's claim That There was No record of These Motions. They were never voted on or even Made part of the record for Appellate review. Appellant Was entitled to an Examining Trial. see, T.C.C.P. Art. 28.01 Pre-Trial Hearing. also see Magistrate's Warning. Of which will also be included as an exhibit. Place of warning: JP 1 Court, Time 9:50 am Date: 10-16-12 Appellant Timely filed his Two Motions For an Examining Trial, also included as exhibits. Appellant was repeatedly denied his fundamental rights to Due Process and a fair Trial. see; Ake V. Oklahoma, Supra; This Court has long recognized That when a State brings its Judicial Power and its Narcissistic Self absorbed Prosecutors to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that a defendant has a fair opportunity to present his defense. Meaningful access to justice has been a consistent theme of These cases. We recognized long ago That mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process and that a criminal Trial is fundamentally unfair if the State proceeds against

4.

an indigent defendant without making certain that he has access to the raw materials integeral to the building of an effective defense. Thus while the court has not held that a state must purchase for the indigent defendant all the assistance that his wealthy counterpart might buy, see Ross V. Moffit, 417 U.S. 600, 94 S.Ct. 2437 41 LED 2d 341 (1974) It has often reaffirmed that fundamental fairness entitles indigent defendants to an adequate opportunity to present their claims fairly within the adversary system, id at 612 94 S.ct at 2444. To implement this principle we have focused on identifying the basic tools of an adequate defense or appeal. Britt V. North Carolina, 414 U.S. 226, 227, 92 S.ct. 431, 433, 30 LED 2d 400 (1971) and we have required that such tools be provided to those defendants who cannot afford to pay for them. To be sure, Appellant filed a Writ of habeas corpus, motion for Access to courts - The county Law Library in the 188th District Court. On the 8th day of January, 2013. Appellant was shackled and manacled like a wild animal, placed in a strip stall for over (5) five hours, then taken before Judge Brabhon for the hearing. Appellant wasn't even able to put on his own reading glasses due to the extreme hog tying. The motion and the hearing should be part of the record, however, in an abundance of caution, the Appellant will provide a copy of the motion and a writ of Mandamus that was filed in the 198th District Court of which explains in more detail. Not only was Appellant denied Access to the county Law Library, but also basic writing supplies to wit: Writing paper, carbon paper, envelopes, and even ink pens, in fact, Appellant had to write numerous writs and letters on the backs of other documents, all part of the record. The Appellant was repeatedly denied all discovery request see TCPP Art. 39.14 Discovery. Appellant was entitled to adequate discovery before, during, and even after Trial. But that didn't happen. Appellant was blindsided with the illegally seized evidence at this

5

erroneous Trial! Appellant Filed Two pro se Motions before Trial That are Supposed To be part of the record on Appeal, however, They were never ruled on by The Court Preserving Nothing For Appellate Review, hence, No adequate remedy on Direct Appeal! Ineffective Assistance at Trial and on Appeal!

Appellant was initially Court appointed Michael C. Lewis however, Mr. Lewis Failed to communicate or come and visit with Appellant in violation of The State bar rules No. 1.03 Communication and The Sixth Amendment! When Mr. Lewis Finally did come To see Appellant, he refused To File For an Examining Trial, and or Pre-Trial hearing (Suppression Motion, Private Investigator, Discovery) Mr. Lewis refuse To provide Appellant with any discovery whatsoever! Mr. Lewis Told Appellant That if he refused to plead guilty and Take 12 years in prison The State (Tonya Reed) was going To Come at Him with both barrels! Hence, The Two 60 year Sentence For The very same charge involving The very same alleged victim! The illegal Search and Seizure was never disclosed Whatsoever! Appellant Terminated his relationship with Mr. Lewis, citing Conflict of interest and ineffective Counsel! Appellant was later Court appointed Tim Conn! Needless to say, Appellant Continued to receive ineffective assistance of Counsel, even on Appeal! Whereas, Lew Dunn, The Attorney on Appeal, failed to include ineffective assistance of Counsel in his Motion For New Trial, however, Appellant did in his pro se Motion For a New Trial! Of which is available for Appellate Review see; Robinson V. State, 240 S.W. 3d 919 (Tex. Crim App. 2007) Lew Dunn did raise ineffective assistance of Counsel on Direct Appeal, see; Appellate's Brief!

Appellant assets That Due To Brady Violations, illegal Search and Seizure, Police Misconduct, and Prosecutorial Misconduct, and No investigation, very important exculpatory and impeachment evidence was intentionally and knowingly withheld, Manipulated, Tampered with, and Falsified! Which

6

prevented the evidence's inclusion as part of the record for Appellate review! Subterfuge: A clever plan or idea used to escape, avoid, or conceal something (a subterfuge to avoid all liability under a statute) Clerks record: 34.5, Agreed Record 34.2 By written stipulation filed with the Trial Clerk, the parties may agree on the Contents of the Appellate record. Obviously, Appellant never stipulated to the supposed agreed record as evident by all of the pro se Motions he filed in the case at bar. And all of the letters he wrote to his Court appointed Attorney, also included as exhibits! Whereas, an agreed record will be presumed to contain all evidence and filings relevant to the appeal. (2) any special plea or defense Motion that was presented to the court. (3) any request for findings of fact and conclusions of law; provided that the aforesaid is not replete with surplusage: 1. Redundant words in a statute or legal instrument; language that does not add meaning (the court must give effect to every word, reading nothing as mere surplusage 2. Extraneous matter in a pleading & allegations that irrelevant to the case will be treated as Surplusage. And any post-judgment motion (Emphasis supplied) (Appellants pro se Motion for a New Trial and Addendum to Motion for New Trial) (Writ of Mandamus in the Sixth Court of Appeals, including the 32 exhibits) And numerous other Motions filed by Appellant pro se in order to preserve error for Appellate review. Whereas; 34.5 Clerks record lost or destroyed; If a filing "designated" for inclusion in the clerks record has been lost or destroyed, the parties may, by written stipulation, deliver a copy of that item to the Trial Court clerk for inclusion in the clerks record or a Supplement. If the parties cannot agree, the Trial Court must on "Any Parties Motion" (Emphasis added) or at the Appellate Courts request determine what constitutes an accurate copy of the Missing item and order it to be included in the clerks record or a Supplement. (c) Supplementation! (1) If a relevant item has been omitted from the clerks

record, The Trial Court, The Appellate Court, or "Any Party" by "letter" direct the Trial Court Clerk to prepare, certify, and file in the Appellate Court a Supplement Containing The omitted item." (4) Failure to Timely request. An Appellate Court must not refuse to file the clerks record or a Supplemental Clerks record because of a Failure to Timely request items to be included in the clerks record, This is a Ministerial Duty." See, In re Washington 7 S.W. 3d 181 (Tex App. Houston 1st Dist. 1999) Appellant maintains and avers That he filed numerous pro se motions, letters, and Affidavits with the District Clerk, even several writs of Mandamus, even in the Texas Court of Criminal Appeals Writ No. WR-62,970-05 Date: 12/19/2012. Ex parte: Michael Dean Perry; see Padilla V. McDaniel, 122 S.W. 3d 805 (Tex Crim App. 2003) Appellant presented the Court with copies of both of The Motions for an Examining Trial and The Motion For a Private Investigator and requested that The Appellate Court issue an order directing The Trial Court to rule on the Motions and That The Clerk include the Motions in The record of The case for Appellate Review. Exactly what else is an indigent defendant supposed to do to protect his rights to Due Process and a Fair and Impartial Trial? No Hybrid representation indeed! Appellant made dozens of request to both his Trial Attorneys and his Appellate Attorney to include his grounds in The record of This Case. Court of Appeals has jurisdiction to Mandamus a Court reporter to prepare a Statement of Facts required to resolve questions on appeal, in order to protect its jurisdiction; Palacio V. Johnson, 663 S.W. 3d 490 (App 1st Dist. 1983) 21.2 When Motion for New Trial is Required. The defendant must be granted a New Trial, or a New Trial on punishment for any of the following reasons; (1) When a Material defense witness has been kept from Court by force, Threats, or Fraud, or Subterfuge, or when evidence tending to establish The defendants innocence has been intentionally destroyed or withheld, Thus preventing its production at Trial. Not-

with standing, "THE KNIFE", Police picked up in Appellants Home and Took with Them, all without a Valid Search Warrant. But also the testimony of another eye Witness, the Grandmother, Wilma McKinney, who was kept from testifying at Guilt Innocence phase of Trial was told by defense counsel Not to engage the jury! Wilma McKinney's testimony would have completely changed the outcome of the Trial! She would have testified that Police search their Home without a Search Warrant, or consent, That they picked up THE knife used to pick the lock and took it with them, That his granddaughter had No injuries and was Not Hysterical, she was of Sound mind! That she did Not witness an assault, Also, That She Found Appellants debit card in Alannas purse with a Zero balance! The alleged victim has also submitted Two Notarized Affidavits stating that the Appellant was only defending himself because she assaulted him, that at No Time did Appellant Threaten her with a knife! The Police and Prosecutors never have produced "THE KNIFE", either from the backpack or the Home, Where is it? There was also an Indictment pending on Alanna McKinney For Theft and Fraud of which the Prosecution never disclosed! Modus Operandi Steal Appellants debit Card, have him put in jail and continue to steal Money out of his bank account. Appellant receives (SSI) $710.00 per month direct deposit. Alanna McKinney and or her friends continued to steal over $2000.00 out of the Appellants bank account while he was in the County jail awaiting Trial. The Appellant requested that this dubious Trial Attorney, Subpoena his bank records however, Tim Lenz said he did Not want to impeach a Friendly witness! yet another defensive theory abandoned! Alanna also stole all the Money out of her own Grandmothers bank account, causing her to have to get a loan from the bank to pay her bills! Friendly Witness indeed. The proof is irrefutable! Bank records don't lie. There are Two defendants named in Alannas Indictment. One of these individuals may be the one that ran off before

9

police arrived. A Private Investigator would have been better able to assess the truth, interview the witnesses, subpoena the bank records, but Appellants trial Attorney and the Prosecutor didn't want the real truth to come out. Thats abundantly obvious by all of the Brady Violations! Duty To Disclose! Thats the reason Appellant filed his own Motion for a Private Investigator, to reveal the truth! Tim Cone only relied on the Police Investigation, or Lack of.

Appellant filed a pro se motion for a New Trial raising 17 issues that he wished to be addressed and ruled on for any future Appellate review. Said Motion was filed on March 24, 2013. however, the Motion was not stamp Filed until April 27, 2013. Appellant was bench warranted back to the 188th District Court for a hearing on Motion for New Trial. The Judge denied Appellants pro se motion for a New Trial, thus issuing a ruling on the merits see; Robin V. STATE 240, S.W 3d 919 (Tex Crim App 2000) The court then ruled on Lew Dunns Motion for a New Trial, However, Mr. Dunn fails to include ineffective assistance of Counsel at Trial in his Motion for New Trial and the Sixth Court of Appeal denies Appeal review and relief for that very reason whereas, Ineffective Assistance of Counsel may be raised in Motion for New Trial, see, Reyes V. STATE, 849 S.w. 2d 812 (Tex Crim App. 1993) Appellant raised grounds of ineffective assistance of Counsel in his pro se Motion for New Trial and supported it with a sufficient Affidavit. See also, Trevino V. STATE, 565 S.W. 2d 938 (Tex. Crim App. 1978) Without doubt hearing on a Motion for a New Trial is a critical Stage of the proceedings! The matters raised in Appellants pro se Motion for New Trial were not determinable from the record of the Trial and thus required a hearing. The Court abused its discretion in failing to hold a hearing on Appellants pro se Motion! Denying him meaningful Appellate review! The Court Could have combined Appellants pro se Motion With his Appellate Attorneys Motion as an Amended Motion for New Trial

10.

See Rules of Appellate Procedure Rule 21.4 Appellant raised 17 grounds in his pro se motion for New Trial That required Not only a hearing, but a New Trial. 21.2 When Motion for New Trial Required 21.3 Grounds (b) When the Court has Misdirected The jury about The Law or has Committed Some other material error likely to injure The defendants rights; (c) When a Material defense witness has been kept From Court by Force, Threats, or Fraud or When evidence tending to establish the defendants innocence has been intentionally destroyed or withheld, Thus preventing its production at Trial. (THE KNIFE) (Wilma Mckinney) (Witness That Ran Off)

There are references to Appellants pro se Motion for New Trial in the record of This case and in Appellate Attorneys Motion to Withdraw as Counsel. Also see Rules of Appellate Procedure Rule 33.2 Formal Bill of Exception. Also see Rules 34.5 and 34.6, specifically, (d) Supplementation and (e) Inaccuracies in The Reporters Record. Also see Rule 38.7. Amendment or Supplementation. Whereas A Brief may be amended or supplemented whenever justice requires, on whatever reasonable Terms The Court may prescribe.

Appellant avers That he raised 17 grounds in his pro se Motion For a New Trial, Not only ineffective assistance of Counsel, but illegal Search and Seizure, Not only his person and back pack, but also his Home, Brady violations, also see; The Michael Morton Act. See Michael Dean Perry; pro se Motion For a New Trial, Affidavit, and Addendum to Motion For a New Trial of which, all should be on File in The Clerks office. Also included as exhibits herewith.

Appellant avers That The state Failed to Follow The Mandate as dictated in Brady v. Maryland 373 U.S. 83, 87 S.Ct. 1194 (1963) requires That The prosecution disclose to the defendant both exculpatory evidence and evidence that would be useful for impeachment, regardless of the good faith of The prosecutor; United States v. Bagley, 105 S.Ct. 3375 (1995) To

prevail on a Brady Claim. The Defendant must show That (1) prosecution suppressed evidence (2) The evidence was favorable to the defendant, and (3) The evidence was material. Brew V. Collins, 964 F2d 411, 419 (5th Ci 1992) (cert denied US 113 S.Ct. 3044, 125 L.Ed 2d 730 (1993) The materiality standard is required to state a Brady claim see, Bagley 473 U.S. at 680-82, 105 S.Ct. at 3383 The evidence is material only if there is a reasonable probability that, had The evidence been disclosed to The defense, The result of The proceeding would have been different. Notwithstanding The two recant statements/ Affidavits from The alleged victim, but The Affidavit of The eye witness Wilma McKinney, who was effectively prevented from testifying at the guilt/innocence phase of Trial. Mrs. McKinney would have disclosed the illegal search of Appellants home, The seizure of The innocuous knife that Appellant used to pick The lock and dropped on The floor - That Police took with Them, never disclosing This fact, see Reply Brief filed by Lew Dunn, pp. 1-3 Also That her Granddaughter, The alleged victim was not injured or hysterical. Appellant avers That The state used hearsay statements and a "ersatz" demonstrative knife of a knife That Police claim That They found in Appellants back pack, without a search warrant or probable cause. The state erroneously lead The jury to believe That Appellant hid The knife in his back pack in order to cover up a crime - To prove culpability on the part of Appellant. The state wasn't even happy with that. The state even violated The agreement with defense counsel and contaminated the witnesses by showing Them The demonstrative knife before Trial, and it wasn't even The correct knife. Of Course The results of The Trial would have been different. And Appellant was denied a fair and impartial Trial. Appellants Court appointed Counsel went an interviewed Alanna and her Grandmother Wilma McKinney, long before Trial. Even obtaining

a recorded statement (Recant Statement) from the purported victim, never having produced the recorded statement at Trial. Both witnesses informed Trial counsel of the illegal Search and Seizure and the Police taking the Knife with them from inside their home, and all of those pictures! Clearly the results of the Trial would have been different. Tim Love and Tanya Reed knew all along about the illegal Search of Appellants home and the Seizure of evidence from his home! Not just the pictures of the inside of Appellants home but also the ersatz, No the actual Knife that Appellant used to pick the lock with! The Police took the actual Knife with them when they left, Never disclosing this fact to Appellant but Appellants Court Appointed Attorney, and the Prosecutors knew it! Tim Love waits until two days before Trial to tell Appellant about the illegal Search of his back pack in his driveway! Never disclosing this Brady violation to Appellant. One has to question, Why not? Subterfuge! Was direction! Just like having Appellants niece, the purported victim, to call Appellant on the Jailhouse phone! Violating the Emergency Protection Order! Everybody in the District Attorneys Office or the Sheriffs office are all culpable, Call it Laws of the Parties! If Appellant would have been able to question all of the Police Officers that illegally Searched his home and took the actual Knife with them, then the entire issue with the ersatz demonstration Knife would have been moot, There wouldn't have even been a Trial! Or if somehow the case would have made it to Trial, the jury would have had to be properly instructed in the Court charge, Art. 38.22 Evidence Not to be used! Jury instruction Mandatory C.C.P. Also see Foster V. State, 101 S.W. 3d 490, 499 (Tex App. Houston 1st Dist 2001 No pet.) Criminal law 777, When there is a factual dispute as to how evidence was obtained, the Trial Court is statutorily required to give an instruction on improperly obtained evidence!

13

# ADA

Americans with Disabilities Act of 1990

3(2)(A), 42 U.S.C.A. § 12102(2)(A); 29 C.F.R. § 1630.2, 1630.2(j)

Civil Rights Key 1218(2)
                    1426
                    1504
                    1019(2)
                    1033(1) A Lic/PreText

See; Withers V. State. 902 S.W.2d 122 Evidence May be Strong, Weak, contradicted or unimpeached; Wilkerson V. State. 933 S.W.2d 276 (Here, Jury charge Must include instruction (Abuse of Discretion) Reversible Error.

In the case at bar the second came to show an assumption that the Knife that was the subject of an illegal search of Appellants back pack (But Not His Home) was the knife used in the incident (see discussion of State and Appellants Counsel, and by the Trial Court at VRR 9-11) Witnesses (Objective Johnson at VRR 37-38; Chris Neal at VRR 112; Alanna McKinney at VRR 142; Dawn Ayers at VRR 77-78) identify the demonstrative Knife as Similar to the one purportedly held by Appellant. All of their testimony is, however, Tainted by the fact that the State, before Trial, showed each of them the exact Knife (A Knife From the State's very own investigators home!) and asked them if it was similar to the one used by Appellant during the altercation. Is not that called "improper suggestion" If it were a line-up, the identification testimony would be thrown out. See, Stovall V. Denno, 388 U.S. 293 (1967); Simmons V. United States, 390 U.S. 377 (1968); Neil V. Biggers, 409 U.S. 188 (1972); See, the Prosecutors acknowledgement of suggestion; But I have shown them this and asked them if it looked similar to, similar in size, shape and color to the one that they saw Mr. Perry had that particular night (VRR 11, lines 10-12) No offer of several different Knives and asking them to see which one might be similar. None of that Objective, Scientific? Rational? Seeking the Truth? Lacking in all that, No Due Process? Brady Violations!

Nowhere at Trial, or as a part of discovery, was there ever any evidence that the purported Knife actually used in the State's accusations was, in fact, the Knife allegedly pulled from Appellants back pack. Nor was there any evidence that a knife was ever pulled from Appellants back pack either! This is called a Chain of custody issue, and nowhere did the

14

State make the case, see, Foster v. State supra, where the crucial determination is of the [object] has been properly identified. See the eye witness Wilana Mckinney's, Sworn Notorized Affidavit, where she states that she witnessed the Police pick up the actual knife that Appellant dropped in the Home and take it with them! There is no evidence whatsoever, that the Appellant picked up THE KNIFE and stowed it in his back pack! The knife was dropped during the altercation with Alanna Mckinney, (VRP 127). None of the 14 [four] eye witnesses, including the alleged victim, said anything about the Appellant retrieving the knife he dropped in & then stowing it in his back pack! Most assuredly, the Black girl Dajontae that called 911, would have screamed in [hollared] that Appellant picked up the knife and stored it in his back pack! So how is it that the State is able conclusion to trace THE KNIFE to the one allegedly found in Appellants back pack? It cannot, and has not. A reasonable inference from this is that THE KNIFE was actually seized at the scene by investigators, but that it's characteristics and proportions made it a less-than deadly looking instrument (innocuous)! Was the States case made easier with the knife allegedly found in the back pack and, consequently, with the sure use of the ersatz demonstration knife at Appellants erroneous trial "to cover up the illegal search of Appellants home and the seizure of THE REAL KNIFE, all without a Warrant or Probable Cause! All of this undermines the statewelfacts (1) to say that the evidence was Legally Sufficient on the assaultive conduct and deadly weapon, (2) to say that there was no error in using the demonstrative knife, (3) to claim that the charge was not deficient, (4) that there was no ineffective assistance of Counsel, and (5) to conclude that the prosecutor did not commit misconduct. Of course, lets not forget Police misconduct, of which was never even addressed at trial or on direct appeal, Nor was the illegal search and seizure

of Appellants Home' See, Tim Cones Motion to Suppress Evidence, The Motion That he never actually filed Clearly it states Home as well' that motion should have been filed (7 seven days prior to trial and a hearing conducted, but that didn't happen' Subterfuge and Misdirection' The Government didn't want a Suppression hearing and neither did Court appointed attorney, Michael B. Lewis or Tim Cone' Considering they both had ample notice and time and presumably both knew about the illegal search and Seizure, Not only of The back pack but of Appellants home' as well' Of course, They never disclosed one of this To Appellant until Trial' (emphasis Supplied) For Crying out Loud, Tim Cone had the pictures of the inside of Appellants home and of his niece, The alleged victim! It's known wonder, Michael B. Lewis and Tim Cone didn't want to have a Private Investigator and that Tacitly concedes that The State didn't want an investigation either' This all goes beyond the scope of just ineffective assistance of Counsel, to attorney misconduct, and also Prosecutorial Misconduct Furthermore. Judges are required to report the attorney Misconduct to the proper authorities as Well' See, Appellants Petition for Discretionary Review)(Motions for Rehearing)

There was insufficient evidence Whereas, in each instance There is a valid, underlying uncertainty That The Demonstrative Knife was a replica of THE KNIFE! Consequently, The States insistence of the verity of That resemblance and replication skates on very thin ice, indeed. In Fact, the ice is so thin and insubstantial That The Weight of the problem is Sufficient to crack the ice and send it all down into icy Confusion - leading to insufficient evidence, in fact, no evidence failure of The demonstrative Knife to actually correspond to THE KNIFE! Consequently, the entire Trial was Tainted by The Lack of the real Knife! The jury was misled and Appellant was denied a fair and Impartial Trial'

The issue of ineffective assistance of counsel and prosecutorial misconduct revisited: See Appellant Attorneys Reply Brief, Second Reply; pp. 4 In its brief the state contends that Appellants Trial Counsel failed to preserve error by not making the proper objections (Of course, the Sixth Court of Appeals make the same assertion, even stating that the grounds on appeal do not comport with the objections made at Trial preserving nothing for Their review, leading to ineffective assistance on appeal as well, sight?) on the issue of the use of the demonstrative knife (States brief pp. 26-27) This, therefore, concedes the point of ineffectiveness of counsel at Trial. It also tacitly concedes the point of prosecutorial misconduct However, the state (while making that argument, mischaracterizes (lies) about what was occurring at The Trial Court during those moments (see; VRR 9-11) Appellant, by his dubious Counsel, had reached an agreement with the state about the knife allegedly found in the backpack - The knife would not be introduced into evidence at Trial and There would be no mention of it. (Note: Keep in mind, Trial Counsel knew all along about the illegal search of Appellants Home, and that the Police retrieved the actual innocuous knife used by Appellant That he dropped on the floor and took with them, never disclosing this fact to Appellant) Lew Dunn goes on to say that, Both the state and Appellant knew that the knife was available - That it existed somewhere in the property room of the police department or in the exhibit room with the District Attorney. Why else would Appellant have objected to its Admissibility? (Again, Appellant avers that the only knife that could possibly be in the possession of Police or the District Attorney would be THE KNIFE that was illegaly retrieved from his home, there was never a knife in his backpack, Subterfuge) All of these supposed failed objections that the state says were not lodged - all of those were subsumed

into the Motion To Suppress, a motion whose points had been agreed to in the parties' supposed agreement, now breached by the State. Of course, if that is not so, then the State has bolstered the claim of ineffectiveness of counsel and admitted Prosecutorial Misconduct. Not only the aforesaid but failing to report all of this misconduct is also a violation of the State Bar rules of Professional Conduct. This also tacitly concedes that the Trial Judge also is required to report attorney misconduct to the proper authorities. More on these issues later in this brief.

See; Simmons V. State, 622 S.W. 2d 111 (Tex. Crim. App. 1981) Where that Court held that a replacement, demonstrative, piece of evidence might be used "where the original would have been admissible at Trial". The purported "Original" knife — that is, the one allegedly taken by agents (whose names, and/or identities were never disclosed) of the State from Appellant's backpack, was certainly not missing or lost. The deciding factor was that it had been "Agreed" as inadmissible Period." The egregious problem with the knife was that the State and Appellant's dubious Court appointed Attorney had an agreement — and the State unilaterally breached the agreement. The Fourth Amendment was very much in play. Appellant never waived his rights to suppress the knife. Or if the State now contends that somehow that happened and Appellant failed to make that his Trial objection, then this ineffectiveness claim has just been bolstered by the State. (Also see Art. 38.23 Evidence Not to be used C.C.P.)

Contrary to the State's assertion, harm is analyzed under Section 44.2(a) Tex. Rules App. Proc. rather than Section 44.2(b), Tex. Rule Proc. App. because there is a Constitutional question at stake, namely, the Fourth Amendment problem attendant in the Motion to Suppress. That is clear in the Brief. However, what is Not mentioned at that in the Brief is all of

18

The other misconduct by Police and Prosecutors and Court appointed Attorneys, even the Trial Judge, who allowed all the misconduct go on in his courtroom, even denying the motion for mistrial. Whereas, the state would have been lost without its stage prop - it constantly, used the ersatz knife in the evidence phase and during argument. Even considering all the Brady violations (wrong knife)(Illegal Search and Seizure Items) How could all of this NOT be harmful? Notwithstanding all of the other misconduct that will be addressed in this habeas corpus and Memorandum of Law. The state and the Sixth Court of Appeals are wrong, this case should be reversed!

Prosecutorial Misconduct and Ineffective assistance of counsel, the knife and its complications, inter alia, Brady violations/Michael Morton Act Appellant, by his dubious counsel, had reached what he believed to be an agreement about the knife and recited it to the Trial Court. Then startling news comes from Asst. D.A. Reed: King's X, there is an agreement but not really! Even the cold record does not mask the surprise of the Appellants counsel, struggling to comprehend this unexpected reversal! (Bare in mind that they have waited until just 2 days before trial to present this erroneous deal to Appellant in his prison cell. Never disclosing the illegal Search of Appellants home and the fact that Police picked up the actual knife that Appellant dropped and took it with them.) Without giving any rationale why she thought the "demonstrative" use of a knife would be now acceptable (in defiance of established law in the use of an object for demonstrative purposes), Ms. Reed proceeded to represent to the Trial Court that this was acceptable; in one blow, she (a) blatantly, undid the agreement with counsel (an important discovery, and (b) was less than candid with the Trial Court in her reasons for

doing so. Both acts are prosecutorial misconduct and grounds for the reversal of the conviction.

By far, the most commonly-cited type of prosecutorial misconduct in wrongful conviction cases involves the withholding of exculpatory evidence. While many forms of misconduct can result in a conviction being overturned, so-called Brady violations named after Brady v. Maryland, 373 U.S. 83 (1963), are most often reported, as the withheld evidence can lead to the reversal of a conviction or finding of innocence.

For example, Michael Morton spent almost 25 years in Texas Prisons for murdering his wife, only to discover that Williamson County District Attorney Ken Anderson had withheld evidence at his trial- including a transcript of a telephone conversation in which his young son said a monster, not his father, had beaten his mother to death and that his father was not home at the time. Neighbors had seen a man in a green van parked in front of the Morton house several times before his wife's murder. Based on the belated disclosure of this evidence, a DNA test on a bloody bandana found near the crime scene was matched with another suspect, Mark Alan Norwood. Morton was released from prison in October 2011. He was exonerated two months later. Williamson County district attorney John Bradley had objected to the DNA testing (see; Blul. Geo. 2012, p. 56.)

Notwithstanding all of the other Brady violations committed by the parties in this case of bad, inter alia, the demonstrative hearsay - illegal search and seizure but there was also the jail house phone call of which Applicant raised in the habeas corpus Application. This issue was also raised in Appellant's Motion for Leave to file Amendment to Motion For Rehearing filed on September 15, 2014 in the Sixth Court of Appeals in Texarkana. Tx (pp. 30+13 paragraph 6.) Whereas, the jail house phone call revisited; On page 3 of Tonya Louise Reeds sworn

20

Affidavit in response to the grievance Appellant filed on her with the State Bar of Texas, Mrs. Reed states in part to wit: "I did not write the Appellate brief in this case, but the only content of that phone call used at Trial was as follows: Alonna (victim); I'm going to tell them that you used the knife not to come at me but just to try to get into the door (5 RR 128)" States Brief at pp. 12, 19, and 21. Nothing that Perry said in that phone call was mentioned. This excerpt from the phone call was presented to show the victims intent to lie about her use of the knife because she didn't want the defendant to be convicted of this offense.

Appellant maintains that the jury was entitled to decide that for themselves. They're the Fact Finders, Not the Asst. District Attorney, Reed. Appellant was entitled to Due Process and a Fair and Impartial Trial.

Whereas, there are certain precepts that have to be followed before a Taped conversation of a defendant can be used against him or her in Court or due at Trial, see; Edwards V. State, 551 S.W. 2d 731 (Tex. Crim. App. 1977)

(1) a showing that the recording device was capable of taking testimony.

(2) a showing that the operator of the device was competent.

(3) establishment of the authenticity and correctness of the recording.

(4) a showing that changes, additions, or deletions have not been made.

(5) a showing of the manner of the preservation of the recording.

(6) identification of the speakers, and

(7) a showing that the testimony elicited was voluntary and was made without any inducement.

Appellant would make this honorable court know that she was never ever provided with a copy of the transcript of the Jailhouse phone call.

As far as Appellant knows, said Jailhouse phone call was never admitted as evidence in the case at bar. Tanya Reed violated the (TCPD) Emergency

21

Protective Order, Case No. 132 - EPO-12 Filed on 10/17/2012, See Ground No. 6 Also Tanya Reed's Affidavit # 2014039974 (Exhibit # ? EPO) Mrs. Reed gives false testimony in her Affidavit Whereas, she states in part that there was No EPO, and that "she did not violate the EPO' Unbelievable! Of course, she ingeniously places any blame on her Coworker Zan Brown. See exhibit # 50 Sixth Court of Appeal acknowledgment of receipt of Appellants Notice of Appeal and the rules to be followed by all Parties, even pro se litigants! Whereas, The Sixth Court of Appeals follows The standards of conduct adopted by Order of the Texas Supreme Court and The Court of Criminal Appeals on February 1, 1995. All attorneys, parties, and pro se litigants appearing before the Sixth Court of Appeals are expected to fully comply with these standards of Conduct, as well as all applicable Texas Rules of Professional Conduct, Texas Rules of Disciplinary Procedures, and the Code of Judicial Conduct. A copy of the standards of Conduct is available on the Courts website. Therefore, there was no excuse for all the Parties involved to Not Follow the Rules! Appellant would make This honorable Court know That Tanya Louise Reed, Zan Cuteon Brown, Their Boss, Carl Dorrough, all violated the State Bar Rules, That of course Tacitly proves That Trial attorney, Tim Cone, and Court appointed attorney, Michael C. Lewis Were just as culpable, Scilicet, Failed to Maintain The integrity of The profession, VIII. Notwithstanding Rule 8.03 Reporting Professional Misconduct, Whereas, A Lawyer having knowledge That another Lawyer has committed a violation of applicable rule of professional conduct That raises a substantial question as to That Lawyers honesty, Trustworthiness, or Fitness as a Lawyer in other respects, shall inform The appropriate disciplinary authority, And That is exactly what Appellant did with respect to Tanya Reed

22

and Tim Lane, but no one else filed a grievance with the state bar! Notwithstanding all the Brady violations in the case at bar; Jailhouse phone call, demonstrative knife, witness tampering, illegal search and seizure, double jeopardy, withholding evidence etc, etc. In fact, there were so many violations in Appellant's case its almost overwhelming, let's review some types of misconduct shall we?"

Whereas, The Prosecutors role in our Adversarial Justice System - to obtain convictions, regardless of a defendant's guilt or innocence - necessarily creates competitiveness in terms of winning cases. But as stated by the U.S. Supreme Court, "While he may strike hard blows, he is not at liberty to strike foul ones" It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. See, Berger v. United States, 295 U.S. 78, 88 (1935) According to the Innocence Project and the Center for Prosecutor Integrity, the Foul blows that prosecutors may strike can assume many forms, including, but not limited to the following;

1. Charging a suspect with more offenses than is warranted!

2. Making race-based jury selection decisions in violation of Batson v. Kentucky!

3. Withholding or delaying the release of exculpatory or impeachment evidence!

4. Allowing witnesses They know or should know are not truthful to testify!

5. Pressuring or threatening witnesses for the defense not to testify!

6. Pressuring or threatening witnesses to testify for the prosecution!

7. Relying on Fraudulent Forensic experts

8. During plea negotiations, overstating the strength of the evidence;

9. Making statements that are designed to arouse public indignation.

10. Making improper or misleading statements to the jury or Court.

11. Failing to report misconduct by other prosecutors!

Prosecutorial misconduct has many permutations. Beyond the more typical examples cited above, sometimes prosecutors simply break the law themselves, using their positions of authority to further their own personal interests. Narcissistic-Self absorbed!

Clearly in the case at bar, Appellant Perry has made a prima facie showing that the Prosecutors in his case violated nearly all of the Rules as stated aforesaid, and more! Even the District Judge failed to report all of their misconduct as required by law!

Again, Notwithstanding all the Brady violations, subterfuges and misdirections, the Prosecutors knew about the rules governing the Jailhouse phone call, demonstrative knife, illegal search and seizure and of course, Discovery, long before Appellants erroneous Trial! Appellant has strict proof thereof! Ms. Reed, Carol Dorrough, and Zan Lowe violated the State Bar Rules; (a) blatantly failed to keep the agreement with counsel on important discovery, and (b) was less than candid with the Trial Court and the Appeals Court in her reasons for doing so, let us not forget filing a false Affidavit with the State Bar! Ms. Reed and all the other attorneys withheld Alonna McKinney Indictment, Judgment, Plea Bargain, and subsequent Deferred Adjudication Probation for over 2 years only providing this important discovery with her erroneous Affidavit. All of these acts and more are grounds for a reversal of the conviction. Appellant has the right to a Fair and Impartial Trial and due process.

24

Free from prosecutorial bad faith and attorney misconduct, even judicial misconduct, guaranteed and protected by Fourteenth Amendment Due Process and Article I, Section 19, Due Course of Law, Texas Constitution. See also; Ex parte; Adams, 768 S.W. 2d 281, 290 (Tex Crim. App. 1989)(finding reversible error in prosecutors bad faith by intentionally failing to disclose evidence material to defence) Under State bar rules 3.01, 3.03, and 3.04 Counsel for the State, and any other opposing counsel, shall not assert an issue unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous, owes a duty of candor to the Tribunal, has a duty not to knowingly obstruct the other parties access to evidence, and has a duty not to knowingly disobey an obligation under the rules of a Tribunal.

See; Ex parte Adams, supra. pp. 288-289 For over two decades both the Supreme Court and State appellate courts have attempted to resolve the ambiguities of the Brady decision. In Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763 (1972) The Supreme Court decided that evidence of a promise of leniency to a witness made by another prosecutor should have been disclosed to the defense even if the prosecutor trying the case acted in good faith and did not know of the offer because a promise made by one attorney must be attributed to the Government. Id., at 154, 92 SCt at 766. Accordingly, The court concluded that the governments failure to disclose the impeachment evidence was a violation of due process. (See Tanya Reeds Affidavit) To be sure the alleged victim received deferred adjudicated probation and other charges were dismissed! She was in fact under indictment at the time of Appellant Trial. Appellant did not receive this information until after about (2) two years later in his prison cell, includes with Tanya Reeds Affidavit!

What is not included in Ms. Reed's ingenuous Affidavit, inter alia, was the fact that the alleged victim presented himself at the prosecutors office long before trial and attempted to dismiss the unfounded charges against the Appellant. However, Ms. Reed would not permit Mr. McKinney to drop the charges, telling Alonnia McKinney that she would have to first take a six week family violence class and I pay the fine. Alonnia McKinney submitted not one, but two sworn notarized Affidavits recanting his accusations and admitting that she assaulted her uncle first and that he only defended himself. Furthermore, that he never pointed a knife in her direction. All of this exculpatory evidence, impeachment evidence, was deliberately withheld from the record in this case. Appellant even filed a subsequent Motion for a new trial pursuant to Rule 40.001 C.C.P. in the 188th District Court and included one of Alonnia McKinney's Affidavits - Notarized Statements, to no avail. All of this evidence will be included as an exhibit with the Application for Writ of habeas corpus Art. 11.07.

In Brady, the U.S. Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. There are three components of a Brady violation: The withheld evidence must be favorable to the defendant because it is exculpatory or can be used for impeachment purposes; The evidence must have been suppressed by the prosecution (even court appointed counsel), either willfully or unintentionally; and prejudice to the defendant must have resulted. Even when a defendant fails to properly request favorable evidence, the government is still liable for failure to disclose certain information (Demonstrative evidence - Recant Statements) Constitutional error

results of favorable evidence is withheld and there is a reasonable probability that, had the evidence been disclosed to the defense and the jury, the results of the proceeding would have been different (See Appellant's pro se Motions for Rehearing and Amendment to Rehearing and Petition for Discretionary Review, Amendment to PDR, Two Writs of Mandamus, Memorandum of Law in Support of Application for Appointment of Counsel (Post Conviction Art. 11.07 C.C.P Habeas Corpus filed on 16-27-2014) All of the Aforesaid documents should be on File in the Clerks office, either in our the Sixth Court of Appeals, the 188th District Court. However, in an abundance of caution, Appellant will submit these documents with this Application for Writ of habeas Corpus Art. 11.07.

See, Ex parte Adams, supra pp. 392. The constitutional principles requiring disclosure of evidence favorable to an accused and the prohibition on knowingly using false evidence to convict are basic to the due process of Law mandated by the Fourteenth Amendment. Such rights are equally applicable to the due course of Law rights identified in Art. I § 19 of the Texas Constitution. Accordingly, the decision of this court in enforcing these rights is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair Trial to the Accused. Brady v. Maryland, supra, 373 U.S. at 87, 83 Sct. at 1196.

Appellant would make this court aware that he filed numerous pro se Motions, pleadings, and Affidavits in a concerted effort to preserve error and to protect his Substantial Due Process Rights. Even filing his own pro se Motion for a New Trial, raising 17 grounds, including but not limited to ineffective assistance of counsel, Something the Sixth Court of Appeals faults Appellate Counsel for Not doing and denying Appellant relief for that reason. Appellant was denied all

27

240 SW 3d 919 (Tex Civ App 2007)

Said hearings are

available for Appellate review. In Smith V. Lockhart, 927 F 2d 1314 (1991) Smith argues that the omnibus hearing held Nov. 6th was critical stage necessitating effective assistance of counsel. This hearing was held pursuant to Ark. R. Crim. P. 20. It is a pre-trial hearing in which motions are made and ruled upon, and procedural and constitutional issues are made and ruled upon and considered. Defendants are allowed to change their pleas Rule 20.3 Any defensive motions that could have been made are waived unless the party lacked the information to raise the issue Rule 20.3(c) Appellant avers that this rule is quite similar to Art. 28.01 C.C.P. Pre-Trial hearing, ie. Motion to Suppress Evidence, and/or other preliminary matters, or even an Examining Trial or Motion for Appointment of Counsel, Access to Courts - Law library - County law library! Appellant maintains and avers that due to an abuse of discretion and bias and Brady violations, notwithstanding Prosecutorial misconduct and Ineffective Assistance of Counsel. Appellant lacked the necessary information to raise certain issues (illegal Search and Seizure Hearing) in order to preserve error, resulting in available defenses being irretrievably lost, right? See: Hamilton V. Alabama, 368 U.S. 52, 54, 82 S.Ct. 157, 158, 7 LCd 2d 114 (1961) Constituting prejudice and the denial of Appellants Substantial Due Process Rights guaranteed under the Fourteenth Amendment, U.S. Constitution and Due Course of Law Provision, Tex. Const. art. 1 §19 and Tex. Code Crim. Proc. Art. 1.04; Wilson V. State, 536 S.W. 2d 375 at 377 (Tex. Crim App 1976) Federal Argument tests in due process rights as guaranteed under U.S. Const. amend. XIV; See Jackson V. Virginia, 443 U.S. 307, 319 (1979) In re Winship, 297 U.S. 358 (1970), In Smith V. Lockhart, The court considered eleven pro se motions Smith had filed, as well as whether Smith would agree to accept Marquette as his attorney, at Trial committed

his motion for New Trial. Among other issues, but by no means limiting the points of disagreement, one of those issues (raised at several points in his motion) concerns Mr. Perry's assertions that Trial Counsel rendered ineffective assistance of Counsel. Counsel disagrees with Mr. Perry about bringing forward this issue on Direct Appeal by raising such matters in a motion for New Trial. And Appellant maintains that the Sixth Court of Appeals faulted Perry for Not preserving error of ineffective assistance of Counsel by not raising the claim in Motion for New Trial, "Indeed" See; Reyes V. State. 849 S.W.2d 812 (Tex Crim App 1993) "Ineffective assistance of Counsel may be raised in Motion for New Trial, of which is Cited in Appellant pro se Motion for New Trial" Furthermore, Appellate Counsel Lew Dunn, contradicts himself further by including at least three grounds of ineffective assistance of Counsel in Appellate Brief. Of which the Appellate Court rejected because error was not preserved in Motion for New Trial" Indeed!!

Appellant's Counsel on Appeal, Lew Dunn, reasonably believes That the Filing of the pro se Motion for New Trial poses a Conflict between Counsel and Michael Dean Perry, Counsel represents to the Court That he has a Fundamental disagreement with client about the basic procedure involved in this appeal about the presentation of various issues for the appeal. Counsel does not believe that the Conflict can or will be resolved' Counsel request to be withdrawn' (Emphasis added))

Appellant Perry avers that he has a Fundamental Right to Conflict Free and effective assistance of Counsel, Not only at Trial, but on his First Appeal as of Right" See, Evitts V. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed 2d 821 (1985) Appellate Counsel Further asserts The appeal is still in an early stage, such that, on the one hand, The Court Could permit Perry to represent himself pro se or, on the other hand, permit withdrawal of Counsel and then

31

appointment of other Counsel. Either of such steps will not prejudice the Timely research, Writing, and submission of a brief, or other procedures connected with the consideration of the appeal. And Appellant poses this question to the Texas Court of Criminal Appeals. How could this ever have occurred in this Case. under these circumstances? Appellant was confined in a solitary Cell the entire time before trial at the Brazz County Jail, because he was a thorn in Government's Side (this Came testimony at trial) Denied his writ of habeas Corpus - Access to Courts - request to use the County Law Library in the 188TH District Court, in order to prepare a defense of the pending Serious Criminal Charges. Further- more, Appellant's initial Court appointed Counsel, Michael B. Lewis, Failed to pro- secute this Case, Failed to communicate with his client (and to adequately advise) Appellant about the progress of his case. His erroneous advise to Appellant was to plead guilty and except 12 years in Prison' if not, the state (Tanya Reed) was going to come at him with both barrels, hence, the two 60 year sentences.' There was never any offer to investigate the case or interview witnesses or even to ascertain if Appellant was actually innocent. Appellant fired Mr. Lewis. See. Smith V. Lockheart, Supra. In this case, when a defendant raises a se- emingly substantial complaint about Counsel, the Judge has an obligation to inquire thoroughly into the factual basis of defendant's/appellant's disatisfaction, Hart. 557 F2d aT 163. see also Hudson V. Rushen, 686 F2d 826, 829. (9th cir 1982). Cert denied, 461 U.S. 916, 103 S.Ct. 1896, 77 L(e)2d2857 1977); Sch- Wanzer. Dealing with incompeten Counsel- The Trial Judge's Role. 93 Harv. Law Rev. 633, 652 (1980); Cf. Wood V. Georgia, 450 U.S. 261. 272, 101 S.Ct. 1097, 1104 67 L(E)2d2220 (1991 (holding that mere possibility of a conflict of interest Trigges duty to inquire) The Trial Court must make the kind of inquiry that might ease the mind of defendant and his disatisfaction, distrust, or Concern. Hudson, 686 F2d aT 829 That inquiry should be in the record

32

It should be important to note that Appellant Perry, also had a conflict with his subsequent court appointed counsel at Trial, when Appellant discovered in the middle of Trial that his attorney, Tina Cone, withheld Brady Materials from him; see; Brady v. Maryland, 373 U.S. 83 (1963) (exculpatory, and impeachment evidence) only to blindside Appellant with the erroneous evidence at his Trial. Well, some of it; A great deal of the Brady Materials were never disclosed to the Appellant by Trial Counsel, Counsel on Appeal, or even the Prosecutor. In fact Appellant discovered some of the other evidence through his own investigation from his prison cell. In fact some of the evidence has never been disclosed to Appellant or even the Courts; Two items come to mind, the witness that ran off before the Police arrived, THE REAL KNIFE. Oh, wait, Three more; Where's the Search Warrant for Appellant's Home? The names and identities of all the other Police that searched, not only, Appellant's back pack, but his home as well. Surely, Sgt. Nikkie Williams didn't arrest Appellant, Search his back pack, Then his home, interview the witnesses, Take all those photographs, Then Transport Appellant to the Jail all by herself? Or did she? That's what the Police Report and record in this case seem to indicate. Neither one of Appellant's dubious Court appointed attorneys hired a private investigator, at Trial or on Appeal; see, Ake v. Oklahoma, Supra. Appellant was entitled to a Private Investigator, even on Appeal. Whereas, a Private Investigator would have been better qualified to investigate the facts in this case and to assist them in the preparation of his defense. Based on this very limited, and/or nominal investigation in this case, the Appellant avers that there were a number of witnesses who should have been sought out and interviewed (other Police Officers, the witness that ran off, Wilma Mckinney) This could have only been done properly and effectively through the use of a Private Investigator. Appointment of a Private Investigator was necessary to insure that Defendant/Appellant received his rights to effective assistance of Counsel, cross-examination, and Confrontation,

77.

and compulsory process, guaranteed by the Sixth Amend. and Fourteenth Amend. to the United States Constitution; due process and due course of law, guaranteed by the Fourteenth Amendment, and Art. I sections 3 and 3a, and Art. I section 19, due course of law provisions of the Texas Constitution, Notwithstanding Art. I, section 10 of the Bill of Rights. Appellant avers and maintains that he was denied Brady Materials; Before, during, and even after Trial. See; Michael Dean Perry's pro se Motion for New Trial, Affidavit in Support of Motion for New Trial, and Of course Perry's Addendum to Motion for New Trial, all of which will be submitted with this Application for Writ of Habeas Corpus Art. 11.07. In fact Appellant will be submitting dozens of pro se Motions, affidavits, letters to and from his dubious attorneys, and other exculpatory evidence.

There was Prosecutorial Misconduct and Judicial Misconduct, which is evident in the record. Appellant even filed a grievance with the State Bar of Texas on the Prosecutor, Tanya Reed, urine of all things, the grounds of prosecutorial misconduct from Appellate Brief. This was long before Appellant was denied relief on Direct Appeal. The State bar ordered, Ms. Reed to submit an Affidavit to address the allegations of misconduct. Ms. Reed's Affidavit is replete with falsities, and especially concerning the Emergency Protective Order of which is included as an exhibit. Even the issue concerning the demonstrative knife; one of the issues is the lack of Notice, Contrary to the Court's opinion, the Prosecutor is required to give the defendant a (5) five day prior Notice before its use, see the Court's very own Pre-Trial Orders, also included with this Writ. Candor to Tribunal. Right? Appellant also filed a grievance with the State Bar on this case. Even Though Lewellen included Prosecutorial Misconduct in Appellate brief, he failed to report the misconduct to the Bar association. In fact Appellant is the only person that reported the misconduct. Not only were all of the other attorneys required to report the misconduct to the Chief Disciplinary Counsel, see; State Bar

34

of Texas, Rule 8.03. The Presiding Judge is also duty bound to report the attorney misconduct to the proper authorities. See Canon 3 D(2) Code of Judicial Conduct. Appellant reported the misconduct notifying the Trial Judge by letters and by numerous pro se motions. And of Course, in Appellants Brief and a Writ of Mandamus in the Court of Appeals. (Trial proceedings before a biased judge are presumptively unfair and such unfairness is reason enough to grant a writ of habeas corpus. See; Walker V. Lockhart 763 F(2)842, 960 (8th Cir 1985); Cert Denied, 478 U.S. 1020, 106 S.Ct 3332 92 L.Ed 2d 778 (1986) Whereas, the Prosecutor Committed numerous acts of Misconduct at Appellants Trial, even goading Appellants Trial attorney, into to requesting a Mistrial, then a running objection. Of which was arbitrarily denied by the Trial Judge. Showing bias and prejudice, even favoritism towards the Prosecutor, Ms. Tanya Reed. See, United States V. Meyer, 462 F.2d 827, 842 (D.C. Cir 1972) In general, Judges should recuse themselves when they have become enmeshed in personal disputes with parties before them. See eg. id at 836, Clark V. State 287 Ark. 221, 697. S.W.2d 895, 897 (1985) The Supreme Court has explained that when the Trial judge is discovered to have had some basis for rendering a biased judgment, his actual motivations are hidden from view, (Perrys a Thorn in Governments side) and we must presume the process was impaired. Vasquez V. Hillery, 474 U.S. 254. 263, 106 S.Ct. 617, 623, 88 L.Ed 2d 598 (1986) (dicta) (citing) Tumey, V. Ohio, 273 U.S. 510 535, 47 S.Ct 437, 445, 71 L.Ed 749 (1927); see also; Bolden V. State, 262 Ark. 718, 720 561 S.W.2d 281, 283 (1978); Code of Judicial Conduct, Canon 3 (c)(1)(1972) (Judges should disqualify themselves when their impartiality might reasonably be questioned) the Trial proceedings before a biased judge are presumptively unfair and such unfairness is reason enough to grant a writ of habeas corpus. See, Walker V. Lockheart 763 F.2d 942, 960 (8th Cir 1985); Cert Denied, 478 US. 1020. 106 S.Ct 3332, 92 L.Ed 2d 738 (1986)

5. Code of Judicial Conduct Canon 3. D(2)

35

A Judge who receives information clearly establishing that a Lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct should take appropriate action. A Judge having Knowledge that a Lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct that raises a substantial question as to the Lawyers honesty, Trustworthyness or Fitness as a lawyer in other respects shall inform the office of The General Counsel of the State Bar of Texas or Take other appropriate action.

6. <u>Tex. Code of Crim. Proc. Art. 2.01 Duts of District Attorneys</u>
It shall be the primary duty of all prosecuting attorneys, including any special prosecutors (Tanya Reed?) Not to Convict, but to see that justice is done They shall not Suppress Facts or evidence or Secrete witnesses capable of establishing the innocence of the accused.
Art. 2.03 C.C.P. Neglect of Duty, (b) Not to impair the presumption of innocence.

7. <u>State Bar Rules of Texas</u>
Rule 8.03 Reporting Professional Misconduct
(a) Except as permitted in paragraphs (c) and (d), a lawyer having knowledge that another lawyer has committed a violation of applicable rules of Professional Conduct That raises a substantial question as to that lawyers honesty, Trustworthy ness or Fitness as a lawyer in other respects, shall inform the appropriate disciplinary authority.
Rule 8.04 (a) A Lawyer shall not (1) Violate these rules, Knowingly assist or induce another to do so through the acts of another, whether or not such violation occured in the course of a Client-lawyer relationship. (3) engage in Conduct involving dishonesty, fraud, deceit or Misrepresentation (4) engage in Conduct constituting obstruction of Justice (6) Knowingly assist a Judge or Judicial

officer in conduct that is a violation of applicable rules of judicial conduct or other law (4) violate and disciplinary or disability order or judgment.

(5) fail to timely furnish the Chief Disciplinary Counsel's office or a district grievance committee a response or other information as required by the Texas Rules of Disciplinary Procedures unless he or she in good faith timely asserts a priviledge or other legal ground for failure to do so.

Note: 17 Lawyers holding Public Office assume legal responsibility going above and beyond those of other citizens. A lawyers abuse of a public office can suggest an inability to fulfill the professional role of an Attorney.

The Appellant Perry makes this observation; As according to the rules stated aforesaid, and even some of the rules not mentioned. Not only did Prosecutors in the case at bar commit misconduct, but the record tacitly shows that all of the Attorneys involved in the case at bar also committed misconduct, interalia, failed to report Attorney misconduct to the Chief Disciplinary Counsel of the state bar. Only the Appellant went out on a limb and reported the misconduct on at least two of the Attorneys (of which Appellant will provide proof thereof) This would include but not limited to; Zan Colson Brown, Carl Dorrough, and Lew Dunn This also tacitly concedes that the Trial Judge, David Brabham, violated canon 3 D(2) by failing to report the Attorney misconduct to the proper authorities. This rule might implicate the Appellate Court Justices as well, since they were put on notice of the Attorney misconduct in the Appellate Brief. Whereas, Whether Trial Attorney, and or Appellate Attorney preserved error, and or made the proper objections at Trial (and or on Appeal is not the underlying issue! Whether Michael Dean Perry received a fair and impartial trial, that is the real issue, Not subterfuge in this direction!

See the Sixth Court of Appeals Memorandum Opinion in which they deny Appellants grounds of ineffective assistance of counsel on direct review.

37

see, Page 33, ground 10. No Ineffective Assistance of Counsel Was Shown.

The court ingeneously states That Perry argues That his counsel was ineffective because he (1) Failed to pursue Perrys motion to suppress the knife based on the States agreement, (2) did not request a limiting instruction with respects to the demonstrative knife, and (3) failed to hire an investigator to reveal the identity of the unidentified man who witnessed the altercation but left before officers arrived."

First of all, the arguments asserted on direct appeal were made by Appellate Attorney, Lew Dunn, Not by Perry. There was a fundamental disagreement about what issues should be raised on Direct Appeal as the conflict of interest as previously discussed in This Application. Notwithstanding, all of the Brady violations, Prosecutorial Misconduct, Ineffective Assistance of Counsel, and even Judicial Misconduct, and abuse of discretion! Having clarified the aforesaid, Appellant will Try to address the above stated issues again to the best of his ability!

The court states That "To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness and (2) That There is a reasonable probability That, but for counsel's unprofessional errors, the results of the proceeding would have been different. Strickland V. Washington, 466 U.S. 668 (1984); Ex parte Imoudu 284 S. W. 3d 866, 869 (Tex Crim App 2009) Failure to make either one of these required showings defeats an ineffectiveness claim. See Williams V. State, 301 S.W.3d 675, 687 (Tex Crim App 2009), Ex parte Martinez, 195 S W 3d 712, 730 n.14 (Tex Crim App 2006). The Appellant would point out That The Sixth Court of Appeals analysis of the issues argued in this erroneous appeal were based on subterfuges in this direction, Brady violations, violations of the Michael Morton Act, Prosecutorial Misconduct, perjured testimony, Judicial Misconduct, Attorney Misconduct, and last but not least, ineffective assistance of counsel. The Court goes on To support Appellants

38

assertions, when it states, From the record; Whereas, We began our analysis with The rule That "any allegation of ineffectiveness of Counsel must be firmly founded in the record. Case citing omitted. From the record, which does not include an explanation of Counsels reasoning, Perry bears The burden of proving by a preponderance of the evidence That Counsel was ineffective." See The courts foot note p. 34. Although the Trial court heard "Perry's motion for New Trial, "Perry presented no complaint or evidence relating to ineffective assistance" (Emphasis supplied on The "Perry" part) Appellant Perry did raise numerous grounds of ineffective assistance of Counsel in his pro se motion for New Trial, of which the court overruled, The court only ruled on Lew Dunns motion for a New Trial of which did Not include ineffective assistance of Counsel, of which prevented Appellant from Subpoenaing Tim Coue-Trial Counsel in order to develope The record and include a comprehensive evaluation of his reasoning for Not making the proper objections at Trial, Failing to hire a private investigator, failure to inform Appellant about The illegal Search of, Not only his back pack, but his Home as well, That The Police, while illegally Searching his Home, picked up the actual knife used in the alleged crime, off the floor and took it with Them, His failure to interview any of The witnesses, aside from Alanna McKinney, failed to Subpoena Wilma McKinney, The other eyewitness, and prevented her from testifying at the guilt/innocence phase of Trial, Nor did he get a recorded statement from any of The witnesses, Even failing to provide the court with The recorded recant statement from the alleged victim, See Wilma McKinneys, eyewitness sworn Affidavit, also See The alleged victims sworn Affidavits, Further, Tim Coue failed to file a motion to Quash The indictment on Double Jeopardy Grounds, failed to object to all of the charge errors and The amendment of both the erroneous indictment and the courts charge in the middle of Trial, failed to request a defensive theory be included in the courts charge

39

See Perry's prose Motion for New Trial p. 11 of 15 ground 17. To preserve error on appeal defendant must raise identical point in Motion for New Trial. If evidence raises defensive theory, accused is entitled to have that theory submitted to the jury. Lew Dunn failed to even include in effective assistance of counsel in his dubious Motion for New Trial. Of which the Court of Appeals rejects Appellants claims of ineffective assistance of Counsel for that very reason, inter alia, Trial Counsel failed to make the proper objections at Trial and Appellate Attorneys objections on Appeal do not comport with the objections made at Trial therefore error was not preserved. See Courts Opinion p. 25 ground 7. No error was preserved regarding the "claimed" Breach of Agreement regarding the Knife. (First of all, the Court makes it appear that Perry did or did not do this or that. It was Trial Attorney, Tim Cone and Appellate Attorney Lew Dunn who failed to preserve error, or did make the proper objections, Not Perry.) Tim Cone and Michael B. Lewis Jr., and Tanya Reed, are the ones that deliberately withheld Brady materials, like the Illegal Search of Appellants Home, the Police taking the Real Knife with them from Appellants Home without a Search Warrant, the eye witness testimony of Wilma McInerney, who states, inter alia, that her dear sweet Granddaughter was Not Hysterical and that she had No injuries. Of course the Trial would have had a different outcome, Especially considering all of the other errors, Misconduct, Brady Violations. Courts opinion p. 26 Perry argues that the state committed prosecutorial misconduct when it blatantly undid the agreement with counsel on important discovery and was less than candid with the Trial Court in its reasons for doing so. Perry's point of error does not complain of anything by the Trial Court. This is because Perry did not raise, and did not secure a ruling on this ground of alleged prosecutorial misconduct. Hall. To preserve a complaint for Appellate review, the complaining party must make a specific objection

See Foster V. State, 101 S.W. 3d 490, 498 (Tex App.-Houston (3-T Dist) 2002) 5. Jury Charge

In point of error Five, appellant contends the Trial Court erred by refusing to submit a jury charge on the legality of the second pat-down search of appellant. If evidence admitted at Trial raising any doubts as to the legality of how it was obtained, the jury shall be instructed that if it believes, or has reasonable doubt, that the evidence was obtained illegally, then the jury must disregard the evidence. Tex. Code Crim. Proc. Ann. art. 38.23(a)(Vernon Supp. 2002) When there is a factual dispute as to how evidence was obtained, the Trial Court is statutorily required to give an article 38.23 instruction in the jury charge. See also Westbrook V. State. 29 S.W. 3d 103, 121 (Tex Crim App 2000) Whereas, Not only was there a legal issue as to how the evidence was obtained in the case at bar, but there was also a factual dispute, even more so on both accounts in light of the Search and Seizure of Appellant's home and the fact that Police also Searched Appellant's home without Probable cause or a Valid Search warrant and picked up the Actual knife used in the alleged assault and took it with them. Never disclosing this fact. Furthermore, this Court also knew about, Not only, the illegal Search of Perry's back pack, but his home as well, but didn't bother to tell Appellant Perry about it. In fact, Appellant was blindsided with all of this erroneous evidence and Police misconduct at this Trial.

Furthermore, there was No Chain of Custody of, THE KNIFE Period. The fact remains that there was never any evidence to support the claim that Police found a knife in Appellant's back pack. Just the word of Nikkie Williams. None of the other Police officers Submitted a Statement claiming that THE KNIFE was found in Perry's back pack. The State has never produced in any way presented the Real Knife. Where is it? The State never has shown the beginning and the end of the chain of Custody of the Actual knife. If they did, they would have had to admit before Trial the illegal Search

and Seizure of Appellant home and the fact that Police picked up THE KNIFE and took it with them also, that Police photographed the inside of Appellant's home and his knife. The purported victim, that Police did not get a recorded statement from any of the witnesses or victim. Especially, eye witness, Wilona McKinney, who would have testified that her Granddaughter, Alanna McKinney, was not hysterical, had no injuries and was of sound mind and that Police had NOT obtained a consent to search her home or produced a valid search warrant. That Police picked up THE KNIFE Appellant dropped and took it with them. Talk about a Brady violation! These violations should not continue see United States v. Tavera, 719 F.3d 705, 708 (6th Cir 2013) The Law and Tanya Perio knew about the illegal search of Appellant's home and all of those pictures and probably the fact that Police took the Real knife with them. Tim Lew was Court appointed therefore, he can be considered a Government employee - STATE actor. The Government must provide defendants with material, exculpatory evidence in its possession. Failure to do so results in that that is Fundamentally unfair. The Supreme Court has never wavered from this principle. So long as favorable evidence could very well effect the judge decision, prosecutor must disclose it. Heck, even Court appointed counsel! And when they fail to do so. Courts have a duty to order a retrial, allowing a jury to consider the previously concealed evidence. Duty, to disclose, even without due diligence of defendant Whereas, sole "Thus declaring prosecutor may hide, defendant must seek" is not tenable in a system constitutionally, bound to accord defendants due process.

Appellant received ineffective assistance of Trial and on Appeal of Court appointed Counsel Whereas, The Sixth Amendment, made applicable to the States by way of the Due Process Clause of the Fourteenth Amendment entitles a criminal defendant to the effective assistance of Counsel

43

not only at Trial, but during his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 LED2d 821 (1985) As the Court explained in Evitts; In bringing an appeal as of right from his conviction, with its consequent drastic loss of liberty, is unlawful, to prosecute the appeal, a criminal appellant must face an adversary proceeding that - like a Trial - is governed by intricate rules that to a lay person would be hopelessly forbidding. An unrepresented appellant - like an unrepresented defendant at Trial - is unable to protect the vital interest at stake! To be sure, Appellant did have nominal representation, not only at Trial, but when he brought this appeal as well. But nominal representation on appeal of right - like nominal representation at Trial - does not suffice to render the proceedings Constitutionally adequate; A party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all! 469 U.S. at 369, 105 S.Ct. at 836 A lawyer who does not provide the defendant/appellant with effective assistance on direct appeal and who is prejudice by the deprivation is thus entitled to a New Appeal!

See House Bill 166, Austin, Tx. A Bill That would create a commission named after Timothy Cole, The Texas Tech University Student who was wrongly convicted of rape and died in prison before being exonerated, is closer to becoming law. The Texas House of Representatives on Tuesday gave preliminary approval to House Bill 166, a measure that would create the Timothy Cole Exoneration Review Commission. The nine member panel would examine wrongful convictions to determine what error the Prosecutors or defense counsel committed during the investigation of the case, and or during Trial or the Appeal. It was a voice vote, but final passage of the measure will be a record vote! Rep. Ruth Jones McClendon told the 150 member chamber her bill is necessary because when people are convicted of a crime or crimes they do not commit there is little they can do to prove their innocence and

44

Sit in a cell in prison for decades! These men and women rot in prison she said! Moreover, with 117 proven wrongful convictions so far Texas leads the nation and that is shameful! Some representatives from the Texas Panhandle/South delegation said though they like the Bill, they have some reservations about it. Amarillo Republicans Four Price and John Smithee said after Tuesdays voice vote they will decide before the final vote on Wednesday whether they will support or oppose the measure. Rep. Charles Perry stated he intends to vote for the Bill, HB166, because its a good Bill! After Wednesdays final vote, the measure will be headed for the Senate for the chambers consideration! If the measure receives atleast two thirds vote in each chamber and also gets Gov. Gregg Abotts approval, it would become effective immediately! If it passes with less than two thirds vote it would become effective on or about September 1st, 2013 Also see the Michael Morton Act!

<u>Memorandum: Ineffective Assistance of Counsel in brief</u>

Whereas, The accused in a Criminal Trial has a right to Counsel under the Sixth Amendment, U.S. Const. see, Powell V. Alabama, 287 U.S. 45 (1932); Strickland V. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984); United States V. Cronic, 466 U.S. 648. 104 S.Ct. 2039, 80 L.Ed. 2d 657 (1984) But also see, Prou V. U.S. 199 F.3d 37 (1999)(Common Law 641.13(1) and 11134 (2)) To gain a reversal for ineffectiveness of Counsel, an appellant must proceed through Two Steps. The First Step requires an appellant to demonstrate that Trial Counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. See, Strickland, 466 U.S. at 688; McFarland V. State, 928 S.W.2d 482, 500 (Tex. Crim App. 1996) Counsels representation is not usually reviewed for isolated or incidental deviations from professional norms, but on the basis of the Totality of the representation. See, Strickland, 466 U.S. at 695. See Also; Frangias V. State ___ S.W. 3d ___ 2013 WL 6905989 (Tex Crim App. Feb 27, 2013)

45

(holding) That counsel was ineffective when his conduct was viewed in light of the totality of the representation, and remanding to the lower court for a prejudice analysis under the second prong of Strickland v. State, 466 U.S. 668 S.Ct. (1984). This Court said: The proper measure of attorney performance remains simply reasonableness under prevailing professional norms... The Appellate argues that his Trial Counsel failed to bring to bear the requisite degree of skill and knowledge to his case as to assure a reliable adversarial proceeding. We agree, Id. Whereas, The second step requires the appellant to show prejudice from the deficient performance of his/her attorney, see, Hernandez v. State, 988 S.W.2d 770, 772 (Tex Crim App. 1999). To establish prejudice an appellant must show that there is a reasonable probability that, but for counsel's unprofessional errors, (Emphasis Supplied) The result of the proceedings would have been different. see, Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 693-694. The Strickland standard, rather than the Cronic "presumed prejudice" standard, applies to a claim that counsel failed to oppose the prosecution at specific points during the trial, and so it he did. Failed to make the proper objection in order to preserve error Whereas, generally, to preserve a complaint for appellate review, the complaining party must make a timely request, objection, or motion that states the grounds for the ruling sought with sufficient particularity to make the trial court aware of the complaint, and the trial court must rule on the request, objection, or motion, citing Tex. R. App. P. 33.1(a)(1)(A), (2) (Emphasis added). Although in the case at bar, Trial Attorney Tim Cone did in fact make a motion for a mistrial. The Court abused its discretion and overruled the motion. Furthermore, said attorney at one point even requested a running objection to the prosecutors erroneous and prejudicial statements made several times during trial. Not only all of the

aforesaid, but at one point, Tim Cone asked for a directed verdict of acquittal because the state absolutely failed to prove essential and necessary element of bodily injury or that the alleged victim suffered any pain. Of course, the court denied the motion as well. Bell v. Com. 575 U.S. 655 (____) Appellant avers that in the case at bar, the Court of Appeals has received the ineffectiveness claim and confirmed that error was made, so much so that the court would not review the error. This tacitly concedes that Appellate counsel was also "ineffective" to establish prejudice. An appellant has the burden of proving ineffective assistance of counsel and must overcome the presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See, Jackson v. State, 877 S.W.2d 768, 771 (Tex Crim App. 1994). An appellant has the burden of proving ineffective assistance of counsel and must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. Appellant cannot meet the burden if the record does not affirmatively support the claim. See, Garza v. State, 213 S.W. 3d 338, 347-338 (Tex Crim App. 2007)(Court presumed trial counsel had reasonable trial strategy, in absence of the record indicating reasons for trial counsel's actions or intentions) Generally, a record that "specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim. See, Kemp v. State, 892 S.W.2d 112, 115 (Tex. App. Houst. 13th Dist) 1994 pet. ref'd). The reviewing court, in absence of evidence to the contrary, will ordinarily assume a strategic motivation for the challenged conduct if any can be possibly imagined. See, Garcia v. State, 57 S.W.2d 436, 440 (Tex Crim App. 2001) Subterfuge, "Damage Control" The Appellant in the case at bar did everything he could to preserve error and to support his claims of ineffective assistance of counsel, Filing not only a pro se Motion for a New Trial, but dozens of other motions pointing out the ineffective assistance of

47

counsel claims, and trying to develop the record in order to ascertain the reasons for trial counsel's actions, and/or lack thereof. Which is the reason the Appellant included ineffective assistance of counsel in his pro se motion for a new trial in order to interrogate the attorney in order to develop a record that specifically focuses on the conduct of trial counsel. However, the trial court denied Appellant's pro se motion for new trial denying him this right and/or opportunity. Only issuing a ruling on Appellant's attorney's motion for new trial, of which did not include ineffective assistance of counsel of which the Sixth Court of Appeals denied Appellant relief for that very reason.

But see, Plan v. U.S. 199 F.2d 87 (1999)(Criminal Law 1134(2)(641.1761) Not every lawyerly slip constitutes ineffective assistance of counsel but where an attorney fails to raise an important, obvious defence without any imaginable strategic or tactical reason for the omission, his performance falls below the standard of proficient representation that the Constitution demands. U.S.C.A. Const. Amend. Criminal Law 1134(2) Although a reviewing court must consider the whole of the record, a single, serious error nonetheless can support a claim of ineffective assistance of counsel.

See Also Mason v. Hanks. 97 F.2d 887 (1996. A defendant whose lawyer does not provide him with effective assistance on direct appeal and who is prejudiced by the deprivation is thus entitled to a new appeal see, e.g. Mayo v. Henderson, 13 F.2d 528, 537(2d Cir.; cert denied ___ U.S. ___ 115 S. Ct. 81 130 L. Ed2d 35 (1994); Claudio v. Scully, 992 F.2d 799, 806(2d Cir 1992) cert denied, 503 U.S. 912, 113 Sct. 2947 124 L.Ed2d256 (1993); Fagon V. Washington. 94- F.2d1155, 1156 17th Cir 1991); Barry V. Brower, 964 F.2d 294 300-01 (3d Cir 1992; Matire V. Wainwright, 811 F.2d 1430. 1479 (11th Cir 1987); Grady v. Artuz, 931 F. Supp. 1047, 1053-54 (S.D.N.Y. 1996 (Generally Speaking, the performance of appellate counsel is assessed using the same standards applied to trial counsel under Strickland v. Washington Supra. 466 U.S.

48

668, 104 S.Ct. 2052, 80 LEd2d 674 (1984) As Appellant stated previously, his Court appointed attorney on appeal failed to make the proper objections on direct appeal, as the Sixth Court of Appeals pointed out, effectively denying Appellant review of those issues, denying him his right of Appeal. See, the Courts Memorandum opinion page 29, ground 7. The point of error on appeal must comport with the objection made at trial. See, Swain v. State, 181 S.W. 3d 359, 367. (Tex Crim App. 2005); Wilson, 71 S.W. 2d at 349 Because Perry's complaints on appeal were not asserted below, they do not comport with his objections at trial, and nothing is preserved for our review. See, Pena v. State, 285 S.W. 3d 459, 464 (Tex. Crim. App. 2009) We overrule "Perry's points of error complaining of the states use and the Trial Courts admission of the demonstrative knife because he has failed to preserve them.' Sound trial strategy? Hardly!! Courts opinion page 30, ground 8. No error was preserved regarding the lack of a jury instruction regarding THE KNIFE. Subterfuge! Because "Perry did not ask the Trial Court to give a limiting instruction, he cannot now complain of a lack of jury instruction about the demonstrative knife.' see Tex. R. Evid. 105(a), Onwukwe, 186 S.W. 3d at 85; see also Tex. R. App. P. 33.1(a) We overrule this point of error.' (Emphasis added)

<u>Prayer</u>

Wherefore, premises considered, Appellant respectfully prays that the honorable Justices of the Texas Court of Appeals would grant him the relief he requested therein, an Acquittal, or a New Trial, and such other, and further relief to which he may be justly entitled, at law and in Equity.

Respectfully Submitted;

## Unsworn Declaration

I, Michael Dean Perry, TDCJ No. 1838827 being presently incarcerated in the Texas Department of Criminal Justice at the Ellis Unit, 1697 FM 980, Huntsville, Tx 77343 Declare under penalty of perjury that the above and foregoing is True and Correct.

Executed on This the 26 day of May 2015

By the Appellant: _Michael Dean Perry 1838827_

## Certificate of Service

I, Michael Dean Perry TDCJ No 1838827 do hereby Certify That a True and Correct Copy of the above and foregoing Memorandum of law, unsworn declaration, and Certificate of service have been served by placing Same in the U.S. Mail, First Class postage prepaid on This the 26 day of May 2015

By the Appellant: _Michael Dean Perry 1838827_

Return Service Requested; Michael Dean Perry TDCJ No. 1838827
Ellis Unit
1697 FM 980
Huntsville, Tx 77343

50

Cause No. 42139-A-W-1

FILED
GREGG COUNTY, TEXAS
JUN 15 2015
9:00 ___ M
BARBARA ___ DISTRICT CLERK
BY ___ DEPUTY

Court Of Criminal Appeals of Texas

Application For A Writ of Habeas Corpus
Seeking Relief From Final Felony Conviction
Under Code of Criminal Procedures, Article 11.07

Michael Dean Perry      October 22, 1959

Texas Department To of Criminal Justice      TDCJ No. 1838827
Ellis Unit
1697 Fm 980      188th State District Court
Huntsville, Tx 77343      In And For
         Gregg County Texas

## Memorandum of Law

To The Honorable Judge of said Court:

Comes now Michael Dean Perry, here in after referred to as Appellant, and files this his Application for a Writ of Habeas Corpus, pursuant To Article 11.07 Texas Code of Criminal Procedures, challenging final Felony Convictions Cause No. 42,139-A, and in support there of Appellant files this his Memorandum of Law That is in Compliance with Texas Rules of Appellate Procedures 73 and does not Exceed 50 pages.

## STATEMENT OF THE CASE

This is an appeal of a judgment of conviction under an indictment returned for the offenses listed in two counts: Count I alleged an assault upon a member of the accused's household by hitting the victim with his hand; Count II (A) alleged an assault upon a member of the accused's household by causing bodily injury to the victim by hitting her with his hand and during the course of the assault used or exhibited a deadly weapon; Count II (B) alleged an assault by threatening the victim with imminent bodily injury by holding the blade of a knife in her direction and during the course of the assault using or exhibiting a deadly weapon, a knife. The date of the occurrence of the alleged offenses was October 15, 2012. Appellant pleaded "not guilty", selected a jury on February 26, 2013, and after trial to the jury on February 27, 2013, Appellant was convicted on Count I and Count II(B) the following day, February 28, 2013. Count II(A) was not submitted to the jury. After hearing evidence at the punishment phase, the jury assessed punishment at 60 years imprisonment with a fine of $10,000 for each count on February 28, 2013(CR ). Appellant timely filed his "Notice of Appeal" on or about March  25, 2013, (CR ) and a "Motion for New Trial"  on that same  date, which was  overruled after a hearing on May 1, 2013(CR 49).  Appeal of the conviction comes on the record.

Discovery is the linchpin of the search for Truth, and affording parties full discovery promotes fair resolution of disputes by the Courts. See Texas Code of Criminal Procedures Art. 39.14 Discovery. Also see Brady VS. Maryland, 83 S.ct. 2892 (1963) or the Michael Morton Act S.B. No. 1611. Also see State V. Lowry, 802 S.W. 2d 669, 671 (Tex 1991)

In re Carbo Ceramics Inc.; 81 S.W. 3d 369 (1) When the Appellate Court cannot cure the trial courts discovery order (2) Where the parties ability to present a viable claim or defense is vitiated or severely compromised, and (3) When the trial court disallows, or abuses its discretion in, discovery and the missing discovery cannot be made part of the Appellate record, thereby precluding Appellate review. Notwithstanding ineffective assistance of counsel at trial and on first appeal as of right see Evitts V. Lucey, 469 U.S. 387, 105 S.ct. 830, Brady V. Maryland, supra. Michael Morton Act no. 1611, supra (May 13th 2013.) Texas also passed another bill as a result of Mortons wrongful conviction, the Prosecutor Accountability Act (Senate Bill 825), enacted in June 2013.

Under Ake V. Oklahoma, 470 U.S. 68 (1985), Appellant had the right to have an investigator appointed to interview witnesses. There was in fact one other witness that ran off before police arrived. Police were advised of this fact. In fact, Nikkie Williams said she would have interviewed him (supra brief p.24) The failure to do so in the case at bar irreparably harmed Appellant in the preparation of his case. The missing witness would have provided more information on the facts of the incident from which counsel would have been better able to assess the truth (or inconsistencies) from other witnesses and therefore provide additional evidence in support of his theory of the case, or to impeach other witnesses. Nothing could be more clear than the sworn notorized Affidavits of Mrs. Wilma Mckinney and the alleged victim, the granddaughter, Alanna Mckinney. By failing to adequately

2

interview the witnesses, Appellant was denied Sixth Amendment rights and Texas Constitutional, Art. 1 §10, rights to compulsory process, confront witnesses and Fourteenth Amendment Due Process of Law and Fifth Amendment Due Process of Law and the Due Course Law provisions under Art. 1 §19, Tex. Const. There was no strategic reason to neglect this evidence, whose importance was stressed by Trial Counsel when he was questioning Mr. Neal (VRR 119-120) Notwithstanding the fact that Trial Counsel failed to subpoena Wilma Mckinnie who was also an eye witness and she states that Nikkie Williams and another Police Officer searched their home without a Search Warrant and without an informed consent, picked up the actual knife used to pick the lock and took it with them, contaminating the crime scene! Only later to claim that they found the knife in Appellant's backpack. There was no chain of Custody of "THE KNIFE". Wilma Mckinney also states that Alanna, her granddaughter, had No injuries and was Not Hysterical! In a close case and this one absent all of this exculpatory and impeachment evidence, any one fact witness was critical to Appellant's defense. In fact the alleged victim states in her affidavit that the Appellant was only defending himself because she attacked him first and that she never threatened her with a knife! The missing witness would have confirmed some of these facts, therefore, it cannot be said that his presence in Court, along with Wilma Mckinney, would have not made any difference in the outcome of the Trial. Three witnesses, including the victim, said Appellant did not brandish the knife as he came in the bedroom; only one said otherwise, the black girl that was caught lying on the witness stand! The evidence of bodily injury was also hotly contested. The missing witness and the testimony of Wilma Mckinney and her granddaughter, the alleged victim, would have provided more evidence on these crucial

7

issues. Trial Counsel was ineffective for failing to investigate and get an investigator to do so as well. Tim Cone told Wilma McKinney that he did not want her to engage the jury. There was no recorded statement from any of the witnesses T.C.C.P. Art. 38.22 Tim Cone Tape recorded a recant statement from the victim, but never produced it at Trial or provided it to Appellant.

To be sure, Appellant, acting pro se, made a concerted effort to assert his rights to a fair and impartial Trial. see Gideon v. Wainwright, 372 U.S. 335 83 S.Ct. 792, 9 LED 2d 799 (1963) By filing numerous pro se motions in an effort to assist in his own defense, including but not limited to Two (2) Motions for Discovery T.C.C.P. Art. 39.14, two (2) Motions for an Examining Trial. In the JP1 Court and the 188th District Court. Appellant also filed a Motion for a Private Investigator. The Court and Appellants Court Appointed Attorneys claim that there was no record of these Motions. They were never ruled on or even made part of the record for Appellate review. Appellant was entitled to an Examining Trial. see, T.C.C.P. Art. 28.01 Pre-Trial Hearing. also see Magistrates Warning. Of which will also be included as an exhibit. Place of warning: JP1 Court, Time 9:50an Date: 10-16-12 Appellant Timely filed his two Motions for an Examining Trial, also included as exhibits. Appellant was repeatedly denied his fundamental rights to Due Process and a fair Trial. see; Ake v. Oklahoma, Supra; This Court has long recognized that when a State brings its Judicial power and its Narcissistic, Self absorbed Prosecutors to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that a defendant has a fair opportunity to present his defense. Meaningful access to justice has been a consistent theme of these cases. We recognized long ago That mere access to the Courthouse doors does not by itself assure a proper functioning of the adversary process and that a criminal Trial is fundamentally unfair if the State proceeds against

an indigent defendant without making certain that he has access to the raw materials integeral to the building of an effective defense. Thus while the court has not held that a state must purchase for the indigent defendant all the assistance that his wealthy counterpart might buy, see Ross v. Moffit, 417 U.S. 600, 94 S.ct. 2437, 41 LED 2d 341 (1974) It has often reaffirmed that fundamental fairness entitles indigent defendants to an adequate opportunity to present their claims fairly within the adversary system, id at 612 94 S.ct at 2444. To implement this principle we have focused on identifying the basic tools of an adequate defense or appeal. Britt v. North Carolina, 414 U.S. 226, 227, 92 S.ct. 431, 433, 30 LED 2d 400 (1971) and we have required that such tools be provided to these defendants' who cannot afford to pay for them! To be sure, Appellant filed a Writ of Habeas Corpus, Motion for Access to Courts - The County Law Library in the 188th District Court. On the 8th day of January, 2013. Appellant was shackled and manacled like a wild animal, placed in a strip stall for over (5) five hours, then taken before Judge Brabham for the hearing! Appellant wasn't even able to put on his own reading glasses due to the extreme hog tying! The motion and the hearing should be part of the record, however, in an abundance of caution, the Appellant will provide a copy of the motion and a Writ of Mandamus that was filed in the 188th District Court of which explains in more detail! Not only was Appellant denied Access to the County Law Library, but also basic writing supplies to wit: writing paper, carbon paper, envelopes, and even ink pens, in fact, Appellant had to write numerous writs and letters on the backs of other documents, all part of the record! The Appellant was repeatedly denied all discovery request (see TCCP Art. 39.14 Discovery! Appellant was entitled to adequate discovery before, during, and even after trial! but that didn't happen! Appellant was blind sided with the illegally seized evidence at this

5

'erroneous Trial! Appellant filed two pro se motions before Trial that are supposed to be part of the record on Appeal, however, they were never ruled on by the court. Preserving Nothing for Appellate Review, hence, No adequate remedy on Direct appeal! Ineffective Assistance at Trial and on Appeal!

Appellant was initially court appointed, Michael B. Lewis however, Mr. Lewis failed to communicate or come and visit with Appellant in violation of the State bar rules No. 1.03 Communication and the Sixth Amendment! When Mr. Lewis finally did come to see Appellant, he refused to file for an Examining Trial, and or Pre-Trial hearing (Suppression Motion, Private Investigator, Discovery) Mr. Lewis refused to provide Appellant with any discovery whatsoever! Mr. Lewis told Appellant That if he refused to plead guilty and take 12 years in prison, the State (Tonya Reed) was going to come at them with 60th barrels! Hence, the two 60 year sentences for the very same charge, involving the very same alleged victim! The illegal Search and Seizure was never disclosed whatsoever! Appellant terminated his relationship with Mr. Lewis, citing Conflict of interest and ineffective Counsel! Appellant was later court appointed Tim Cone! Needless to say, Appellant continued to receive ineffective assistance of Counsel, even on Appeal! Whereas, Lew Dunn, the Attorney on Appeal, failed to include ineffective assistance of Counsel in his Motion for New Trial, However, Appellant did in his pro se motion for a New Trial! Of which is available for Appellate Review, see; Robinson V. State, 240 S.W. 3d 919 (Tex Crim App. 2007) Lew Dunn did raise ineffective assistance of Counsel on Direct Appeal, see; Appellates Brief!

Appellant asserts That due to Brady Violations, illegal Search and seizure, Police Misconduct, and Prosecutorial Misconduct, and No Investigation, very important exculpatory and impeachment evidence was intentionally and knowingly withheld, manipulated, Tampered with, and falsified! Which (See Exhibit # 10 letter to Michael B. Lewis - Exhibit List p. 4 of 7 No. 21)

(Type ① Discovery)

6

prevented the evidence's inclusion as part of the record for Appellate review! Subterfuge: A clever plan or idea used to escape, avoid, or conceal something (a subterfuge to avoid all liability under a statute) Clerks record: 34.5, Agreed Record 34.2 By Written stipulation filed with the Trial Clerk, the parties may agree on the Contents of the Appellate record. Obviously, Appellant never stipulated to the supposed agreed record as evident by all of the pro se Motions he filed in the case at bar. And all of the letters he wrote to his Court appointed Attorneys, also included as exhibits! Whereas, an agreed record will be presumed to Contain all evidence and filings relevent to the appeal. (2) any special plea or defense Motion that was presented to the Court. (3) any request for findings of fact and Conclusions of law; provided that the aforesaid is not replete with "Surplusage" 1. Redundant words in a statute or legal instrument; language that does not add Meaning (the Court must give effect to every word, reading nothing as Mere Surplusage 2. Extraneous matter in a pleading & allegations that irrelevant to the case will be Treated as Surplusage. And any Post-Judgment Motion (Emphasis Supplied) (Appellants pro se Motion for a New Trial and Addendum to Motion for New Trial) (Writ of Mandamus in the Sixth Court of Appeal, including the 32 exhibits) And numerous other Motions filed by Appellant pro se in order to preserve error for Appellate review! Whereas, 34.5 Clerks record lost or destroyed; if a filing "designated" for inclusion in the clerks record has been lost or destroyed, the parties May, by written stipulation, deliver a copy of that item to the Trial Court Clerk for inclusion in the clerks record or a Supplement. If the parties cannot agree, the Trial Court Must on "Any Parties Motion" (Emphasis added) or at the Appellate Courts request determine What Constitutes an accurate Copy of the Missing item and Order it to be included in the clerks record or a Supplement! (c) Supplementation! (1) If a relevent item has been omitted from the clerks

(Note: What about all those Side Bars?)

7

record, The Trial Court, The Appellate Court, or "Any Party" by "Letter" direct the Trial Court Clerk to prepare, certify, and file in the Appellate Court a Supplement containing the omitted item. (4) Failure To Timely request. An Appellate Court must not refuse to file the clerks record or a Supplemental Clerks record because of a failure to timely request items to be included in the clerks record, This is a Ministerial duty. see, In re Washington 7 S.W. 3d 181 (Tex App. Houston 1st Dist 1999) Appellant maintains and avers that he filed numerous pro se motions, letters, and Affidavits with the District Clerk, even several writs of Mandamus, even in the Texas Court of Criminal Appeals Writ No. WR-62,970-05 Date: 12/19/2012. Ex parte: Michael Dean Perry; see Padilla V. McDaniel, 122 S.W. 3d 805 (Tex Crim App. 2003) Appellant presented the Court with copies of both of the motions for an Examining Trial and the motion for a Private Investigator and requested that The Appellate Court issue an order directing the Trial Court to rule on the motions and that the Clerk include the motions in the record of the case for Appellate Review. Exactly what else is an indigent defendant supposed to do to protect his rights to Due Process and a fair and Impartial Trial? No Hybred representation indeed! Appellant made dozens of request to both his Trial Attorneys and his Appellate Attorney to include his grounds in the record of this case. Court of Appeals has jurisdiction to Mandamus a Court reporter to prepare a statement of facts required to resolve questions on appeal, in order to protect its jurisdiction; Palacio V. Johnson, 663 S.W. 2d 490 (App 1st Dist 1983) 21.2 When Motion for New Trial is Required. The defendant must be granted a New Trial, or a New Trial on punishment for any of the following reasons; (1) When a Material defense witness has been kept from Court by force, Threats, or fraud, or subterfuge, or when evidence tending to establish the defendants innocence has been intentionally destroyed or withheld, thus preventing its production at Trial! Not-

with standing, "THE KNIFE", Police picked up in Appellants Home and took with them, all without a valid Search warrant. But also the testimony of another eye witness, the Grandmother, Wilma Mckinney, Who was kept from testifying at Guilt Innocence phase of Trial was told by defense counsel Not to engage the jury! Wilma Mckinneys testimony would have completely changed the outcome of the Trial! She would have testified That Police search their Home without a Search warrant, or consent That they picked up THE Knife used to pick the lock and took it with them! That her granddaughter had No injuries and was Not Hysterical, she was of Sound mind. That she did Not witness an assault, Also, That she found Appellants debit card in Alannas purse with a Zero balance! The alleged victim has also Submitted Two Notorized Affidavits Stating That The Appellant was only defending himself because she assaulted him, that at No Time did Appellant Threaten her with a knife! The Police and Prosecutors never have produced "THE KNIFE", either from The backpack or the Home, Where is it? There was also an Indictment pending on Alanna Mckinney, for Theft and fraud of which the Prosecution never disclosed. "Modus Operandi" Steal Appellants debit Card, have him put in jail and continue to steal money out of his bank account. Appellant receives (SSI) $710.00 per month direct deposit. Alanna Mckinney and or her friends continued to steal over $2000.00 out of the Appellants bank account while he was in the County jail awaiting Trial. The Appellant requested That his dubious Trial Attorney Subpoena his bank records however, Tim Cone said he did Not want to impeach a friendly witness! Yet another defensive theory abandoned! Alanna also stole all the money out of her own Grandmothers bank account, causing her to have to get a loan from the bank to pay her bills! friendly witness indeed! The proof is irrefutable! Bank records don't lie. There are two defendants named in Alannas Indictment. One of these individuals may be the one That ran off before

(See Tim Cones Letter Exhibit #22A)

9

police arrived. A Private Investigator would have been better able to assess the Truth, interview the witnesses, subpoena the bank records, but Appellants Trial Attorney and the Prosecutor didn't want the real Truth to come out. Thats abundantly obvious by all of the Brady Violations. 'Duty To Disclose'. Thats the reason Appellant filed his own motion for a Private Investigator, to reveal the Truth. 'Tim Cone only relied on the Police Investigation, or Lack of!

Appellant filed a pro se motion for a New Trial raising 17 issues that he wished to be addressed and ruled on for any future Appellate review. Said motion was Filed on March 24, 2013. however, the motion was not Stamp Filed until April. 23, 2013. Appellant was bench warranted back to the 188th District Court for a hearing on motion for New Trial. The Judge denied Appellants pro se motion for a New Trial. Thus issuing a ruling on the Merits see; Robin V. State 240, S.W 3d 919 (Tex Crim App 2000) The Court Then ruled on Lew Dunns motion for a New Trial, However, Mr. Dunn fails to include ineffective assistance of Counsel at Trial in his Motion for New Trial and the Sixth Court of Appeal denies Appeal review and relief for that very reason Whereas, Ineffective Assistance of Counsel may be raised in motion for New Trial, see, Reyes V. State, 849 S.W. 2d 812 (Tex Crim App. 1993) Appellant raised grounds of ineffective assistance of Counsel in his pro se motion for New Trial and supported it with a sufficient Affidavit. See also; Trevino V. State, 565 S.W. 2d 938 (Tex. Crim App. 1978) Without doubt hearing on a motion for a New Trial is a Critical Stage of the proceedings. The matters raised in Appellants pro se motion for New Trial were not determinable from the record of the Trial and thus required a hearing. The Court abused its discretion in failing to hold a hearing on Appellants pro se motion. Denying him meaningful Appellate review. The Court could have combined Appellants pro se motion with his Appellate Attorneys motion as an Amended motion for New Trial

10

see Rules of Appellate Procedures Rule 21.4 Appellant raised 17 grounds in his pro se motion for New Trial that required Not only a hearing, but a New Trial. 21.2 When Motion for New Trial Required 21.3 Grounds (b) When the court has misdirected the jury about the law or has committed some other material error likely to injure the defendants rights; (e) When a material defense witness has been kept from court by force, threats, or fraud, or when evidence tending to establish the defendants innocence has been intentionally destroyed or withheld, thus preventing its production at Trial. (THE KNIFE) (Wilma McKinney) (Witness That Ran Off)

There are references to Appellants pro se Motion for New Trial in the record of This case and in Appellate Attorneys Motion to Withdraw as Counsel. Also see Rules of Appellate Procedures, Rule 33.2. Formal Bills of Exception; Also see Rules 34.5 and 34.6, specifically, (d) Supplementation and (c) Inaccuracies in the Reporter's Record. Also see Rule 38.7. Amendment or Supplementation, Whereas A Brief may be amended or supplemented whenever justice requires, on whatever reasonable terms The court may prescribe.

Appellant avers that he raised 17 grounds in his pro se Motion for a New Trial, Not only ineffective assistance of counsel, but illegal Search and Seizure, Not only his person and back pack, but also his Home. Brady violations, also see; The Michael Morton Act. See Michael Dean Perrys pro se Motion for a New Trial, Affidavit, and Addendum to Motion for a New Trial of which all should be on File in The Clerks office. Also included as exhibits here with.

Appellant avers that the State failed to follow the Mandate as dictated in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963) requires that the prosecution disclose to the defendant both exculpatory evidence and evidence that would be useful for impeachment, regardless of the good faith of the prosecutor; United States v. Bagley, 105 S.Ct. 3375 (1985) To

prevail on a Brady claim. The defendant must show that (1) prosecution suppressed evidence (2) the evidence was favorable to the defendant, and (3) the evidence was Material. Brew V. Collins, 964 F2d 411, 419 (5th Cir 1992) Cert denied US 113 S.ct. 3044, 125 L Ed 2d 730 (1993) the Materiality standard is required to state a Brady claim, see; Bagley 477 U.S. at 680, 82, 105 S.ct. at 3383 The evidence is Material only if There is a reasonable probability that, had the evidence been disclosed to the defense, The result of the proceeding would have been different! Notwithstanding the two recant Statements/Affidavit from the alleged victim, but the Affidavit of the eye witness Wilma Mckinney, who was effectively prevented from testifying at the guilt/innocence phase of Trial. Mrs. Mckinney would have disclosed the illegal Search of Appellants Home, The seizure of the innocuous Knife Appellant Used to pick The lock and dropped on the Floor—That Police took with them, never disclosing, This fact, See Reply Brief filed by Lew Dunn pp. 1-3 Also that her granddaughter, The alleged victim, was Not injured or Hysterical! Appellant avers That the State used hearsay Statements and a "ersatz" demonstrative Knife of a Knife That Police claim They found in Appellants back pack, without a Search warrant or probable cause. The State erroneously lead the jury to believe That Appellant hid The Knife in his back pack in order to cover up a crime—to prove culpability on the part of Appellant. The State wasn't even happy with That. The State even violated their agreement with defense counsel and contaminated the witnesses by showing them the demonstrative Knife before Trial, and it wasn't even the correct Knife! Of course the results of the Trial would have been different! And Appellant was denied a fair Trial!

Appellants Court Appointed Trial Counsel went and interviewed Alanna and her Grandmother Wilma Mckinney, long before Trial! Even obtaining

a recorded Statement (Recant Statement) from the purported victim, never having produced the recorded statement at Trial. Both witnesses informed Trial Counsel of the illegal Search and Seizure and the Police taking the Knife with them from inside their Home, and all of those pictures! Clearly, the results of the Trial would have been different. Tim Cone and Tanya Reed Knew all along about the illegal Search of Appellants home and the Seizure of evidence from his home! Not just the pictures of the inside of Appellants home, but also the "ersatz", No, the actual Knife that Appellant used to pick the lock with! The Police took the actual Knife with them when they left, Never disclosing this fact to Appellant, but Appellants Court Appointed Attorney and the Prosecutors Knew it! Tim Cone waits until two days before Trial to tell Appellant about the illegal Search of his back pack, in his driveway! Never disclosing this Brady Violation to Appellant. One has to question, why not? Subterfuge! Misdirection! Just like having Appellants niece, the purported victim, to call Appellant on the Jailhouse phone! Violating the Emergency Protective Order! Everybody in the District Attorneys Office and the Sheriffs office are all Culpable, Call it Law of the Parties! If Appellant would have been able to question all of the Police Officers that illegally Searched his home and took the actual Knife with them, then the entire issue with the "ersatz" demonstrative Knife would have been moot, there wouldn't have even been a Trial! Or if some how the case would have made it to Trial, the jury would have had to be properly instructed in the Courts charge; Art. 38.22 Evidence Not to be used! Jury instruction Mandatory C.C.P. Also See Foster V. State, 101 S.W. 3d 490; 498 (Tex. App. Houston 1st Dist. 2002 No pet.) Criminal Law 777, When there is a factual dispute as to how evidence Was obtained, the Trial Court is Statutorily required to give an instruction on improperly obtained evidence!

13

See; Withers v. State, 902 S.W.2d 122 Evidence may be strong, weak, contradicted, or unimpeached; Wilkerson v. State, 933 S.W.2d 276 (Home) Jury charge must include instruction. (Abuse of Discretion) Reversible Error.

In the case at bar, the record seems to show an assumption that the knife that was the subject of an illegal search of Appellants back pack (But not His Home) was the knife used in the incident (see discussion of State and Appellant's counsel, and by the Trial Court at VRR 9-11). Witnesses (Oajuntae Johnson at VRR 37-38; Chase Neal at VRR 112; Alanna McKinney at VRR 142; Dawn Ayers at VRR 77-78) identify the demonstrative knife as similar to the one purportedly held by Appellant. All of their testimony is, however, tainted by the fact that the State, before trial, showed each of them the "ersatz" knife (A knife from the States very own investigators home!) and asked them if it was similar to the one used by Appellant during the altercation. Isn't that called "improper suggestion"? If it were a line-up, the identification testimony would be thrown out, see; Stovall v. Denno, 388 U.S. 293 (1967); Simmons v. United States, 390 U.S. 377 (1968); Neil v. Biggers, 409 U.S. 188 (1972). See, the Prosecutors acknowledgement of suggestion; But I have shown them this and asked them if it looked similar to - similar in size, shape and color to the one that they saw Mr. Perry had that particular night. (VRR 11, lines 10-12) No offer of several different knives and asking them to see which one might be similar. None of that. Objective? Scientific? Rational? Seeking the truth? Lacking in all that; No Due Process! Brady violations!! Prosecutorial Misconduct-Ethics violations!

Nowhere at trial, or as a part of discovery, was there ever any evidence that the purported knife actually used in the States accusations was, in fact, the knife allegedly pulled from Appellants back pack, Nor was there any evidence that a knife was ever pulled from Appellants back pack either! This is called a chain of custody issue, and nowhere did the

14

STATE make That Case, see; Foster V. State, Supra; where The crucial determination is of The (object) has been properly identified. see; The eye witness; Wilma McKinney's, Sworn Notorized Affidavit, Where She states That She witnessed The Police pick up The actual knife That Appellant dropped in The Home and Take it with Them! There is No evidence Whatso ever, That The Appellant picked up THE KNIFE and stowed it in his back pack! The Knife was dropped during The altercation with Alanna McKinney (VRR 127) None of The (4) Four eye witnesses, including The alleged victim, said any Thing about The Appellant retrieving The knife he dropped and Then stowing it in his back pack! Most assuredly, The black girl, DajunTae, That Called 911, would have screamed and hollared That Appellant pick up The knife and hid it in his back pack! So how is it That The STATE is able Conclusively To Trace THE KNIFE To The one allegedly found in Appellants back pack? IT cannot, and has NoT. A reasonable inference from This is That THE KNIFE was actually Seized at The scene by investigators; but That iTs characteristics and proportions made it a less-Than deadly looking instrument (innocuous)! Was The States Case made easier with The knife allegedly found in The back pack and, Consequently, with The ruse use of The "ersatz" demonstrative knife at Appellants erroneous Trial? To Cover up The illegal Search of Appellants home and the seizure of THE REAL KNIFE, all without a Warrant or Probable Cause! All of This undermines The states efforts (1) To say That the evidence was legally Sufficient on The assaultive Conduct and deadly Weapon, (2) To say That There was no error in using The demonstrative knife, (3) To claim That The charge was not deficient, (4) That There was No ineffective assistance of Counsel, and (5) To Conclude That The prosecutor did not Commit misconduct. Of course, lets Not Forget Police misconduct, of which was never even addressed at Trial or on direct appeal, Nor was The illegal Search and Seizure

15

of Appellants Home! See; Tim Cones Motion To Suppress Evidence, The Motion That he never actually filed! Clearly it states Home as well! The Motion should have been filed (7) Seven days prior to Trial and a hearing conducted, but That didn't happen! Subterfuge and Misdirection! The Government didn't want a Suppression hearing and neither did Court appointed attorneys, Michael B. Lewis or Tim Cone! Considering They both had ample notice and time and presumably both knew about the illegal Search and Seizure, Not only of The back pack, but of Appellants home as well! Of course, they never disclosed any of This to Appellant until Trial! (Emphasis Supplied) For Crying out loud, Tim Cone had the pictures of the inside of Appellants home and of his niece, The alleged victim! Its known Wonder, Michael B. Lewis and Tim Cone didn't want to hire a Private Investigator and That Tacitly concedes That the State didn't Want an investigation either! This all goes beyond the scope of just ineffective assistance of Counsel, to attorney misconduct, and also Prosecutorial misconduct Furthermore, Judges are required to report the attorney misconduct to the proper authorities as well! (See; Appellants Petition For Discretionary Review)(Motions for Rehearing)

There was insufficient evidence Whereas, in each instance there is a valid, underlying uncertainty That The demonstrative Knife was a replica of THE KNIFE! Consequently, The states insistence of the verity of That resemblance and replication skates on Very Thin ice, indeed. In Fact, The ice is so Thin and insubstantial That the weight of the problem is Sufficient to crack the ice and send it all down into icy Confusion—leading to insufficient evidence, in Fact, no evidence, failure of the demonstrative Knife to actually Correspond to THE KNIFE! Consequently, the entire Trial was Tainted by the lack of the real knife! The jury was mislead and Appellant was denied a fair and Impartial Trial!

16

The issue of ineffective assistance of Counsel and prosecutorial misconduct revisited: See Appellate Attorneys Reply Brief, Second Reply; pp. 4 In its Brief the State contends that Appellants Trial Counsel failed to preserve error by not making the proper objections (Of course, the Sixth Court of Appeals make the same assertion, even stating that the grounds on appeal do not comport with the objections made at Trial preserving nothing for their review, leading to ineffective assistance on appeal as well, right?) on the issue of the use of the demonstrative knife (State's brief, pp. 26-27) This, therefore, concedes the point of ineffectiveness of counsel at Trial. It also Tacitly concedes the point of prosecutorial misconduct. However, the State (while making that argument) mischaracterizes (lies) about what was occurring at the Trial Court during those moments (see; VRR 9-11) Appellant, by his dubious Counsel, had reached an agreement with the state about the knife allegedly found in the backpack- The knife would not be introduced into evidence at Trial and There would be no mention of it. (Note: keep in mind), Tim Cone knew all along about the illegal Search of Appellants Home, and that the Police retrieved the actual innocuous knife used by Appellant That he dropped on the floor and took with Them, never disclosing this fact to Appellant) Lew Dunn goes on to say that; Both the state and Appellant knew that the knife was available- That it existed somewhere in the property room of the police department or in the exhibit room with the District Attorney. Why else would Appellant have objected to its Admissibility? (Again, Applicant avers that the only knife that could possibly be in the possession of Police or the District Attorney would be THE KNIFE that was illegaly retrieved from his home, There was never a knife in his backpack, Subterfuge) All of Those supposed failed objections that the state says were not lodged- all of Those were Subsumed

17

into the Motion to Suppress, a Motion whose points had been agreed to in the parties supposed agreement, now breached by the State. Of course, if that is not so, then the State has bolstered the claim of ineffectiveness of counsel and admitted prosecutorial misconduct. Not only, the aforesaid, but failing to report all of this misconduct is also in violation of the State bar rules of Professional conduct. This also tacitly concedes that the Trial Judge also is required to report attorney misconduct to the proper authorities. More on these issues later in this brief.

See; Simmons v. State, 622 S.W. 2d 111 (Tex. Crim. App. 1981) where that court held that a replacement, demonstrative, piece of evidence might be used "where the original would have been admissible at Trial". The purported "original" knife - That is, the one allegedly taken by agents (whose names, and or identities were never disclosed) of the State from Appellants backpack, was certainly not missing, or lost. The deciding factor was that it had been "Agreed" as inadmissible "Period." The egregious problem with the knife was that the State and Appellants dubious court appointed Attorney, had an agreement and the State unilaterally breached the agreement. The Fourth Amendment was very much in play. Appellant never waived his rights to suppress the knife. Or if the State now contends that somehow that happened and Appellant failed to make that Trial objection, then the ineffectiveness claim has just been bolstered by the State. (Also see Art. 38. 23 Evidence Not to be used C.C.P.)

Contrary to the States assertion, harm is analyzed under Section 44.2(a) Tex. Rules App. Proc. rather than Section 44.2(b), Tex. Rules Proc. App. because there is a Constitutional question at stake, namely, the Fourth Amendment problem attendant in the Motion to Suppress. That is clear in the Brief. However, what is not mentioned at Trial or the Brief is all of

The other Misconduct by Police and Prosecutors and Court appointed At-Torneys, even the Trial Judge, who allowed all the Misconduct go on in his Court room, even denying the Motion for Mistrial. Whereas, the state would have been lost without its stage prop - it Constantly used the ersatz knife in the evidence phase and during argument. Even considering all the Brady Violations (wrong knife)(Illegal Search and Seizure Home) How Could all of This Not be harmful? Notwithstanding all of the other misconduct that will be addressed in this habeas Corpus and Memorandum of Law. The state and the Sixth Court of Appeals are wrong, the case should be reversed. Appellant was denied a fair and Impartial Trial. Prosecutorial Misconduct and Ineffective assistance of Counsel, the knife and its complications, inter alia, Brady violations/Michael Morton Act Appellant, by his dubious Counsel, had reached what he believed to be an agreement about the knife and recited it to the Trial Court. Then startling news comes from Asst. D.A. Reed: "Kings X", There is an agreement-but not really! Even the cold record does not mask the surprise of the Appellants Counsel, struggling to comprehend this unexpected reversal! (Bare in Mind that Tim Cone waited until just 2 days before Trial to present this erroneous deal to Appellant in his prison Cell. Never disclosing the illegal Search of Appellants home and the fact that Police picked up the actual knife that Appellant dropped and took it with them.) Without giving any rationale why she thought the "demonstrative" use of a knife would be now acceptable (in defiance of established law on the use of an object for demonstrative purposes), Ms. Reed proceeded to represent to the Trial Court that this was acceptable; in one blow she (a) blatantly undid the agreement with Counsel on important discovery and (b) was less than candid with the Trial Court in her reasons for

19

doing so. Both acts are prosecutorial misconduct and grounds for the reversal of the conviction. Violations of Due Process - Due Course of Law! By far, the most commonly-cited type of prosecutorial misconduct in wrongful conviction cases involves the withholding of exculpatory evidence. While many forms of misconduct can result in a conviction being overturned, so-called "Brady violations" named after Brady v. Maryland, 373 U.S. 83 (1963), are most often reported, as the withheld evidence can lead to the reversal of a conviction or finding of innocence.

For example, Michael Morton spent almost 25 years in Texas Prisons for murdering his wife, only to discover that Williamson County District Attorney Ken Anderson had withheld evidence at his trial - including a transcript of a telephone conversation in which his young son said a "monster," not his father, had beaten his mother to death and that his father was "not home" at the time. Neighbors had seen a man in a green van parked in front of Morton's house several times before his wife's murder. Based on the belated disclosure of this evidence, a DNA test on a bloody bandana found near the crime scene was matched to another suspect, Mark Alan Norwood, and Morton was released from prison in October 2011. He was exonerated two months later. Williamson County District attorney John Bradley had objected to the DNA testing (see; PLN, Feb, 2012, p. 50)

Notwithstanding all of the other Brady violations committed by the parties in the case at bar, inter alia, the demonstrative knife ruse - illegal search and seizure, but there was also the jailhouse phone call of which Applicant raised in the habeas corpus Application. This issue was also raised in Appellant's Motion for leave to file Amendment to Motion for Rehearing filed on September 15, 2014 in the Sixth Court of Appeals in Texarkana, Tx (pp. 3 of 13 paragraph 6.) Whereas; The jailhouse phone call revisited; On page 3 of Tanya Louise Reed's sworn

Affidavit in response to the grievance Appellant filed on her with the State Bar of Texas, Mrs. Reed states in part to wit: I did not write the Appellate Brief in this case, but the only content of that phone call used at Trial was as follows: Alanna (victim); I'm going to tell them that you used the Knife not to come at me but just to try to get into the door (5 RR 128.) States Brief at pp. 12, 19, and 21. Nothing that Perry said in that phone call was mentioned. This "excerpt" from the phone call was presented to show the victims intent to lie about his use of the Knife because she didn't want the defendant to be convicted of the offense!

Appellant Maintains that the jury was entitled to decide that for themselves! They're the fact finder, NOT the Asst. District Attorney, Reed! Appellant was entitled to Due Process and a fair and Impartial Trial!

Whereas, there are certain precepts that have to be followed before a Taped Conversation of a defendant can be used against him or her in Court and/or at Trial, see; Edwards V. State, 551 z.w. 2d 731 (Tex. Crim App. 1977)

(1) a showing that the recording device was capable of taking testimony!

(2) a showing that the operator of the device was competent!

(3) establishment of the authenticity and correctness of the recording!

(4) a showing that changes, additions, or deletions have not been made!

(5) a showing of the manner of the preservation of the recording!

(6) identification of the speakers, and

(7) a showing that the testimony elicited was voluntary and was made without any inducement! (see Alannas Deferred Adjudicated Probation)

Appellant would make this honorable Court know that he was never ever provided with a copy of the Transcript of the Jailhouse phone call!

As far as Appellant knows, said Jailhouse phone call was never admitted as evidence in the case at bar. Tanya Reed violated the (EPO) Emergency

Protective Order, Case No. 132-EPO-12 Filed on 10/17/2012, See Ground pg. 6 Also Tanya Reeds Affidavit #201403874 (Exhibit #3 EPO) Ms. Reed gives false testimony in her Affidavit Whereas, she states in part that there was No EPO, and that she didn't violate the EPO! Unbelievable! Of course, she ingenuously places any blame on her Coworker Zan Brown! See exhibit #50 Sixth Court of Appeal acknowledgement of receipt of Appellants Notice of Appeal and the rules to be followed by all Parties, even pro se litigants! Whereas, The Sixth Court of Appeals follows the standards of conduct adopted by Order of the Texas Supreme Court and the Court of Criminal Appeals on February 1, 1955. All attorneys, parties, and pro se litigants appearing before the Sixth Court of Appeals are expected to fully comply with these standards of conduct, as well as all applicable Texas Rules of Professional Conduct, Texas Rules of Disciplinary Procedures, and the Code of Judicial Conduct. A copy of the standards of conduct is available on the Courts website. Therefore, there was no excuse for all the Parties involved to Not Follow the Rules! Appellant would make this honorable court know that Tanya Louise Reed, Zan Colson Brown, Their Boss, Carl Dorrough, all violated the State Bar Rules, that of course tacitly proves that Trial attorney Tim Cone, and Court appointed attorney, Michael B. Lewis were just as culpable, scilicet, failed to maintain the integrity of the profession, VIII. Notwithstanding Rule 8.03 Reporting Professional Misconduct, Whereas, a lawyer having knowledge that another lawyer has committed a violation of applicable rules of professional conduct that raises a substantial question as to that lawyers honesty, trustworthiness, or fitness as a lawyer in other respects, shall inform the appropriate disciplinary authority! And that is exactly what Appellant did with respect to Tanya Reed

2-2

and Tim Cone, but no one else filed a grievance with the state bar! Notwithstanding all the Brady violations in the case at bar; Jailhouse phone call, demonstrative knife, witness tampering, illegal search and seizure, Double Jeopardy, withholding evidence etc, etc! In fact, there were so many violations in Appellants case its almost overwhelming! Lets review some types of misconduct shall we?!

Whereas, the Prosecutors Role in our Adversarial Justice System - To obtain convictions, regardless of a defendants guilt or innocence - necessarily creates Competitiveness in terms of winning cases. But as stated by the U.S. Supreme Court, (While he may strike hard blows, he is not at liberty to strike foul ones! It is as much his duty to refrain from improper methods calculated to produce a wrongful Conviction as it is to use every legitimate means to bring about a just one see; Berger V. United States, 295 U.S. 78, 88 (1935) According to the Innocence Project and the Center for Prosecutor Integrity, the foul blows that prosecutors may strike can assume many forms, including, but not limited to the following;

1. Charging a suspect with more offenses than is warranted!
2. Making race-based jury selection decisions in violation of Batson V. Kentucky!
3. Withholding or delaying the release of exculpatory and impeachment evidence!
4. Allowing witnesses they know or should know are not truthful to testify!
5. Pressuring or threatening witnesses for the defense not to testify!
6. Pressuring or threatening witnesses to testify for the prosecution!

23

7. Relying on Fraudulent Forensic experts
8. During plea negotiations, overstating the strength of the evidence.
9. Making Statements That are designed to arouse public indignation.
10. Making improper or Misleading Statements To The jury or Court.
11. Failing to report Misconduct by other prosecutors.
Prosecutorial Misconduct has many permutations. Beyond The more Typical examples cited above, sometimes prosecutors Simply break The Law Themselves, using Their positions of authority to further Their own personal interests. Narcissitic Self absorbed.
Clearly in The case at bar, Appellant Perry has Made a prima facia Showing That The Prosecutors in his case violated nearly all of The Rules as Stated aforesaid, and More. Even The District Judge failed to report all of This Misconduct as required by Law.
Again, Notwithstanding all The Brady violations, Subterfuges and Misdirections, The Prosecutors knew about The rules governing The Jailhouse phone call, demonstrative knife, illegal Search and Seizure and of Course, Discovery, long before Appellants erroneous Trial. Appellant has strict proof Thereof. Ms. Reed, Carl Dorrough, and Zan Brown violated The State bar rules; (a) blatantly Failed to keep The agreement with counsel on important Discovery, and (b) Was less Than candid with The Trial Court and The Appeals Court in her reasons for doing so, let us not Forget Filing as False Affidavit with The State Bar. Ms. Reed and all The other attorneys Withheld Alanna McKinney's Indictment, Judgment, Plea Bargain, and Subsequent Deferred Adjudication Probation For over 2 years. Only providing This important discovery With her erroneous Affidavit. All of These acts and More are grounds For a reversal of The Conviction. Appellant has The right To a Fair and Impartial Trial and due process,

24

Free from prosecutorial bad faith and attorney misconduct, even judicial misconduct, guaranteed and protected by Fourteenth Amendment Due Process and Article I, Section 19, Due Course of Law, Texas Constitution see also; Ex parte; Adams, 768 S.W. 2d 281, 290 (Tex Crim. App. 1989)(Finding reversible error in prosecutors bad faith by intentionally failing to disclose evidence material to defense) Under State bar rules 3.01, 3.03, and 3.04 Counsel for the State, and any other opposing counsel, shall not assert an issue unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous, owes a duty of candor to the Tribunal, has a duty not to knowingly obstruct the other parties access to evidence, and has a duty not to knowingly disobey an obligation under the rules of a Tribunal.

See; Ex parte Adams, Supra: pp. 288-289 For over two decades both the Supreme Court and State appellate courts have attempted to resolve the ambiguities of the Brady decision. In Giglio V. United States, 405 U.S. 150, 92 S.Ct. 763 (1972) The Supreme Court decided that evidence of a promise of leniency to a witness made by another prosecutor should have been disclosed to the defense even if the prosecutor trying the case acted in good faith and did not know of the offer because a promise made by one attorney must be attributed to the Government, Id., at 154, 92 Set. at 766, Accordingly, The Court concluded that the governments failure to disclose the impeachment evidence was a violation of due process. (See Tanya Reeds Affidavit) To be sure, the alleged victim received deferred adjudicated probation and other charges were dismissed. She was in fact under indictment at the time of Appellants Trial. Appellant did Not receive this information until after about (2) two years later in his prison cell, included with Tanya Reeds Affidavit.

What is Not included in Ms. Reeds ingenuous Affidavit, inter alia, Was the Fact That The Alleged Victim presented herself at the prosecutors office long before Trial and attempted to dismiss the unfounded charges against the Appellant! However, Ms. Reed would Not permit Ms. McKinney to drop the charges, Telling Alanna McKinney That She would have to First Take a Six Week Family Violence Class and pay the Fees! Alanna McKinney Submitted not one, but Two Sworn Notorized Affidavits Recanting her accusations and admitting That She assaulted her Uncle First and That he only defended himself. Furthermore, That he never pointed a Knife in his direction! All of This exculpatory evidence, impeachment evidence, was deliberately Withheld from the record in This Case! Appellant even Filed a Subsequent Motion for a New Trial pursuant To Rule 40.001 C.C.P. in The 188th District Court and included one of Alanna McKinneys Affidavits - Notorized Statements, To No avail! All of This evidence Will be included as an exhibit with This Application for Writ of habeas Corpus Art. 11.07!

In Brady, The U.S. Supreme Court held That The Suppression by The prosecution of evidence Favorable To an accused upon request Violates due process where the evidence is Material either To guilt or To punishment, irrespective of The good Faith or bad Faith of The prosecution! There are Three components of a Brady Violation: The Withheld evidence must be Favorable To The defendant because it is exculpatory or can be used For impeachment purposes; The evidence must have been suppressed by The prosecution (even court appointed Counsel), either Willfully or unintentionally; and prejudice To The defendant must have resulted. Even when a defendant Fails To properly request Favorable evidence, The government is Still liable For Failure To disclose certain information (Demonstrative Evidence - Recant Statements) Constitutional error

26

results if favorable evidence is withheld and there is a reasonable probability that, had the evidence been disclosed to the defense and the jury, the results of the proceeding would have been different. (See Appellant's pro se Motions for Rehearing and Amendment to Rehearing, and Petition for Discretionary Review, Amendment to P.D.R., Two writs of Mandamus, Memorandum of Law in Support of Application for Appointment of Counsel Post Conviction Art. 11.07 C.C.P Habeas Corpus Filed on 10-27-2014'.) All of the Aforesaid documents should be on file in the Clerks office, either and or the Sixth Court of Appeals or the 188th District Court However, in an abundance of Caution, Appellant with submit These documents with This Application for Writ of Habeas Corpus Art. 11.07'

See; Ex parte Adams, Supra pp. 293, The Constitutional principles requiring disclosure of evidence favorable to an accused and The prohibition on Knowingly using false evidence to convict are basic to the due process of Law Mandated by The Fourteenth Amendment. Such rights are equally applicable to The due course of Law rights identified in Art. I § 19 of the Texas Constitution. Accordingly, The decision of This court in enforcing These rights is Not punishment of society for misdeeds of a Prosecutor but avoidance of an unfair Trial to The Accused. Brady v. Maryland, Supra, 373 U.S. at 87, 83 S.Ct. at 1196.

Appellant would Make This Court Know, That he filed numerous pro se Motions, pleadings, and Affidavits in a Concerted effort to preserve error and to protect his Substantial Due Process Rights'. Even filing his own pro se Motion for a New Trial, raising 17 grounds, including, but Not limited to ineffective assistance of Counsel, Something The Sixth Court of Appeals faults Appellate Counsel for Not doing and denying Appellant relief for That reason'. Appellant was denied all

27

relief, even being bench warranted from Prison for a hearing on Motion for New Trial in the 194th District Court, and again for a hearing pursuant to Faretta v California, supra, and Motion to Withdraw as Appellate Counsel, (citing Conflict of interests with regards to issue to be included in the Direct Appeal, like ineffective assistance of Counsel on Motion for New Trial, and illegal Search and Seizure.)

Not only was Appellant dissatisfied with Trial Counsel for failing to hire a private investigator and withholding evidence from him, but also his Court appointed Attorney on Direct Appeal. At the two hearings, Motion for New Trial and Faretta v. California, supra, the Judge failed to inquire thoroughly into Appellant's complaints and the Prosecutor's misconduct. See; Shute v. Lockhart 923 F.2d 1314 (1991) Appellant was bench warranted back to the 194th District Court twice, once for a hearing pursuant to Motion for New Trial (both pro se and Appellate Attorney's Motion for New Trial) and the Motion To withdraw as Counsel, pursuant to Faretta v. California, 422 U.S. 806. No Hybrid representation. At the hearing, Judge gave Appellant a choice, either proceed pro se and prepare and file his own Appellate brief or proceed with his own Appellate Attorney. Furthermore, the Judge only conducted a hearing on the own Motion for New Trial and denied Appellant's pro se Motion for New Trial whereas, Judge issued a ruling on Appellant's pro se Motion for New Trial making all the grounds included therein available for Appellate Court review, see; Robinson v. State, 240 SW 3d 919 (Tex. Crim. App. 2007) Furthermore, The Judge conducted a Habeas Corpus hearing on Appellant's pro se Motion for access to courts — the use of the Court library while in the County jail in order to prepare for Trial and to prepare Motion for New Trial, and his Appellate Brief, Judge denied access to the Law Library. The Judge states in his order, such, "I order Tim Tabb to prepare a pro se Appellate brief." Said hearings are

available for Appellate review! In Smith v. Lockhart, 923 F2d 1314 (1991) Smith argues that the omnibus hearing held Nov. 6th was critical stage necessitating effective assistance of counsel. The hearing was held pursuant to Ark. R. Crim. P. 20. It is a pre-trial hearing in which motions are made and ruled upon, and procedural and constitutional issues are made and ruled upon and considered. Defendants are allowed to change their pleas Rule 20.3 Any defensive motions that could have been made are waived unless the party lacked the information to raise the issue Rule 20.3(c) Appellant avers that this rule is quite similar to Art. 28.01 C.C.P. Pre-Trial hearing, i.e: Motion to Suppress Evidence, and/or other preliminary matters, or even an Examining Trial or Motion for Appointment of Counsel, Access to Courts - Law Library - County Law Library! Appellant maintains and avers that due to an abuse of discretion and bias and Brady violations, notwithstand Prosecutorial misconduct and Ineffective Assistance of Counsel, Appellant lacked the necessary information to raise certain issues (illegal search and seizure here) in order to preserve error, resulting in available defenses being irretrievably lost, right? see; Hamilton v. Alabama, 368 U.S. 52, 54, 82 S.ct. 157, 158, 7 L.Ed.2d 114 (1961) Constituting prejudice and the denial of Appellants Substantial Due Process Rights, guaranteed under the Fourteenth Amendment, U.S. Constitution and Due Course of Law Provision, Tex Const. art. 1 §19 and Tex. Code Crim. Proc. Art. 1.04; Wilson v. State, 536 S.W.2d 375 at 307 (Tex. Crim App. 1976) Federal Argument vests in due process rights as guaranteed under U.S. Const. amend. XIV; See Jackson v. Virginia, 443 U.S. 307, 319 (1979) In re Winship, 397 U.S. 358 (1970); In Smith v. Lockhart, the Court considered eleven pro se motions Smith had filed, as well as whether Smith would agree to accept Marquette as his attorney, at trial or instead

29

a part of the record in the case at Bar and should in all things be available for the Court of Criminal Appeals review, right? According to the Sixth Court of Appeals dubious Memorandum Opinion on several grounds error was Not preserved and Because Perry's complaints on appeal were not asserted below, They do not comport with his objections at Trial. Sound Trial Strategy, hardly! AT Trial or on Appeal!

This is similar to the position Appellant Perry was placed in regarding his choice of Appellate Counsel, pursuant to Faretta V. California, Supra; At least Two of Mr. Smiths Motions constituted important matters in which the effective assistance counsel could have been of critical importance! Like Appellant Perry's Motion for a New Trial, Addendum to Motion for New Trial (pro se Robinson V. State, Supra; Also Appellants pro se Motion for a Private Investigator see, Ake V. Oklahoma, 470 U.S.68, 77, 105 Sct. 1087, 1093 (1985) see also, Appellants pro se Motions For Examining Trial. In Fact, Appellant filed dozens of pro se Motions that were never ruled on by the Court. These Motions obviously had the ability to influence The outcome of The proceedings! In Fact, if These Motions would have been heard, and or acted on, there probably Would Not have even been a Trial! There was an abuse of discretion!

Perry's Appellate Counsel also filed a Motion to Withdraw as Counsel on April 23, 2013 Citing/Alleging, inter alia, a Conflict of interest That will Not be resolved and a dispute about what to include in Motion For New Trial and Appellates Brief. Whereas, Appellate Counsel filed a Motion for New Trial on March 25, 2013, raising only four grounds of which did not include ineffective assistance of Counsel! Perry Filed his pro se Motion for a New Trial on March 24, 2013, and Appellant Perry did include The ground ineffective assistance of Counsel!

Appellate Counsel Lew Dunn, asserted to The Court That on or about April 2, 2013 Michael Dean Perry, Appellant, herein Filed his own pro se Motion for New Trial, raising (17) issues That, for the Most part, are separate and distinct issues from those raised by Counsel. Michael Dean Perry has also requested a hearing on

30.

his motion for New Trial. Among other issues, but by no means limiting the points of disagreement, one of those issues (raised at several points in his motion) concerns Mr. Perry's assertions that Trial Counsel rendered ineffective assistance of counsel. Counsel disagrees with Mr. Perry about bringing forward that issue on Direct Appeal by raising such matters in a motion for New Trial. And Appellant maintains that the Sixth Court of Appeals faults "Perry" for Not preserving error of ineffective assistance of counsel by not raising the claim in motion for New Trial, Indeed! see; Regis V. State, 849 S.W.2d 812 (Tex Crim App 1993) Ineffective assistance of counsel may be raised in motion for New Trial, of which is cited in Appellant pro se motion for New Trial' Furthermore, Appellate Counsel Lew Dunn, contradicts himself further by including atleast three grounds of ineffective assistance of counsel in Appellates Brief! Of which the Appellate Court rejected because error was not preserved in Motion for New Trial! Indeed!!

Appellants Counsel on Appeal, Lew Dunn, reasonably believes that the filing of the pro se motion for New Trial poses a conflict between Counsel and Michael Dean Perry, Counsel represents to the Court that he has a fundamental disagreement with client about the basic procedure involved in this appeal about the presentation of various issues for the appeal. Counsel does not believe that the conflict can or will be resolved'. Counsel request to be withdrawn' (Emphasis added))

Appellant Perry avers that he has a fundamental Right to conflict free and effective assistance of Counsel, Not only at Trial, but on his first Appeal as of Right' See, Evitts V. Lucey, 469 U.S. 387, 105 S.ct. 830, 83 L.Ed 2d 821 (1985) Appellate Counsel Further asserts the appeal is still in an early stage, such that, on the one hand, the court could permit Perry to represent himself pro se or, on the other hand, permit withdrawal of counsel and then

31.

appointment of other counsel. Either of such steps will not prejudice the timely research, writing, and submission of a brief, or other procedures connected with the consideration of the appeal. And Appellant poses this question to the Texas Court of Criminal Appeals. How could this ever have occurred in this case, under these circumstances? Appellant was confined in a solitary cell the entire time before trial at the Gregg County Jail, because he was a thorn in Government's side (Tim Cone's testimony at trial) Denied his Writ of Habeas Corpus - Access to Courts - request to use the County Law library in the 188th District Court, in order to prepare a defense of the pending "serious criminal charges". Furthermore, Appellant's initial court appointed counsel, Michael B. Lewis, Failed to prosecute the case, Failed to communicate with his client, and to adequately advise Appellant about the progress of his case. His erroneous advice to Appellant was to plead guilty and except 12 years in prison! If not, the state (Tanya Reed) was going to come at him with both barrels, hence, the two 60 year sentences! There was never any offer to investigate the case or interview witnesses or even to ascertain if Appellant was actually innocent! Appellant Fired Mr. Lewis! see. Smith v. Lockhart, supra; In this case, when a defendant raises a seemingly substantial complaint about counsel, the Judge has an obligation to inquire thoroughly into the factual basis of defendant's/appellant's dissatisfaction. Hart, 557 F.2d at 163. see also Hudson v. Rushen, 686, F.2d 826, 829, (9th Cir. 1982). Cert denied, 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); Schwarzer, Dealing with incompetent counsel - The Trial Judge's Role. 93 Harv. Law Rev. 633, 652 (1980); CF. Wood v. Georgia, 450 U.S. 261, 272, 101 S.Ct. 1097, 1104 67 L.Ed.2d 220 (1981) (holding that mere possibility of a conflict of interest triggers duty to inquire) The Trial Court must make the kind of inquiry that might ease the mind of defendant and his dissatisfaction, distrust, or concern. Hudson, 686 F.2d at 829 That inquiry should be on the record

It should be important to note that Appellant Perry, also had a conflict with his subsequent Court appointed Counsel at Trial; when Appellant discovered in the middle of Trial that his attorney, Tim Cone, withheld Brady materials from him; see; Brady v. Maryland, 373 U.S. 83 (1963)(exculpatory, and impeachment evidence) only to blindside Appellant with the erroneous evidence at this Trial. Well, some of it! A great deal of the Brady materials were never disclosed to the Appellant by Trial Counsel, Counsel on Appeal, or even the Prosecutor. In fact, Appellant discovered some of the other evidence through his own investigation from his prison cell. In fact, some of the evidence has never been disclosed to Appellant or even the Courts; two items come to mind, the witness that ran off before the Police arrived, THE REAL KNIFE, Oh, wait, there's more; Where's the Search Warrant for Appellants Home? The names and identities of all the other Police that searched, not only Appellants back pack, but his home as well? Surely, Super Cop Nikkie Williams didn't arrest Appellant, Search his back pack, then his home, interview the witnesses, take all those photographs, then transport Appellant to the Jail all by herself? Or did she? That's what the Police Report and record in this case seem to indicate. Neither one of Appellants dubious Court appointed attorneys hired a private investigator, at Trial or on Appeal. See; Ake v. Oklahoma, Supra; Appellant was entitled to a Private Investigator, even on Appeal. Whereas, a Private Investigator would have been better qualified to investigate the facts in this case and to assist him in the preparation of his defense. Based on the very limited, and/or nominal investigation in this case, the Appellant avers that there were a number of witnesses who should have been sought out and interviewed (other Police Officers, the witness that ran off, Wilma Mckinney) This could have only been done properly and effectively through the use of a Private Investigator. Appointment of a private Investigator was necessary to ensure that defendant/appellant receive his rights to effective assistance of Counsel, Cross-examination, and Confrontation;

33

and compulsory process, guaranteed by the Sixth Amend. and Fourteenth Amend. to the United States Constitution; due process and due course of law, guaranteed by the Fourteenth Amendment, and Art. I, Sections 3 and 3a, and Art. I section 19, due course of law provisions of the Texas Constitution, Notwithstanding Art. I, section 10 of the Bill of Rights. Appellant avers and maintains that he was denied Brady Materials, Before, during, and even after Trial. See; Michael Don Perry's pro se Motion for New Trial, Affidavit in Support of Motion for New Trial, and Of course Perry's Addendum to Motion for New Trial, all of which will be submitted with the Application for writ of habeas Corpus Art. 11.07 In fact, Appellant will be Submitting dozens of pro se Motions, affidavits, letters to and from his dubious attorneys, and other exculpatory evidence.

There was Prosecutorial Misconduct and Judicial Misconduct, Which is evenly in the record. Appellant even filed a grievance with the state bar of Texas on the Prosecutor, Tanya Reed, using of all things, the grounds of prosecutorial misconduct from Appellates Brief. This was long before Appellant was denied relief on Direct Appeal. The State bar ordered Ms. Reed to Submit an Affidavit to address the allegations of Misconduct. Ms. Reeds Affidavit is replete with falsities, and especially concerning the Emergency Protective Order of which is included as an exhibit. Even the issue concerning the demonstrative knife; one of the issues is the lack of Notice, contrary to the Courts Opinion, the Prosecutor is required to give the defendant a (5) five day prior Notice before its use, see the Courts very own Pre-Trial Orders, also included with this Writ. Candor to Tribunal 'Right? Appellant also filed a grievance with the State bar on Tim Cone. Even Though Len Dunn included Prosecutorial Misconduct in Appellates brief, he failed to report the misconduct to the Bar association. In fact, Appellant is the only person that reported the misconduct. Not only were all of the other attorneys required to report the misconduct to the chief Disciplinary Counsel, see; State Bar

34

of Texas, Rule 8.03. The Presiding Judge is also duty bound to report the attorney misconduct to the proper authorities. See Canon 3 D(2) Code of Judicial Conduct. Appellant reported the misconduct, notifying the Trial Judge by letters and by numerous pro se motions. And of course, in Appellants Brief and a Writ of Mandamus in the Court of Appeals. (Trial proceedings before a biased judge are presumptively unfair and such unfairness is reason enough to grant a writ of habeas corpus. See; Walker V. Lockhart, 763 F.2d 942, 960 (8th Cir 1985); Cert. denied, 478 U.S. 1020, 106 S.Ct 3332, 92 LEd 2d 738 (1986) Whereas, the Prosecutor committed numerous acts of misconduct at Appellants Trial, even goading Appellants Trial attorney, into to requesting a Mistrial, then a running objection. Of which was arbitrarily denied by the Trial Judge. Showing bias and prejudice, even favoratism towards the Prosecutor, Ms. Tanya Reed. See; United States V. Meyer, 462 F.2d 827, 842 (D.C. Cir 1972) In general, Judges should recuse themselves when they have become enmeshed in personal disputes with parties before them. See eg. id at 836; Clark V. State, 287 Ark. 221, 697, S.W. 2d 895, 897 (1985) The Supreme Court has explained that when the Trial judge is discovered to have had some basis for rendering a biased judgment, his actual motivations are hidden from view, (Perrys a Thorn in Governments Side) and we must presume the process was impaired. Vasquez V. Hillery, 474 U.S. 254, 263, 106 S.Ct. 617, 623, 88 LEd 2d 598 (1986) (dicta) (citing) Tumey, V. Ohio, 273 U.S. 510, 535, 47 S.Ct 437, 445, 71 LEd 749 (1927); See also; Bolden V. State, 262 Ark. 718, 720, 561 S.W. 2d 281, 283 (1978); Code of Judicial Conduct, Canon 3 (c) (1972 (Judges should disqualify themselves when their impartiality might reasonably be questioned) The Trial proceedings before a biased judge are presumptively unfair and such unfairness is reason enough to grant a writ of habeas corpus. See; Walker V. Lockhart, 763 F.2d 942, 960 (8th Cir 1985); Cert. Denied, 478 U.S. 1020. 106 S.Ct. 3332, 92 LEd 2d 738 (1986)

5 Code of Judicial Conduct Canon 3 D(2)

35

A Judge who receives information clearly establishing that a Lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct should take appropriate action. A Judge having knowledge that a Lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct that raises a substantial question as to the Lawyers honesty, Trustworthyness or fitness as a Lawyer in other respects shall inform the office of the General Counsel of the State Bar of Texas or take other appropriate action.

6. <u>Tex. Code of Crim. Proc. Art. 2.01 Duty of District Attorneys</u>

It shall be the primary duty of all prosecuting attorneys, including any special prosecutors (Tanya Reed?) Not to convict, but to see that justice is done. They shall not suppress facts or evidence or secrete witnesses capable of establishing the innocence of the accused.

Art. 2.03 C.C.P. Neglect of Duty (b) Not to impair the presumption of innocence.

7. <u>State Bar Rules of Texas</u>

Rule 8.03 Reporting Professional Misconduct

(a) Except as permitted in paragraphs (c) or (d), a Lawyer having knowledge that another Lawyer has committed a violation of applicable rules of Professional Conduct that raises a substantial question as to that Lawyers honesty, Trustworthyness or fitness as a Lawyer in other respects, shall inform the appropriate disciplinary authority.

Rule 8.04 (a) A Lawyer shall not (1) Violate these rules, knowingly assist or induce another to do so through the acts of another, whether or not such violation occured in the course of a Client-Lawyer relationship. (3) engage in Conduct involving dishonesty, fraud, deceit or misrepresentation (4) engage in Conduct constituting obstruction of Justice. (6) Knowingly assist a Judge or Judicial

36

officer in conduct that is a violation of applicable rules of judicial conduct or other law (7) violate and disciplinary or disability order or judgment.

(8) Fail to Timely Furnish The Chief Disciplinary Counsels office or a district grievance committee a response of other information as required by the Texas Rules of Disciplinary Procedures unless he or she in good faith timely asserts a priviledge or other legal ground for failure to do so.

Note; (1) Lawyers holding Public office assume legal responsibility going above and beyond those of other citizens. A lawyers abuse of a public office can suggest an inability to fulfill the professional role of an Attorney.

The Appellant Perry makes this observation; As according to the rules stated aforesaid, and even some of the rules not mentioned, Not only did Prosecutors in the case at bar commit Misconduct, but the record tacitly shows that all of the Attorney's involved in the case at bar also committed Misconduct, inter alia, failed to report Attorney Misconduct to the Chief Disciplinary Counsel of the State Bar. (Only the Appellant went out on a limb and reported the Misconduct on atleast two of the Attorney's of which Appellant will provide proof thereof.) This would include, but not limited to; Zan Colson Brown, Carl Dorrough, and Lew Dunn. This also tacitly concedes that the Trial Judge, David Brabham, violated Canon 3 D(2) by failing to report the Attorney Misconduct to the proper authorities. This rule might implicate the Appellate Court Justices as well, since they were put on Notice of the Attorney Misconduct in the Appellates Brief. Whereas, whether Trial Attorney, and or Appellate Attorney, preserved error, and or made the proper objections at trial, and or on Appeal is not the underlying issue! Whether Michael Dean Perry received a fair and Impartial trial, that is the real issue, Not Subterfuges in Misdirection!

See the Sixth Court of Appeals Memorandum Opinion in which they deny Appellants grounds of ineffective assistance of counsel on direct review.

37

see; Page 33, ground 10. No Ineffective Assistance of Counsel Was Shown.

The Court ingenuously states that Perry argues that his counsel was ineffective because he (1) failed to pursue Perry's motion to suppress the knife based on the States agreement, (2) did not request a limiting instruction with respects to the demonstrative knife, and (3) failed to hire an investigator to reveal the identity of the unidentified man who witnessed the altercation but left before officers arrived!

First of all, the arguments asserted on direct appeal were made by Appellate Attorney Lew Dunn, not by Perry! There was a fundamental disagreement about what issues should be raised on Direct Appeal and a conflict of interest as previously discussed in this Application! Notwithstanding, all of the Brady violations, Prosecutorial Misconduct, Ineffective Assistance of Counsel, and even Judicial Misconduct, and abuse of discretion! Having clarified the aforesaid, Appellant will try to address the above stated issues again to the best of his ability!

The Court states that to show ineffective assistance of Counsel, a defendant must demonstrate both (1) that this Counsels performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for Counsels unprofessional errors, the results of the proceeding would have been different. Strickland V. Washington, 466 U.S. 668 (1984), Ex parte Imouda 284 S.W. 3d 866, 869 (Tex Crim App 2009) failure to make either one of these required showing defeats an ineffectiveness claim. See; Williams V. State. 301 S.W. 3d 675, 687 (Tex. Crim App. 2009), Ex parte Martinez, 195 SW 3d 713, 730 n.14 (Tex. Crim App. 2006). The Appellant would point out that the Sixth Court of Appeals analysis of the issues argued in this erroneous appeal were based on Subterfuges in misdirection, Brady Violations, Violations of the Michael Morton Act, Prosecutorial Misconduct, perjured testimony, Judicial Misconduct, Attorney Misconduct, and last but not least, ineffective assistance of Counsel! The Court goes on to Support Appellants

38

assertions, when it states, from the record; Whereas, We begin our analysis with the rule that any allegation of ineffectiveness of counsel must be firmly founded in the record. Case citing, omitted) From the record, which does not include an explanation of counsel's reasoning, Perry bears the burden of proving by a preponderance of the evidence that counsel was ineffective, 9) See the courts last slip f. 34. Although the Trial court heard Perry's Motion for New Trial, "Perry presented No Complaint or evidence relating to ineffective assistance (Emphasis supplied on the "Perry" part) Appellant Perry did raise numerous grounds of ineffective assistance of counsel in his pro se Motion for New Trial, of which the court only ruled), The court only ruled on Law Dunn's Motion for a New Trial of which did Not include ineffective assistance of counsel, of which prevented Appellant from Subpoenaing Trial Level Trial counsel in order to develope the record and include a comprehensive evaluation of his reasoning, for Not making the proper objections at Trial, failing to hire a private investigation, failure to inform Appellant about the illegal Search of, Not only, his back yard, but his Home as well! That the police, while illegally Searching his Home, picked up the actual knife used in the alleged crime, off the floor and took it with them "His failure to interview any of the witnesses, aside from Alonna Mckinney, failed to Subpoena Wilena Mckinney the other eye witness, and prevented her from testifying at the guilt/innocence phase of Trial, Nor did he get a recorded statement from any of the witnesses, Even failing to provide the court with the recorded recent statement from the alleged victim' See Wilena Mckinney, eye witness Sworn Affedavit, also see the alleged victims Sworn Affidavits'. Further, Trial counsel failed to file a Motion to Quash the indictment on Double Jeopardy Grounds' failed to object to all of the charge errors and the amendment of both the erroneous indictment on JT's Courts charge in the middle of Trial', failed to request a defensive theory be included in the courts charge!

79

See Perrys pro se motion for New Trial p. 11 of 15 ground 17. To preserve error on appeal defendant must raise identical point in motion for New Trial. If evidence raises defensive theory, accused is entitled to have that theory submitted to the jury. Lew Dunn failed to even include ineffective assistance of counsel in his dubious motion for New Trial. Of which the Court of Appeals rejects Appellants claims of ineffective assistance of counsel for that very reason, inter alia, Trial counsel failed to make the proper objections at Trial and Appellate Attorneys objections on Appeal do not comport with the objections made at Trial, therefore error was not preserved. See Courts Opinion p. 25 ground 7. No error was preserved regarding the "Claimed" breach of Agreement regarding the knife, (First of all, the Court makes it appear that (Perry) did or did not do this or that, It was Trial Attorney, Tim Cone and Appellate Attorney Lew Dunn who failed to preserve error, and or make the proper objections, Not Perry!) Tim Cone and Michael B. Lewis oh, and Tanya Reed, are the ones that deliberately withheld Brady materials, like the illegal search of Appellants Home, the Police Taking the Real Knife with them from Appellants Home without a search warrant. The eye witness testimony of Wilma McKinney, Who states, inter alia, that her dear sweet Granddaughter was Not Hysterical and that she had no injuries. Of course the Trial would have had a different outcome, Especially considering all of the other errors, misconduct, Brady Violations! Courts opinion p. 26 Perry argues that the state committed prosecutorial misconduct when it blatantly undid the agreement with counsel on important discovery and was less than candid with the Trial Court in its reasons for doing so. "Perry's" point of error does not complain of any action by the Trial Court. This is because "Perry" did not raise and did not secure a ruling on this ground of alleged prosecutorial misconduct. Hahh! To preserve a complaint for Appellate review, the complaining party must make a specific objection

40

and obtain a ruling thereon the objection: Tex. R. App. P. 33.1 (a) Because "Perry" did not present his complaints to the Trial Court, the issue of prosecutorial misconduct is not preserved for our review. "15": from offering the "Actual KNIFE used in the assault. Ha! Ha! It came from our Investigator Hall Reavis' Home! Ha! You see, the State has its own Private Investigator paid for by the Tax payers, but Perry couldn't have one! And they have their own knife! Of which is Nothing like the Actual KNIFE used by Appellant to pick the lock! Lew Dunn knows That too! Look again at his reply brief p. 1 through 3. See page 29 Courts opinion: Perry's objection to the admission of the knife at Trial was only that he had not been given prior notice of its use and that the State was showing the exhibit to the jury even though it had not been admitted. On appeal, however, Perry argued that the Trial Court erred in admitting the demonstrative knife because (1) the ruling had the effect of revoking the parties agreement and (2) the demonstrative knife should not have been used because the original knife was available! The point of error on appeal must comport with the objection made at Trial. See Sewin v. State, 181 S.W.3d 359, 367 (Tex Crim App. 2005); Wilson, 71 S.W.3d at 249 Because "Perry's" complaints on appeal were not asserted below, they do not comport with his objections at Trial, and nothing is preserved for our review. See Pena v. State, 285, S.W.3d 459, 464 (Tex Crim App 2009) We overrule "Perry's" points of error complaining of the States use and the Trial Courts admission of the demonstrative knife because he has failed to preserve them!

Also see the Courts opinion page 30 ground 8. No error was preserved regarding the lack of a jury instruction regarding the knife! Appellant maintains that the jury instruction regarding the exact demonstrative knife was mandatory! Theres No discretion in it! The Trial Court was statutorily required to give a limiting instruction in the Courts Charge

41

See Foster V. STATE, 101 S.W. 3d 490, 498 (Tex App.-Houston (1st Dist) 2002) 5. Jury Charge

In point of error Five, appellant contends the Trial Court erred by refusing to submit a jury charge on the legality of the second pat-down search of appellant. If evidence admitted at Trial raising any doubts as to the legality of how it was obtained, the jury shall be instructed that if it believes, or has reasonable doubt, that the evidence was obtained illegally, then the jury must disregard the evidence. Tex. Code Crim. Proc. ANN. art. 38.23 (a) (Vernon Supp. 2002) When there is a factual dispute as to how evidence was obtained, the Trial Court is statutorily required to give an article 38.23 instruction in the jury charge. See also Wesbrook V. STATE, 29 S.W. 3d 103, 121 (Tex Crim App. 2000) Whereas, Not only was there a legal issue as to how the evidence was obtained in the case at bar, but there was also a factual dispute, even more so on both accounts in light of the Search and Seizure of Appellants home and the fact that Police also Searched Appellants home without Probable cause or a Valid Search Warrant and picked up the Actual Knife used in the alleged assault and took it with them. Never disclosing this fact! Furthermore, Tim Lowe also knew about, Not only the illegal Search of Perry's back pack, but his home as well, but didn't bother to tell Appellant Perry about it. In fact, Appellant was blindsided with all of this erroneous evidence and Police misconduct at this Trial.

Furthermore, there was No chain of custody of "THE KNIFE". Period! The fact remains that there was never any evidence to support the claim that Police found a knife in Appellants back pack. Just the word of Nikkie Williams. None of the other Police officers submitted a statement claiming that "THE KNIFE" was found in Perry's back pack. The State has never produced or in any way presented the "Real Knife". Where is it? The State never has shown the beginning and the end of the chain of custody of the Actual Knife. If they did, they would have had to admit before Trial the illegal Search

42

and Seizure of Appellant home and the fact that Police picked up THE KNIFE and took it with them. also, that Police photographed the inside of Appellants home and his niece, the purported victim. That Police did not get a recorded statement from any of the witnesses or victim. Especially, eye witness, Wilma McKinney, who would have testified that her Granddaughter, Alanna McKinney, was not Hysterical, had no injuries and was of sound mind and that Police had Not obtained a consent to search her home or produced a valid Search Warrant. That Police picked up THE KNIFE Appellant dropped and took it with them. Talk about a Brady violation. These violations Should Not Continue see United States V. Tavera, 719 F.3d 705, 708 (6th Cir 2013) Tim Cone and Tanya Reed knew about the illegal search of Appellants home and all of those pictures and probably the fact that Police took the Real knife with them. Tim Cone was Court appointed therefore, he can be considered a Government employee-State actor. The Government must provide defendants with material, exculpatory evidence in its possession. failure to do so results in trial that is fundamentally unfair. The Supreme Court has never wavered from this principle. So long as favorable evidence could very well effect the jurys decision, prosecutors must disclose it. Heck, even Court appointed Counsel! And when they fail to do so, Courts have a duty to order a retrial, allowing a jury to consider the previously concealed evidence. Duty to disclose, even without due diligence of defendant Whereas, rule thus declaring "prosecutor may hide, defendant must seek" is not tenable in a System constitutionally bound to accord defendants due process. (Illegal Search of Home occurred on October 16, 2012) (Next Day!!)
Appellant received ineffective assistance at Trial and on Appeal of Court appointed Counsel. Whereas, the Sixth Amendment, made applicable to the States by way of the Due Process Clause of the fourteenth Amendment entitles a criminal defendant to the effective assistance of counsel

43

not only at Trial, but during his First appeal as of right. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 LEd2d 821 (1985) As the Court explained in Evitts; In bringing an appeal as of right from his conviction, with its consequent drastic loss of liberty, is unlawful, to prosecute the appeal, a criminal appellant must face an adversary proceeding that-like a Trial-is governed by intricate rules that to a lay person would be hopelessly forbidding. An unrepresented appellant-like an unrepresented defendant at Trial-is unable to protect the vital interest at stake! To be sure, Appellant did have nominal representation, Not only at Trial, but when he brought this appeal as well! But nominal representation on appeal of right-like nominal representation at Trial-does not suffice to render the proceedings constitutionally adequate; A party whose counsel is unable to provide effective representation is in no better position than one who has no counsel at all! 469 U.S. at 369, 105 S.Ct. at 836 A lawyer who does not provide the defendant/appellant with effective assistance on direct appeal and who is prejudice by the deprivation is thus entitled to a New Appeal!

See House Bill 166, Austin Tx. A Bill That would create a commission named after Timothy Cole, The Texas Tech University student who was wrongly convicted of rape and died in prison before being exonerated, is closer to becoming law. The Texas House of Representatives on Tuesday gave preliminary approval to House Bill 166, a measure that would create the Timothy Cole Exoneration Review Commission. The nine member panel would examine wrongful convictions to determine what errors the prosecutors or defense counsel committed during the investigation of the case, and or during Trial or the Appeal. It was a voice vote, but final passage of the measure will be a record vote! Rep. Ruth Jones McClendon told the 150 member chamber her bill is necessary because when people are convicted of a crime or crimes they do not commit there is little they can do to prove their innocence and

44

sit in a cell in prison for decades! These men and women rot in prison she said! Moreover, with "117 proven wrongful convictions so far" Texas leads the nation and that is "shameful" Some representatives from the Texas Panhandle/South delegation said though they like the Bill, They have some reservations about it. Amarillo Republicans Four Price and John Smithee said after Tuesdays voice vote They will decide before the final vote on Wednesday whether They will support or oppose the measure. Rep. Charles Perry stated he intends to vote for The Bill, HB166, because it's a good Bill. After Wednesdays final vote, The measure will be headed for the Senate for the chambers consideration! If The measure receives atleast two thirds vote in each chamber and also gets Gov. Gregg Abotts approval, it would become effective immediately! If it passes with less than two thirds vote it would become effective on or about September 1st, 2013. Also see the Michael Morton Act!

<u>Memo on Ineffective Assistance of Counsel in brief</u>

Whereas, The accused in a Criminal Trial has a right to Counsel under the Sixth Amendment, U.S. Const. see, Powell V. Alabama, 287 U.S. 45 (1932); Strickland V. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984); United States V. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed. 2d 657 (1984) But also see, Prou V. U.S. 199 F.3d 37 (1999) (Criminal Law 641.13(1) and (1134(2)) To gain a reversal for ineffectiveness of counsel, an appellant must proceed through Two steps. The First Step requires an appellant to demonstrate that Trial Counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. See, Strickland, 466 U.S. at 688; McFarland V. State, 928 S.W.2d 482.500 (Tex. Crim App. 1996) Counsel's representation is not usually reviewed for isolated or incidental deviations from professional norms, but on the basis of the Totality of the representation. See, Strickland, 466 U.S. at 695. See Also; Frangias V. State, ___ S.W.3d ___, 2013 WL 6908549 (Tex Crim App. Feb 27, 2013)

45

(holding that counsel was ineffective when his conduct was viewed in light of the totality of the representation, and remanding to the lower court for a prejudice analysis under the second prong of Strickland v. State, 466 U.S. 668 S.Ct. (1984). This court said: The proper measure of attorney performance remains simply reasonableness under prevailing professional norms... The Appellate argues that his Trial counsel failed to bring to bear the requisite degree of skill and knowledge to his case as to assure a reliable adversarial proceeding. We agree, Id. Whereas, the second step requires the appellant to show prejudice from the deficient performance of his/her attorney, see, Hernandez v. State, 988 S.W.2d 770, 772 (Tex.Crim App. 1999). To establish "prejudice" an appellant must show that there is a reasonable probability that, but for counsels unprofessional errors, (Emphasis Supplied) The results of the proceedings would have been different. see, Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as a probability sufficient to undermine confidence in the(s) outcome. Strickland, 466 U.S. at 693-694. The Strickland standard, rather than the Cronic "presumed prejudice" standard, applies to a claim that counsel failed to oppose the prosecution at specific points during the trial, and or if he did, failed to make the proper objection in order to preserve error Whereas, generally, to preserve a complaint for appellate review, the complaining party must make a timely request, objection, or motion that states the grounds for the ruling sought with sufficient particularity to make the trial court aware of the complaint, and the trial court must rule on the "request, objection, or motion, citing, Tex. R. App. P. 33.1(a)(1)(A), (2) (Emphasis added) Although, in the case at bar, Trial Attorney Tim Cone did in fact make a motion for a mistrial, the court abused its discretion and overruled the motion. Furthermore, said attorney at one point even requested a running objection to the prosecutors erroneous and prejudicial statements made several times during Trial. Not only all of the

aforesaid, but at one point, Tim Cone asked for a directed verdict of acquittal because the state absolutely failed to prove essential and necessary element of bodily injury or that the alleged victim suffered any pain. Of course, the court denied that motion as well. Bell v. Cone, 535 U.S. 685 (2002) Appellant avers that in the case at bar, the Court of Appeals has second the ineffectiveness claim and confessed that error was made, so much so, that the court would not review the errors. This tacitly concedes that Appellate Counsel was also ineffective. To establish prejudice, An appellant has the burden of proving ineffective assistance of counsel and must overcome the presumption that counsels conduct falls within the wide range of reasonable professional assistance see, Jackson v. State, 877 S.W. 2d 768, 771 (Tex Crim App. 1994). An appellant has the burden of proving ineffective assistance of counsel and must overcome the presumption that, under the circumstances, the challenged action might be considered "sound trial strategy" Id. Appellant cannot meet the burden if the record does not affirmatively support the claim see, Garza v. State, 213 S.W. 3d 338, 347-338 (Tex Crim App. 2007)(Court presumed trial counsel had reasonable trial strategy in absence of the record indicating reasons for trial counsels actions or intentions) Generally, a record that specifically focuses on the conduct of Trial Counsel is necessary for a proper evaluation of an ineffectiveness claim. See, Kemp v. State, 892 S.W. 2d 112, 115 (Tex. App. Houst. (1st Dist) 1994 pet. ref'd) The reviewing court, in absence of evidence to the contrary, will ordinarily assume a strategic motivation (for the challenged conduct) if any can be possibly imagined. See, Garcia v. State, 57 S.W. 3d 436, 440 (Tex Crim App. 2001) Subterfuge, Damage Control, The Appellant in the case at bar did everything he could to preserve error and to support his claims of ineffective assistance of Counsel, Filing not only a pro se motion for a new Trial, but dozens of other motions pointing out the ineffective assistance of

47

Counsel claims, and trying to develope the record in order to ascertain the reasons for Trial Counsels actions, and/or lack thereof. Which is the reason that Appellant included ineffective assistance of Counsel in his pro se motion for a New Trial in order to interrogate the attorney in order to develope a record that specifically focuses on the conduct of Trial Counsel. However, the Trial Court denied Appellants pro se motion for New Trial denying him this right and/or opportunity! Only issuing a ruling on Appellate attorney's motion for New Trial, of which did not include ineffective assistance of Counsel of which the Sixth Court of Appeals denied Appellant relief for that very reason!

But see, Prou v. U.S. 199 F.3d 37 (1999) (Criminal Law 1134(2))(641.13(1)) Not every lawyerly slip constitutes ineffective assistance of Counsel, but where an attorney fails to raise an important, obvious defense without any imaginable strategic or tactical reason for the omission, his performance falls below the standard of proficient representation, that the Constitution demands. U.S.C.A. Const. Amend. Criminal Law 1134(2) Although a reviewing Court must consider the whole of the record, a single, serious error nonetheless can support a claim of ineffective assistance of Counsel!

See, Also; Mason v. Hanks, 97 F.3d 887 (1996) A defendant whose lawyer does not provide him with effective assistance on direct appeal and who is prejudiced by the deprivation is thus entitled to a New Appeal see, e.g; Mayo v. Henderson, 13 F.3d 528, 537 (2d Cir), cert denied ___ U.S. ___ 115 S.Ct. 81, 130 L.E.2d 35 (1994); Claudio v. Scully, 982 F.2d 798, 806 (2d Cir 1992), cert denied, 508 U.S. 912, 113 S.ct. 2347, 124 L.Ed 2d 256 (1993); Fagan v. Washington, 942 F.2d 1155, 1156 (7th Cir 1991); Barry v. Brower, 864 F.2d 294, 300-01 (3d Cir. 1988); MaTire v. Wainwright, 811 F.2d 1430, 1439 (11th Cir. 1987); Grady v. Artuz, 931 F.Supp. 1048, 1053-54 (S.D.N.Y. 1996) Generally speaking, the performance of appellate counsel is assessed using the same standards applied to Trial Counsel under Strickland v. Washington, Supra; 466 U.S.

48

668, 104 S.Ct. 2052, 80 LED 2d 674 (1984) As Appellant stated previously, his Court appointed attorney on appeal failed to make the proper objections on direct appeal, as the Sixth Court of Appeals pointed out, effectively denying Appellant review of those issues, denying him his right of Appeal. See, The Courts Memorandum opinion page 29, ground 7. The point of error on appeal must comport with the objection made at Trial. See, Swain V. State, 181 S.W. 3d 359, 367. (Tex Crim App. 2005); Wilson, 71 S.W. 3d at 349. Because "Perry's complaints on appeal were not asserted below, They do not comport with his objections at Trial, and nothing is preserved for our review. See, Pena V. State, 285 S.W. 3d 459, 464 ( Tex. Crim. App. 2009) We overrule "Perry's points of error complaining of the states use and the Trial Courts admission of the demonstrative knife because he has failed to preserve them! Sound Trial Strategy? Hardly!".

Courts opinion page 30, ground 8. No error was preserved regarding the lack of a jury instruction regarding THE KNIFE, Subterfuge! Because "Perry did not ask The Trial Court to give a limiting instruction, he cannot now complain of a lack of jury instruction about the demonstrative knife', see Tex. R. Evid. 105(a); Onwukwe, 186 S.W. 3d at 85; see also Tex R. App. P. 33.1(a) We overrule This point of error'. (Emphasis added)

<u>Prayer</u>

Wherefore, premises considered, Appellant respectfully prays that The honorable Justices of The Texas Court of Appeals would grant him The relief he request Therein, an Acquittal, or a New Trial, and such other, and Further relief To which he may be justly entitled, at law and in Equity.

Respectfully Submitted;

<u>Michael Perry</u>

49

## Unsworn Declaration

I, Michael Dean Perry TDCJ No. 1838827 being presently incarcerated in the Texas Department of Criminal Justice at the Ellis Unit, 1697 FM 980, Huntsville, Tx 77343 Declare under penalty of perjury that the above and foregoing is True and Correct.

Executed on this the 26 day of May 2015

By the Appellant X Michael Dean Perry 1838827

## Certificate of Service

I, Michael Dean Perry TDCJ No 1838827 do hereby Certify That a True and Correct Copy of the above and foregoing Memorandum of Law, unsworn declaration, and Certificate of service have been served by placing same in the U.S. Mail, First Class postage prepaid on this the 26 day of May 2015

By the Appellant X Michael Dean Perry 1838827

Return Service Requested; Michael Dean Perry TDCJ No. 1838827
Ellis Unit
1697 FM 980
Huntsville, Tx 77343

50

NoTe:

Count II Paragraph 13

The original cover sheet has a Whited out Filed Date!
Perry will retain it for evidence of Fraud!

*Count II Paragraph B*

FILED   *OW*
GREGG COUNTY, TEXAS

JUN 15 2015

8:52 O'CLOCK ___ A ___ M
BARBARA DUNGAN DISTRICT CLERK
BY _____ DEPUTY

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: _Michael Dean Perry_

DATE OF BIRTH: _10-22-1959_

PLACE OF CONFINEMENT: _Eastham Unit_

TDCJ-CID NUMBER: _1838827_ _____ SID NUMBER: _____

(1)   This application concerns (check all that apply):

☑ a conviction            ☐ parole

☐ a sentence             ☐ mandatory supervision

☐ time credit            ☐ out-of-time appeal or petition for
                            discretionary review

(2)   What district court entered the judgment of the conviction you want relief from?
(Include the court number and county.)

_188th State District Court, Gregg County_

(3)   What was the case number in the trial court?

_42,139-A_

(4)   What was the name of the trial judge?

_David Brabham_

(5) Were you represented by counsel? If yes, provide the attorney's name:

Timothy Clifton Cone (State Bar No. 04660350)

(6) What was the date that the judgment was entered?

February 28th, 2013

(7) For what offense were you convicted and what was the sentence?

CT. I- Assault Family Violence with Prior Conviction    60 years

CT. II- Aggravated Assault With a Deadly Weapon    60 years 3G

(8) If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?

Attorney Fees $5,100.00

CT. I- Assault Family Violence With Prior Conviction 60 years $10,000.00 Fine Court Costs $324.00

Attorney Fees $5,100.00

CT II- Aggravated Assault With Deadly Weapon 60 years 3g $10,000.00 Fine Court Costs $324.00

(9) What was the plea you entered? (Check one.)

☐ guilty-open plea          ☐ guilty-plea bargain
☑ not guilty               ☐ *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:

_____

_____

(10) What kind of trial did you have?

☐ no jury          ☑ jury for guilt and punishment
                   ☐ jury for guilt, judge for punishment

2

Rev. 01/14/14

(11)   Did you testify at trial?  If yes, at what phase of the trial did you testify?

_No_

(12)   Did you appeal from the judgment of conviction?

☑ yes                              ☐ no

If you did appeal, answer the following questions:

(A)  What court of appeals did you appeal to?  _Sixth Court of Appeals_

(B)  What was the case number?  _No. 06-13-00051-CR_

(C)  Were you represented by counsel on appeal? If yes, provide the attorney's name:

_Lew Dunn (State Bar No. 06244600)_

(D)  What was the decision and the date of the decision?  _Affirm Jugment, as modified) August 15, 2014_

(13)   Did you file a petition for discretionary review in the Court of Criminal Appeals?

☑ yes                              ☐ no

If you did file a petition for discretionary review, answer the following questions:

(A)  What was the case number?  _PD-1209-14_

(B)  What was the decision and the date of the decision?  _Refused 1-14-2015_

(14)   Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

☐ yes                              ☑ no

If you answered yes, answer the following questions:

(A)  What was the Court of Criminal Appeals' writ number?  _____

3

Rev. 01/14/14

(B) What was the decision and the date of the decision? _____

(C) Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

_____

_____

_____

_____

(15) Do you currently have any petition or appeal pending in any other state or federal court?

☐ yes                    ☑ no

If you answered yes, please provide the name of the court and the case number:

_____

(16) If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes                    ☐ no          N/A

If you answered yes, answer the following questions:

(A) What date did you present the claim? _____

(B) Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

4

Rev. 01/14/14

_____

_____

_____

_____

_____

(17) Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

5

Rev: 01/14/14

**GROUND ONE:**

Illegal Search and Seizure/Police Misconduct/Prosecutorial Misconduct/Failure to admonish Applicant and Victim of Rights

**FACTS SUPPORTING GROUND ONE:**

There was an immediate detention of Applicant by the officer when she arrived at the scene! Applicants back pack was searched and a steak knife was allegedly found in the back pack and taken into evidence, and was potential evidence in the case. Appellant/Applicant contended that the back pack was illegally searched. The search of Applicants back pack was not disclosed to him until just two days before Trial. The Prosecutor and his Court Appointed Attorney never disclosed the illegal Search and Seizure previously. Nor did they disclose the illegal Search of his Home until the day of Trial, Blind Siding the Applicant with all of the erroneously obtained evidence at this Trial! The Pictures of the inside of his home, the pictures of Applicants niece; the actual knife that

6

Rev. 01/14/14

was dropped by The Applicant during the Altercation was Taken by Police and never disclosed to Applicant. Applicant was not read his rights and neither was the alleged victim or her Friends. There was no recorded statement as required by Law and none of the witnesses testified before the Grand Jury! The Police lacked probable cause and failed to obtain a search warrant valid or otherwise, never having produced a valid search warrant before, during, or after Trial. The Police never disclosed the fact that They searched Applicants Home and Found The actual knife used to pick the bedroom door lock and took it with Them! Police, and/or Prosecutors never produced a valid Consent To Search Affidavit signed by a resident of 5 B West Broadway Ct Longview, Tx 75604 Prosecutorial Misconduct and Ineffective Assistance of Counsel and Misconduct or a disability, or all three, For Failing To disclose to Applicant The illegal Search + Seizure

7

**GROUND TWO:**

Evidence was legally insufficient because the state failed to prove that the victim suffered any bodily injury as alleged in Count I + II

**FACTS SUPPORTING GROUND TWO:**

The victim testified under oath that she did not suffer any physical pain only emotional. She also testified that her uncle, the Applicant did not threaten her with a knife period. Applicant's Attorney moved for a directed verdict and he raised that very point. The state even abandoned Paragraph A of Count I because they couldn't prove any bodily injury. That effectively negates bodily injury in Count I. Stands to reason that if the state couldn't prove bodily injury as alleged in Count II, paragraph A and by the same evidence, legal evidence, the state failed to prove bodily injury in Count I. However, the state had no choice but to continue to claim bodily injury in Count I,

8

Rev. 01/14/14

AT Trial Several pictures of the victim were admitted as evidence without an objection from Applicants ineffective Trial Attorney. None of the pictures show any Type of injuries to the victim whatsoever' No scratches, No red marks, aside from Acne, No busted lip. The victim said it was a fever blister' But That doesn't Stop the STATE from introducing picture # 10 (unopposed) That the STATE claims Shows a scratch on the victims face, but They can't figure out where, cheek or jawline? And Nobody ever Saw The alleged # 10 picture, period' The only credible evidence came from the victim, not an outside observer and That The victim Testified That she suffered no physical pain' she also Testified under oath That if she Told the officer That she was hurt, it was only because she was Mad and upset, That she was only emotionally hurt, not physically. Applicant did Not knowingly intend to harm his niece The alleged victim or intentionally' Alanna Mckinney and Wilma Mckinney sworn Affidavits included as exhibits!

9

Rev. 01/14/14

**GROUND THREE:**

No Hearsay permitted / No notice of pending charges of victim /
No recorded statement / No informed consent to search Home

**FACTS SUPPORTING GROUND THREE:**

Applicant was immediately arrested and restrained of his liberty, in
his driveway. Was not mirandized and neither was his niece the victim.
Applicants was immediately searched and his back pack too. Then
taken away by Police to prevent them from objecting to the search
of his Home without a Warrant. Applicants niece did not give an informed
consent to search Applicants Home, in fact, she adamantly refused
to give a recorded statement, however, Police continued to badger
her and the other witnesses to give a statement to the point of
intimidation and fear of arrest. Applicants niece in fact had
pending felony charges and was under indictment. There was
no excited utterance. The victim was in fear of being arrested.
She had plenty of time for calm reflection before Police arrived

10

Rev. 01/14/14

The statement as written by Police Officer Nikkie Williams is considered hearsay and therefore not admissible! There was no recorded statement as required by law! Applicant was never given notice of the pending charges and indictment of the alleged victim; only receiving the copies thereof some two years later in his prison cell from Tanya Reed the prosecutor, yet another Brady violation! See also Wilma McKinney's Affidavit included herewith as an exhibit #3 Mrs. McKinney was prevented from testifying at trial during guilt and innocence, if called to testify, she would have confirmed that their niece was not hysterical, that she had no injuries, and that she did not witness an assault and did not give an informed consent to search to police, that Officer Nikkie Williams picked up the black handled kitchen knife Applicant dropped in the Home and took it with her! This action contaminated the crime scene! No chain of custody! Williams filed a false police report and not until November 5, 2015

11

**GROUND FOUR:**

Police Misconduct / Ineffective Assistance of Counsel / Illegal Search and Siezure / Prosecutorial Misconduct / Denial right of Confrontation

**FACTS SUPPORTING GROUND FOUR:**

Right after Applicant was restrained of his liberty. Police search his person, back pack, and home without a valid Search warrant or Probable Cause! An illegal STeak knife was allegedly found in his backpack, however, Prosecutors used a demonstrative knife at Trial erroneously. Trial Counsel failed to make a proper objection in its use as according to the Government preserving No error! There was No sound Trial Strategy at work, only incompetence! Just Two days before Trial Attorney Tim Cone came to Appellants jail Cell to show him a Lap Top Computer Video of the Police Searching his back pack! However, The Computer mysteriously Malfunctioned and Applicant never saw Police remove a knife from his back pack! only The word of Mr. Cone and Prosecutors (If they can be believed) After all, Not Mr. Cone or Prosecutors ever disclosed The illegal Search of Home or back pack, and The fact That Nikkie Williams retrieved The actual knife That Applicant dropped and Took it with her Contaminating The Crime

12

scene, breaking the chain of custody; And then accusing him of taking the knife and stowing it in his backpack, with absolutely No evidence to support That Naked allegation. There was No chain of custody affidavit filed in the case, period! The state never produced the actual knife! This comes dubious and erroneous deal with the Prosecutor made sure that the Applicant could not Cross-examine adverse witnesses - Police that searched his Home and backpack! Or even examine the alleged steak knife; the one the Police took from his Home! That was the whole point of the erroneous deal Tim Cone made with the Prosecutor! Tim Cone knew all along about the illegal search and seizure, he just didn't tell his client the Applicant! Tim Cone deliberately failed to file the Motion to Suppress evidence 10 days before trial, using subterfuge and lies to coerce Applicant into excepting his erroneous and disastrous deal with the Prosecutor whom committed Misconduct. See Wilma Mckinneys Affidavit. There was No Search Warrant or Consent and Police took the knife with them!

13

Rev. 01/14/14

**GROUND:** Five

The Evidence was legally and Factually insufficient to prove that the victim was placed in Fear of bodily injury, or that the knife used was a deadly weapon

**FACTS SUPPORTING GROUND:** Five

The state failed to prove that the knife, demonstrative or otherwise was a deadly weapon, even considering the fact that the demonstrative knife had absolutely no connection to the alleged crime. The only witness that said the Applicant pointed a knife at the victim was the black girl Oajuntae and she was caught lying on the witness stand several times. She also assaulted the Applicant at his own home previously a week before trial but Police didn't arrest her. She was criminally trespassing because she and Chase Neal were warned not to return, they were still not arrested. The victim and the other two witnesses testified under oath that Applicant never threatened the victim with a knife or point a knife in her direction. However, Taniza Reed inflamed the jury by thrusting the demonstrative knife at the victim in order to get a reaction from the jury. Ms. Reed repeatedly led the jury to believe that the victim was lying in order to protect

14

Rev. 01/14/14

her uncle the Applicant from going to prison. The witness. That left before Police arrived, who's identity was never disclosed, would have testified that it was the Victim that initiated contact with the Applicant by assaulting him and shoving him, that Applicant only used self defense to protect himself. The Victim has submitted a sworn Affidavit stating as much. Applicant actually submitted the Affidavit with a motion for New Trial. The actual knife Applicant used to pick the lock remained on the floor where he dropped it until Police picked it up and took it with them. Jennings was not included in the expert witness list and he was a defendant in Perrys Civil Rights Lawsuit, a conflict of interest. Jennings never testified that the actual knife or Demonstrative knife was a deadly weapon, considering they were using the wrong knife, denying Applicant a fair and Impartial Trial and submitting false testimony to the Jury. See Wilma McKinney's Sworn Affidavit, she was an eye witness too, and was prevented from testifying at Court Innocence Trial.

Rev. 01/14/14

Ground: 6 Ineffective Assistance of Counsel/Prosecutorial Misconduct/
Denial of Due Process/Malicious Prosecution/Erroneous Admitted Evidence/
Discovery Violations/Brady Violations/Witness Tampering.

Facts Supporting Ground: 6 The Jailhouse phone. (States Brief p. 12 and 19)
In a Telephone call with Perry while he was in jail, Alanna told him,
I'm going to tell them that you used the knife not to come at me but just
to try to get into the door (5 RR 128)(Page 12) Alanna's Testimony can be
discounted because she told Perry in a phone call recorded by the jail that
she was going to try to help him any way she could when she testified.
She also told him in the same phone call that she would testify that he
used the knife not to come at me but just to try to get into the (locked)
door (5 RR 160) "She testified she didn't want her uncle being incarcerated
for 25 to life. The Real Truth!

Appellant maintains that Alanna has been trying to tell the truth for 2½
years, even from the very beginning. Even trying to dismiss the erroneous
charges, of which will be addressed further and in more detail in the next
grounds. Prosecutorial Misconducted and Malicious Prosecution has prevented
the truth from being told from the start and continued on Appeal. Whereas,
Appellant Filed a grievance with the state bar of Texas on Tanya Reed, Using of
all things, excerpts from his Appellates Brief, the ground of Prosecutorial Mis-
conduct. With no additional information. (Emphasis added) Certainly Not the
issues concerning the Jailhouse phone call because it was never admitted into
evidence. The Appellant was never provided a Transcript of that Jailhouse
phone call preventing Appellant and his Appellate Attorney from raising error
on Appeal, direct or habeas Corpus. Notwithstanding the fact that there is
No recording or Transcript in the record, That doesn't stop States Counsel
on Appeal from using it in the states brief p. 12 and p. 19, supra. Whereas,
(Grievance #201403874)(Exhibit #32A)

1 of 2

Tanya Reed was ordered by the State Bar to respond to the complaint with an Affidavit. As according to Ms. Reeds Affidavit, she states that Zan. Brown only uses an excerpt from that phone call. Additionally, Ms. Brown only using portions of that phone call in an effort to prove culpability on the part of Perry. Completely changing the colloquy of our conversation, completely omitting Appellants side of the conversation and portions of Alannas conversation. There are certain precepts that have to be adhered to before admissibility. (1) a showing that the recording device was capable of taking the testimony (2) a showing that the operator of the device was competent (3) establishment of the authenticity and correctness of the recording (4) a showing that changes, additions, or deletions have not been made (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntary, and was made without any kind of inducement. And again, Tanya Reed admits tacitly that she committed even more misconduct, even though she ingeniously pins the blame all on Zan Colson Brown. Tanya Reeds Affidavit is replete with false statements and assertions and not just about the jailhouse phone call, but her use of the demonstrative knife as well. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is effected. It was Tim Cones job to object to the jailhouse phone call, not Appellants remember, No Hybrid representation. Furthermore, there was an Emergency Protective Order filed in the case, No. 172-EPO-12 of which Appellant signed on 10/17/2012 In effect for 61 days. It is not clear of the exact date of the jailhouse phone call because Appellant was never provided a copy. What is clear from Tanya Reeds Affidavit is that she adamantly states to wit "I did not violate any emergency protective order. "No" emergency protective order has ever been issued/ entered prohibiting me from doing anything. (Emphasis Supplied) I did not encourage anyone to violate any protective order. (Exhibit #32)(EPO Exhibit #3) (Complaint Letter Exhibit #31)

Ground: 7  Police Misconduct / Prosecutorial Misconduct / Illegal
Search and Seizure / No Exigent Circumstances Under Emergency Doctrine /
Ineffective Assistance of Counsel / Inadmissible Evidence

Facts Supporting Ground: 7  The reason Tim Cone and Tanya Reed did Not
Want a Pre-Trial hearing to Suppress illegally obtained evidence is because
at the Suppression hearing, Appellant would have shown that there was no
exigent circumstances under the emergency doctrine to justify the
Search of Appellants person, personal property or his Home. Police had Not
established Probable cause and they had No Search Warrant, and or arrest
Warrant For Appellant. No one was in need of emergency help, No one even
needed First aid, Period. Police Officer, Nikkie Williams immediately arrested
Appellant who was just Walking down his driveway. The alleged victim did Not
immediately alert Police when they arrived that Appellant assaulted her. Only
after Appellant was already restrained of his liberty did the black girl
make the False accusation that Appellant assaulted his niece. Appellant
avers That at an Examining Trial or Suppression hearing, if it got that
Far, he would have learned that Police not only Searched his back pack
without a Warrant, but his Home as Well. That the Police picked up "THE
KNIFE" Appellant dropped in his Home and took it with Them, never dis-
closing This Fact before, during or after Trial. Appellant may have also
learned (Emphasis on the May part) That Police took all those pictures of
The victim and the inside of Appellants Home. Appellant maintains and
avers that he was immediately arrested and placed in the back seat of the
Police car, No longer a Threat. Police allegedly Found "THE KNIFE" in the
Appellants back pack and removed a box cutter and innocuous pocket Knife
from Appellants pockets, effectively, eliminating any perceived exigent
circumstances, negating the Facts stated in Nikkie Williams Probable

1 of 2

cause Affidavit that wasn't even written or filed until the following day. Just like the Police Report, that was Not printed until 21 days later on November, 5, 2012. Furthermore, since the alleged Victim and all of her friends knew that Appellant had dropped "THE KNIFE" in the Home, that also removed any Threat. Tanya Reed told all the witnesses right before Trial that Police found "THE KNIFE" in Appellant's back pack, showing the witnesses the "ersatz" knife right before Trial. Convincing the witnesses and the jury that Appellant tried to hide the weapon used in the alleged assault in his back pack in order to justify his immediate arrest without a warrant and to prove Culpability. Appellant would have also shown that the alleged Victim was Not Hysterical and that She had No injuries. That Police used intimidation and coercive environment to compel the alleged Victim to give a statement, take all those pictures, and to enter Appellant's Home without Consent or a valid Search Warrant. Once the Police determined that nobody's injured and there's Nothing in danger at that point, the Police should cease and disist with their illegal Search and Seizure. The Police and Prosecutors used Subterfuge in order to justify violating Appellant's Due Process Rights and Constitutional Rights, exponentially. Considering the aforesaid, its No Wonder that the Courts, Appellant's Court appointed Attorney, and the Prosecutor didn't want an Examining Trial, and or a Suppression Hearing. They all knew about "THE KNIFE" and long before Trial. Everyone did their best to Cover up the misconduct. Even Lew Dunn knew about the illegal Search of Appellant's Home and the Police taking the "Real KNIFE" with them, See Appellant's Reply Brief pages 1 Through 3. How else would Appellate Counsel know this? The Eye Witness, Wilma McKinney knew it. So did the witness that left before Police arrived. That's another reason They didn't want a Private Investigator. Fruit of the Poisonous Tree.

Ground: 8  Ineffective Assistance of Counsel/Police Misconduct/ Illegal Search and Seizure/ Prosecutorial Misconduct/ Denial of Compulsory Process for obtaining witnesses in his favor/ Denial of Right of Confrontation of adverse witnesses/ Failure to Hire Private Investigator

Facts Supporting Ground: 8

Unbeknownst to Appellant, his 81 year old mother, Wilma McKinney, was prevented from testifying at Guilt/Innocence phase of Trial, only called to testify at punishment phase! Nikkie Williams only refers to her at Trial as the old woman, never mentioning her name! Appellant had No idea That this Mother was going to testify! Tim Cone Told Wilma McKinney not to engage the jury! Indeed! If Wilma McKinney had been called to Testify at Guilt/Innocence, and asked the proper questions, (something Tim Cone was incapable of doing-failing to make the proper objections-) Mrs. McKinney would have testified That Police never provided a valid search warrant to Search her home, the same home where the Appellant resides! Police did Not advise her or her Granddaughter, Alanna, the alleged Victim, that they were not required to permit the search. Whereas, to be valid, a Consent to Search must be positive and unequivocal and must not be coerced, by explicit or implicit means, by implied threat or Covert force! Consent not established by showing no more than acquiescence to a claim of lawful authority. At Trial, Wilma McKinney would have Testified That Police Officer, Nikkie Williams, and another unnamed Police officer, searched the purported victim's bedroom, where the knife was dropped during the altercation, picked up "THE KNIFE" and took it with them! Wilma McKinney would have testified That the Police took all those pictures of the bedroom door and her Granddaughter! That this all occurred on October 16th, 2012 the day after Appellants unlawful arrest. Plenty of Time to obtain a valid Search Warrant- No exigent Circumstances! Mrs. McKinney Would

have also testified that her Granddaughter did not have any injuries, That she was not shaking, crying, or hysterical! In fact, she was of sound mind! Also, That she did not witness an assault! See Wilma McKinney's Sworn and Notarized Affidavit Exhibit #3. She would have further testified That she was the one that told her son to make the two black people leave her home, That they secreted themselves in Alanna's room by again climbing in the bedroom window that Appellant previously nailed shut - to prevent these same druggies from sneaking in her home! Mrs. McKinney would have also testified that The two black people, Chase Neal and Oajuntae Johnson previously assaulted her son for trying to make them leave They were in fact, criminally tres-passing! That there was another witness there that left before Police arrived and he would have testified that Appellant did not assault his niece, Nor was she hysterical, Nor did Appellant threaten his niece with a knife, its use was innocuous, used only to pick the lock! He would have testified that it was Alanna that initiated contact with Appellant, that he only defended himself! Court Appointed Attorney, Tim Cone failed to hire a Private Investigator in order to seek out and interview witnesses! And secure their testimony! He failed to Subpoena the other Police Officers to testify at trial; for that matter, so did the Prosecutor, Tanya Reed! Appellant maintains and avers that he has a fundamental right to obtain witnesses in his favor - compulsory process! Also, to confront the witnesses against him - confrontation - to impeach their testimony! Face his accusors! Appellant timely filed pro se Motions for Examining Trial and for a Private Investigator! Appellant was not represented by counsel at the Time and tried to represent himself! There was no hybred representation at the time of the request for an Examining Trial! Appellant even filed copies of said Motions with a Writ of Mandamus in the Texas Court of Criminal Appeals!

20 of 2

Ground Nine: 9  Police Misconduct!
Illegal Search and Seizure/Prosecutorial Misconduct/Demonstrative Knife-Legally insufficient Evidence/Ineffective Assistance of Counsel/
Failed to Preserve Error at Trial

Facts Supporting ground nine: 9
Several issues in the appeal concern the use of a demonstrative knife by the state. The record seems to show an assumption that the knife that was the subject of an illegal search of Applicants backpack was the knife used in the incident. The witnesses identify the demonstrative knife as "similar" to the one purportedly held by Applicant. All of their testimony is, however, tainted by the fact that the State, Tanya Reed, showed each of them the "ersatz" knife, before trial, and asked them if it was similar to the knife used during the altercation. Isn't that called "improper sujestion"? If it were a line-up, the identification testimony would be thrown out. See, the prosecutors acknowledgement of suggestion: But I have shown them this and asked them if it looked similar to-similar in size, shape, and color to the one that they saw Mr. Perry had that particular night. No offer of several different knives and asking them to see which one might be similar. None of that. Objective? Scientific? Rational? Seeking the Truth? Lacking in all of that. Mrs. Reed even violated the agreement not to show the knife to the witnesses. A reasonable inference from this is that "THE KNIFE" was actually seized at the scene by investigators, but that its characteristics and proportions (butter knife) made it a less-than deadly looking instrument. Was the states case made easier with the knife found in the backpack? And, consequently, with the ersatz demonstrative knife? ("Subterfuge") All of this undermines the states efforts (1) to say that the evidence was legally sufficient on the assaultive conduct and deadly weapon. (2) To say that there was no error in using the demonstrative

P.22 Exhibit #13 Motion to Suppress    P.10£2 Exhibit # Barbara Mckinney/Affidavit

Knife, (3) To claim that the charge was not deficient, (4) That there was no ineffective assistance of counsel, and (5) To conclude that the prosecutor did not commit this conduct. In each instance there is a valid, underlying uncertainty that the demonstrative knife was a replica of "THE KNIFE". Consequently, the state's insistence of the verity of that resemblance and replication skates on very thin ice, indeed. In fact, the ice is so thin and insubstantial that the weight of the problem is sufficient to crack the ice and send it all down into icy confusion - lead to insufficient evidence, in fact, no evidence, failure of the demonstrative knife to actually correspond to "THE KNIFE". Consequently, the entire trial is tainted by the lack of "THE REAL KNIFE".

Notwithstanding the facts as outlined in grounds 1. through 4. As previously alleged by Applicant there was in fact an eye witness that witnessed police pick-up the knife Applicant dropped in the house and take it with them! It takes no stretch of the imagination to believe that a competent jury would believe the word of an elderly Grandmother, with no criminal history, over the word of Police who have a history of committing this conduct - Civil Rights violations! Its no wonder the state and Applicants court appointed attorney didn't want to disclose the illegal Search and Seizure and the fact that Police found THE KNIFE in Applicants Home! They all used Subterfuge to cover this up. That's also why they only had the Grandmother, Wilma McKinney testify at the punishment stage and not during guilt/innocence! They were scared to death that she would disclose the truth. The prosecutor and Perry's court appointed attorney covered up the facts about THE KNIFE from the very beginning! Perry was blind sided with all of this at trial! See; Wilma McKinney's Affidavit Exhibit # 3

P23                    2062

Ground: 10 Ineffective Assistance of Counsel/Defective Indictment/
Prosecutorial Misconduct/Abuse of Discretion/Double Jeopardy/
Legally and Factually Insufficient Evidence/Doctrine of Carving
Facts Supporting Ground: 10 Not only did Appellants dubious Court appo-
inted Attorney fail to timely request and obtain a Pre-Trial hearing on a
Motion to Suppress Evidence, having excepted the dubious word of the Pro-
secutor to suppress evidence, only to renege on that deal at the beginn-
ing of Trial, but both Court appointed attorneys, Michael B. Lewis and Tim Cone,
failed to object to the erroneous-defective indictment that on its face alleged
a crime or crimes in Two Counts with paragraphs that violated the Double
Jeopardy Clause! Furthermore, the State amended the indictment during Trial
on the Merits without a Continuance or objection from Counsel! Whereas,
after notice to the defendant, a matter of Form or Substance in an
indictment or information maybe amended at any time before the date
the Trial on the Merits commences. On the request of the defendant, the
Court shall allow the defendant not less than 10 days, or a shorter period
if requested by the defendant to respond to the amended indictment or
information. A matter of Form or Substance in an idictment may also be
amended after the Trial on the Merits commences if the defendant does
not object. An indictment or information May not be amended over the
defendants objection. (Emphasis Supplied) as to Form or Substance! If
the amended indictment or information charges the defendant with
additional or different offense or if the Substantial rights of the
defendant are prejudiced! All amendments of an indictment or information
shall be made with Leave of the Court. Appellant avers that the State
failed to prove that Appellant caused bodily injury to A. Mckinney by
hitting her, A. Mckinney, with his hand as alleged in Count II paragraph A.,
(Exhibit #13 Motion to Suppress) 1 of 2 (Appellants Indictment Exhibit #10)

So The State abandoned it during Trial, but not The other allegations in Count II, paragraph B, or The bodily injury alleged in Count I. The State only abandoned The bodily injury in Count II, paragraph A after Tim Cone moved for a Directed Verdict of Acquittal, citing 'No bodily Injury' However, The State, after being alerted to The defect, and to avoid Double Jeopardy; Failed to also abandon bodily injury in Count I, Whereas, in order To elevate assault Family Violence to a 3rd degree Felony you have to prove bodily injury! Then to enhance That to 2 to 20, using a Subsequent prior Conviction. Which is also a violation, Two enhancements using The same charge in one Trial! The gravamen is still The Misdemeanor assault on both Counts Constituting Double Jeopardy! Since the Appellants dubious Court Appointed Attorney failed to object to the amended indictment and lack of Notice, he failed to preserve error! There was No Sound Trial Stradegy at work here! This fact is made even more clear by The fact That Appellate Counsel raised Double Jeopardy violation in his Motion for a New Trial; but failed to alleged ineffective Counsel! (See Courts Opinion!.) Both Count I and Count II, A allege The very same Conduct, Intentionally, knowingly, or recklessly cause bodily injury to A. Mckinney by hitting A. Mckinney with his hand! Appellant avers That it stands to reason That Since The State failed to prove bodily injury as alleged in Count II, paragraph A, Then by The very same evidence; against The same person, The State also failed to prove bodily injury in Count I as well! The evidence was Legally and Factually insufficient to Sustain The Conviction on both Counts! There was No Sound Trial Stradegy or Appeal Stradegy at Work in regards to ineffective Assistance of Counsel! The Court abused its discretion by allowing The State to amend The indictment after The Trial on The merits began! Oh, That's right, The Court also amended The Courts charge in The middle of Trial as well! Heavy as an engine block, sharp as a Razor! See Exhibit #56 Doctrine of Carving!

Ground: 11    Ineffective Assistance of Counsel / Prosecutorial Misconduct / Abuse of Discretion / Ineffective Assistance of Counsel on Appeal / Denial of Fair and Impartial Trial / Denial of Right of Appeal

Facts/Grounds Supporting Ground: 11    A continuance or postponement may be granted on a motion of the State or Defendant after the Trial has begun when it is made to appear to the satisfaction of the Court that by some unexpected occurance since the Trial begun, which no reasonable diligence could have anticipated, the defendant is so taken by surprise that a Fair and Impartial Trial cannot be had! (The breach in Agreement of Demonstrative Knife) Whereas, There was reversible error because of Prosecutorial Misconduct when Counsel for the State, Tanya Reed, without the required (5) Five day Notice - (In limine) To Appellant and after jury selection and the parties were ready to begin evidence, repudiated the agreement of the parties to suppress any evidence of a knife and showing the knife to the witnesses before Trial! Appellant, by his Court appointed dubious Counsel, had reached what he believed to be an agreement about the knife and recited it to the Court. Then "Startling" News comes from Asst. District Attorney Reed! Kings X, There is an agreement - but Not really! Even the Cold record does not mask the surprise of Appellants Counsel, Struggling to comprehend this unexpected reversal or just good acting! Without giving any rationale of why she thought the demonstrative use of a knife would now be acceptable (in defiance of established law on the use of an object for demonstrative purposes) Ms. Reed proceeded to represent to the Trial Court that this was acceptable; in one blow she (a) blatantly undid the agreement with defense counsel and his client on important discovery and evidence and (b) was less than candid with the Trial Court in her reason for doing so! Both acts are Prosecutorial Misconduct and grounds for

reversal of the conviction. Appellant had a right to a Fair Trial free from prosecutorial bad faith and ineffective assistance of counsel, even on Appeal. Trial counsel failed to file a motion for a continuance so that he could frame a defense, even failing to make the proper objections. Appellant contends that the actions of the prosecutor in the case at bar contributed to denial of a Fair Trial in several ways. First, she unilaterally and without any notice whatsoever, to counsel for Appellant, reversed the states agreement about suppression of the knife. Certainly, the role of the Trial court here would necessarily be an extension of the procedure for the resolution of a pre-Trial motion to suppress. Once the parties made an agreement concerning evidence, that agreement stands in place of an order from such a hearing and would not permit unilateral amendment without due notice. If there was going to be a change in that agreement, then counsel for Appellant was entitled to reasonable notice, (5) days. So that he could frame a defense, to permit the state to do so was an abuse of Discretion by the Trial court. Standard of review is abuse of discretion. Trial court abused its discretion permitting the use of a demo knife and permitting the state to go forward without proper notice. States counsel violated the Disciplinary Rules in that she abrogated her agreement about the motion to suppress. She compounded her troubles by not being forthcoming with the Trial court about controlling precedent. She also failed to disclose controlling authority that was directly adverse to her position. The basis for Ms. Reeds use of the demonstrative knife was frivolous, and in light of precedent, there was no basis in law for her to go forward with that claim. Appellants counsel on Appeal failed to make the proper arguments in Appellates brief, Whereas, the grounds on appeal do not comport with the objections made at Trial. Preventing the courts Review.

Ground: 12    Ineffective Assistance of Counsel at Trial and on First Appeal / Prosecutorial Misconduct / Error was preserved / Police Misconduct / Illegal Search and Seizure / Abuse of Discretion

Facts Supporting Ground: 12  The State and the Court of Appeals contend that Appellant, Perry, by and through his Court appointed Trial Counsel failed to preserve error by not making the proper objections at Trial on, inter alia, the issue of the use of the "ersatz" Knife and the breach of agreement regarding the "ersatz" knife and the alleged knife seized from the backpack. The Court of Appeals even faults Appellate Counsel for failing to make the proper objections on Appeal. This, therefore, concedes the point of ineffectiveness of Counsel at Trial and on Appeal. It also Tacitly concedes the point of prosecutorial Misconduct. However, the State, and the Court of Appeals, Mischaracterizes what was occurring in the Trial Court during those moments (VRR 9-11); Appellant, by his dubious Counsel, had reached an agreement with the State about the Knife allegedly found in the backpack. Of which Perry has yet to be provided with a copy of this "so called agreement" even after 2½ years of filing for Discovery. No witness statements, No Amended copies of indictment or Courts charge, etc, etc. Whereas, the knife would not be introduced into evidence at Trial and there would be No mention of it Period. That's what Tim Cone told Perry. Both the State and Tim Cone say they Knew that the knife, or rather, a Knife was available—That it presumably, existed somewhere in the property room of the Police Department (Nikkie Williams locker) or in the exhibit room with the District Attorney, or the States investigators home. (However, the alleged knife was never shown to Appellant Perry and presumably his Trial Counsel) Why else would Appellant have objected to its admissibility? All of those so

1 of 2

Called and supposed "failed objections" were subsumed into the motion to suppress, a motion whose points had been agreed to in the parties' supposed agreement, now breached by the state! Trial Counsel never told Appellant that they agreed to still be able to discuss the knife! Appellant was blindsided with all of this at his erroneous Trial, even the illegal search of his home! Of course, if all of the aforesaid is not so, then the state has seconded the claim of ineffective counsel and confessed error on the point! The deciding factor at that time was that the purported original knife - That is, the one allegedly taken by an unnamed Police Officer from the Appellant's backpack - was certainly not missing or lost, it had been agreed as Inadmissible, Period! The egregious problem with the "ersatz" knife or Real knife, was that the state, Reed, and Trial Counsel, Cone had an agreement and the state, Reed, unilaterally and ingeniously breached the agreement, knowing all along that Police picked up THE REAL knife in Perry's home and took it with them! The fourth Amendment was very much in play! Appellant Perry never waived his rights to suppress the knife, or if the state and Court of Appeals now contend that somehow that happened and Perry's dubious Trial Attorney failed to make that this Trial objection, then the ineffective assistance of Counsel claim has just been bolstered by the Trial Court and Court of Appeals! The state would have been lost without its stage prop! Reed constantly used the "ersatz" knife in the evidence phase and during argument, even making thrusting motions towards the victim in front of the jury! How could it not be harmful? The state and the Court of Appeals are wrong! There was Police Misconduct, Prosecutorial Misconduct and Appellant was denied effective assistance of Counsel at Trial and on his first Appeal as of Right! The evidence at Trial should have been in all suppressed under the Exclusionary Rule as fruits of the Poisonous Tree!

2062

Ground: 13 Illegal Search and Seizure/Arrest Without a Warrant or Probable Cause/No Notification of Charges/Denial of Due Process/Denial of Counsel/Wrongful Conviction/Abuse of Discretion/Prosecutorial Misconduct/Brady Violations

Facts Supporting Ground: 13 Appellant Perry was arrested without a warrant and without probable cause on October 15th, 2012 His person, personal property, and Home were searched and evidence seized without a valid Search warrant and probable cause and used against him at a subsequent trial, and even without a Trial! Whereas, according to Jail records- Classification Form, obtained by and through Civil discovery, and an Request/Grievance Form, exhibits #1 and #2, Appellant obtained through Jailers, Appellant was arrested again on October, 29th, 2012 and charged with a Misdemeanor, Possession of Drug Paraphernalia, bail was set a $500 00 (Appellant never posted bail) at some point after his subsequent arrest, Appellant was tried and convicted of said offense and granted Time served with 13 days credit, All without ever having been appointed an Attorney or having made a court appearance on this specific case. See: Magistrates Warning exhibit #4 A (No Attorney! No P.O.O.P.) You could search the court records in vain to find Perrys signature of where he entered a plea of guilty on this charge. Signed for 13 days credit for Time served! Why on earth would I? Notwithstanding, The illegal Search and Seizure! Perry didn't sign up or plead guilty to any of the other erroneous charges Not even the alleged interfering with an emergency phone call of which is listed as one of the erroneous charges- unless of Course Appellant, finds out later That he was Tried and Convicted of that too in absentia! This is just another example of business as usual at The Gregg County Court House! There was in fact a Prisoners Civil Rights Suit pending against some of the witnesses who testified

at Appellants Trial to wit: Perry v. Cerliano ETAL civil Action No. 6:12 cv 829 U.S. District Court, Eastern District of Texas at Tyler. Expert Witnesses William Jennings and LVN Alexander, were also defendants in the Civil Rights Suit. Again, no where does it list the Possession of Drug Paraphernalia charge, Not on the Magistrates Warning; or the Police Report; or the Probable Cause Affidavit, No Where! (Emphasis Added) According to the record, Appellant was Not Mirandized until after he was booked in. That he refused to waive his rights and answer questions without an Attorney. Police Officer Nikkie Williams; I spoke to a witness, who advised that she attempted to dial 911. She advised that the Suspect knew she was calling for help and took the phone away from her. However, in complete contrast to what the same Police Officer said that the same witness told her - which was stated at Trial and in the States Brief, was that Perry punched her in the face, but it didn't hurt - didn't cause any pain. (Emphasis Supplied) Appellant was never charged with assault on Oajuntae Johnson and its not listed as one of the charges either! However, Nikkie Williams also states; I spoke to the Suspect, who was intoxicated. He advised that nothing happened. Appellant avers that he was never charged with Public Intoxication either; Never stopped them before! In fact, Perry has even been charged with Criminal Trespass at his own Home before, the charges were later dropped, but thats beside the point. The conviction, erroneous as it was, for Possession of Drug Paraphernalia was never mentioned at Trial, Nor in the States brief! But Appellant being intoxicated and doing Cocaine sure the hell were, oh, and <u>Pills of Some kind!</u> And without an iota of evidence to back it up! Where did Super Cop, Nikkie Williams find the Drug Paraphernalia? In Perrys back pack? Or Home? Where are the Pills?

See Partial list of Defendants in Civil Rights Suit exhibit # 25 Retaliation

Ground: 14 Ineffective Assistance of Counsel / Prosecutorial Misconduct /
Abuse of Discretion / Denial of Fair and Impartial Trial / Denial of Due Process /
Defective Courts Charge /
Facts Supporting Ground: 14.

The Prosecutors and the Court amended the Indictment and Courts charge, and during the middle of Trial on the merits without objection from appointed counsel and without a continuance. The State allegedly abandoned paragraph A of Count II, However, it is not clear if the State dismissed the entire paragraph or only the bodily injury portion of the paragraph, Whereas, The paragraph States to wit: Defendant did then and there intentionally, knowingly, or recklessly cause bodily injury to A. Mckinney by hitting A. Mckinney with his hand, and the defendant did then and there use or exhibit a deadly weapon to wit: a knife, during the commission of said assault, The Court amended the courts charge to reflect the amended indictment, presumably removing the entire paragraph, again, Appellant does not have a copy of the alleged amended courts charge, even after 2½ years. Effectively preventing Appellant from raising points of error in Sufficiency of the amended courts charge, even on the Writ of habeas Corpus. Proper procedure to amend the courts charge to the jury is that the Judge of said court grant a continuance of its on volition in order that defendant has time to frame a defense. Failure of the court to grant a continuance violated the Substantial rights of the defendant and denied him a fair and Impartial Trial. Appellants dubious court appointed attorney failed to object to the amended courts charge or the lack of notice. There was no sound Trial Strategy at work here. However, Mr. Cone did make a motion for a Directed Verdict of Acquittal, citing no bodily injury as alleged on both counts on the indictment and as reflected in the courts charge to the jury. And before the Amendments. Whereas,

1:06:2

The Indictment and Courts charge did in fact violate defendants rights against double jeopardy, even after the erroneous amendments! By alleging the assaultive conduct to the very same victim and during the same Time frame! And on both Counts. Once the State and the Court were alerted to the double jeopardy error and the lack of injury or a deadly weapon and this was made a part of the Trial record, they amended the indictment and Courts charge during the middle of Trial without a Continuance or an objection by Trial Counsel, Appellate Counsel also failed to make the proper objections on Appeal, as reflected in the Court of Appeals opinion! However, abandoning bodily injury in Count II paragraph A does not defeat double jeopardy! The underlying assault is the gravamen of the double jeopardy violation, that was to have been committed to the same victim and at the same time! (What the Court could have charged, does not factor into a reviewing Courts determination, and cannot serve as a basis of a double jeopardy violation — Court of Appeals Opinion! Indeed!!) Amending the Indictment and the Courts charge in the middle of Trial violated Appellants substantial due process rights, exponentially! Failure of Court appointed Trial Attorney to file a Motion to Quash the defective indictment before Trial on Double Jeopardy Grounds, and or insufficiency grounds was not based on sound Trial strategy! Had the defendants Court Appointed Attorney called attention to the governments defective indictment, the State and the Court would have only been able to charge the defendant with a Class A Misdemeanor with no enhancement, furthermore, the Court would have lacked jurisdiction! The subsequent imposition of Two 60 year Sentences for the very same offense is prejudice, pure and simple! A reasonable probability that, but for counsels unprofessional errors, the results of the proceeding would have been different! reasonable probability is a probability sufficient to undermine confidence in the outcome! But a defendant need not show that counsels deficient conduct more likely than not altered the outcome in the case! Appellate Counsel failed to make proper objections!

2 of 2

Ground: 15 Ineffective Assistance of Counsel / Defective Indictment / Courts Charge Error / Prosecutorial Misconduct / Double Jeopardy / Abuse of Discretion / Appeals Court Error / Doctrine of Carving

Facts Supporting Ground: 15    Although a defendant has the burden to preserve, in some fashion, a double jeopardy objection at or before the time the charge is submitted to the jury, a double jeopardy claim may be raised for the first time on Appeal, or even the first time on collateral attack when (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record, and (2) enforcement of usual rules of procedural default serves no legitimate state interest. To be sure, counsel was ineffective for not moving to quash Indictment on Double Jeopardy grounds, the same could be said for the Courts charge. Notwithstanding, the fact that the state amended the indictment in the middle of Trial without objection from counsel and the court amended the Courts Charge also without objection from counsel, and in the middle of Trial on the merits without granting a continuance however, the Double Jeopardy error was not cured. However, Appellate Counsel raised Double Jeopardy in Motion for New Trial. Note: Petitioner, a criminal defendant, sought post conviction writ of habeas corpus and contended that his right against double jeopardy had been violated when the District Court convicted him of aggravated rape, and then subsequently convicted him of aggravated robbery, when both prosecutions arose out of the same continuous assaultive Transaction involving a Single victim. Outcome: The Court reversed the second conviction for aggravated robbery and set it aside through dismissal where the petitioners, a criminal defendant, rights against double jeopardy were violated by the entering of Two convictions arising out of one continuous Transaction against a Single victim. The inhibition against Double

See Exhibit #56 Doctrine of Carving  1 of 2 (Exhibit List p. 20 of 9 No. 56)

Jeopardy is determined by the facts and circumstances and not by the name of the offense. When one has been convicted, the state cannot, upon the same evidence, again convict him of the same act. Under the doctrine of carving, if a continuous assault is allegedly made on the same person in the same transaction, the state can carve but one conviction out of the event. There are three types of double jeopardy claims; Appellant's arises under the third, multiple prosecutions for the same offense. The last can arise in two contexts: First there is the lesser-included context, where one is punished twice - once for the basic conduct and a second time for that same conduct plus more (assault of x and aggravated assault of x); second is where the same conduct is punished under two distinct statutes when the legislature intended the conduct to be punished just once. In the case at bar in order to prove aggravated assault, the state necessarily, by statute, had to prove simple assault and then prove the aggravating factor or conduct, namely, the use or exhibition of a deadly weapon. The simple assault, however, was already what the state alleged and brought to the jury under Count I of the indictment - and upon which the jury gave its verdict of guilty. Yet the state then relied upon those same elements to prove its case of aggravated assault. In an effort to defeat a double jeopardy claim, the state, in the middle of trial, amended the indictment by abandoning Count II, paragraph A, bodily injury, but not the bodily injury alleged in Count I

The Court of Appeals erroneously denies the double jeopardy claim for this very reason, citing that the gravamen of the offense was the bodily injury. The case at bar contains the same elements; simple assault upon a person, and then the aggravating factor. There need not be bodily injury to prove aggravated assault, just the use of a deadly weapon. Consequently, the case at bar shows double jeopardy by multiple prosecution for the same offense. For these reasons, the case should be reversed and remanded for new trial or acquittal

Ground Sixteen; The Evidence Was Legally Insufficient to support the finding of a Deadly Weapon / No Chain of Custody / When There is a Factual dispute how evidence was obtained Trial Court Statutorily required to give Jury charge instruction. / Police Misconduct / Prosecutorial Misconduct

Facts Supporting ground Sixteen[16]: The chain of custody to authenticate an exhibit is conclusively established if an officer testifies he or she seized the item of physical evidence, tagged it, placed an identifying mark on it, placed it in evidence storage, and retrieved the item for Trial. Appellant Perry maintains that Police Not only searched his person and personal property (back pack) without a valid Search Warrant, but Police also illegally searched his Home. There were No exigent Circumstances justifying a Search without first obtaining a valid Search warrant. While searching Appellants Home, Police retrieved the actual Knife used in the alleged assault and took it with Them, never having disclosed This fact. Appellant will provide a Sworn Notarized Affidavit from a witness in support of This Contention. Nowhere at Trial was there ever any evidence that the purported Knife actually used in the states accusation was, in fact, The knife pulled from Appellants back pack. This is called a Chain of Custody issue, and nowhere did the State Make That case; where the crucial determination is, if the (object) has been properly identified. There was No evidence presented That the Appellant picked up THE KNIFE and stowed it in his back pack. The Knife was dropped during the altercation with Alanna Mckinney. So how is it that the State is able to conclusively to Trace THE KNIFE to The one in Appellants back pack? It cannot and has not. A reasonable inference from This is That THE KNIFE was actually Seized at the Scene by investigators; but That its characteristics and proportions Made it a less Than deadly looking instrument.
(See Wilma Mckinneys Affidavit #3 Exhibit)

P. 35                              P. 1 of 2

Was the State's case made easier with the knife found in the backpack And, consequently, with the "ersatz" demonstrative knife? All This undermines the State's case and efforts (1) to say that the evidence was legally sufficient on the assaultive conduct and deadly weapon (2) to say that there was no error in using the demonstrative knife, (3) to claim that the charge was not deficient, (4) that there was no ineffective assistance of counsel, and (5) to conclude that the prosecutor did not commit misconduct. In each instance there is a valid, underlying uncertainty that the demonstrative knife was a replica of THE KNIFE! Consequently, the State's insistence of the verity of that resemblance and replication is completely without merit. In Fact, as mentioned aforesaid, Appellant has a witness that was prevented from, and not subpoenaed to testify at the guilt and innocence stage of trial, only at the punishment phase! she was told by Counsel not to engage the Jury, indeed! If said witness would have known about the demonstrative knife of the wrong knife at trial, said witness would have volunteered that Police in fact picked up THE KNIFE in her house and took said knife with them! This exculpatory and impeachment evidence (Brady Material) leads to no evidence! Failure of the Demonstrative knife to actually correspond to THE KNIFE! Consequently, the entire trial is tainted by the lack of the REAL KNIFE! Additionally, since the proof on the deadly weapon is insufficient and the result of an illegal Search and Seizure, and Police misconduct, not to mention Prosecutorial misconduct, and of course, ineffective assistance of Counsel! Appellant should in all things be acquitted! (See William McKinney Affidavit Exhibit #3) Deliberately withholding evidence of illegal Search and Seizure precludes denial of review on Habeas Corpus under Contemperaneous objection rule; Ineffective Assistance of Counsel as well! (Terry stop) Prosecutorial misconduct too!

P. 36

Terry V. Ohio, 392 U.S. 1, 88 Sct. 1868 (1968)

Ground: 17   Ineffective Assistance of Counsell Abuse of Discretion / Courts Charge Error / Denial of Fair Trial / Denial of Due Process

Facts Supporting Ground: 17   Appellant did everything necessary to preserve error; With regards to inclusion of the lesser-included offense in the Courts Charge to the jury. Counsel for Appellant requested charges on lesser-included offenses of simple assault and assault by contact, but the requests were overruled. Aggravated assault builds upon simple assault, and include it within the definition of the more serious offense. For there to be bodily injury as alleged by the state, but never proven (corpus delicti) there must have been a fortiori some sort of unwanted contact physical in nature. The law is very clear on the inclusion of instructions on lesser-included offenses. When accused is tried and requests inclusion of charge on assault, trial court is required to apply a two part test: (1) it determines whether assault constitutes a lesser-included offense, as defined by statute, and (2) if so, it determines whether some evidence exists that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser offense. Whereas, if "evidence from any source" raises the issue of less-included offense, a charge on that lesser offense "must be included" in the jury charge, whether the evidence is introduced by the state or by the defense and whether it is strong, weak, impeached, or contradicted. For Count I and Count II, there is much evidence that in struggling with Alanna, Appellant did not inflict bodily injury. Alanna even testified under oath that she suffered No bodily injury. Tim Cone even moved for a directed verdict of Acquittal, citing, inter alia, "No corpus delicti, No bodily injury, in fact, the state abandoned bodily injury in Count II. Notwithstanding the fact that Alanna has since trial provided Appellant with two sworn-notorized Affidavits stating that Appellant only defended himself, that she initiated the contact

See Tim Cones Letter Exhibit #22A   1 of 2

However, Tim Lone got a recorded recant statement from Alanna and never provided it to the defendant or the court. Wilma McKinney, Alannas very own Grandmother was an eye witness and she has also provided Appellant with a sworn-notorized Affidavit and she states, inter alia, That Alanna had no injuries and that she was Not Hysterical! Tim Lone also failed to question all of the witnesses, even the one that ran off before Police arrived! He also failed to hire a Private Investigator! His dubious excuse was that he was trying to show the jury the states lack of investigation, see Tim Lones letter! None of the states exhibits show any type of injury Whatsoever! The state erroneously introduces this illegally obtained evidence without objection from Counsel! In the states brief on Appeal, they erroneously introduce exhibit #10, allegedly showing a scratch on Alannas cheek or jawline, they couldn't make up their minds which? This picture was never shown to the defense or admitted as evidence in this case and not disputed by Appellate Counsel in Appellates brief! Eggregious Error! Here, the charge given by the Trial Court allowed jury to find Appellant guilty of assaultive conduct leading to two harsh sentences which are equivalents of life without parole. Otherwise, had Appellant only been guilty of simple assault or assault by contact, his sentences would have fallen into a much-less harsh range of punishment! The state would not have been able to subject Appellant to the habitual felon criminal statute! Refusal to give the lesser-included offense instruction in the courts charge to the jury harmed Appellant, just like failing to instruct the jury about the illegally obtained evidence of which is mandatory! The charge was not Harmless and Reversible Error! Move on the courts charge error in the following grounds! See states Exhibit #12 (VRR198) No scratch/Injury, states Exhibit #9 I do Not see a scratch (VRR 199)(acne No scratch) Exhibit No. 11 Defect in lip! No swollen, must be a fever blister! Im Not a Doctor! Lip!

2 of 2

<u>Ground Eighteen</u>: The Evidence Was legally Insufficient Because The State Failed to Prove The Elements of Bodily Injury And/or That The Victim Suffered Any Bodily Injury, As Alleged in The Indictment.

Facts Supporting ground Eighteen:
By Law, the State is required to prove, beyond a reasonable doubt, That the Victim Suffered bodily injury. The elements as stated on the indictment. First of all, Applicants attorney, raised This very point when he urged his motion for a Directed Verdict. The state Countered That there had been some evidence raised Through a couple of witnesses who said that if they had been hit in the same manner that Appellant was hitting Alanna That would cause pain. She even tells the officer That She did feel pain. (Emotional pain) The record is clear that the victim testified several times that she did not suffer any physical pain and was not injured from the altercation. The witness who said That the fight would have caused pain was Dajontae Johnson, who Testified that even though Appellant struck her, she felt No pain. This effectively excluded her as a witness as to what an altercation with Appellant would or would not have caused in terms of bodily injury. How could she be at all competent on the question? She was not. Not only that, but Ms. Johnson was caught lying on the stand several times. Whereas, when questioned did Appellant State, bitch, open the door, as she stated to Police, she said No, that Appellant never made that remark! Which also brings into question, the statement Ms. Johnson made That Appellant Then stated to wit: Bitch, I'm fixing to stab you! Ms. Johnson also lied about there (See Also Wilma Mckinney Affidavit Exhibit #3)

1062

being a scratch on Alannas cheek or jaw or face, she couldn't make up her mind which! Alanna said she was emotionally hurt, not physically hurt! That's what she testified to at trial. Testimony by and from anyone else is hearsay! The state abandoned paragraph A of Count II because they failed to prove bodily injury! Of which effectively cancels out Count I, because its alleges the same element - bodily injury! If the state wants to rely upon its exhibits in an effort to show some sort of bodily injury to Alanna, that evidence is completely lacking as well! When Officer Williams was shown some of the exhibits ie, pictures of Alannas face that were admitted as evidence erroneously and without objection from Trial Counsel. There was no scratch on Alannas face, jaw, or cheek, Period! However, the state in its brief, erroneously claims that Officer Williams was shown exhibit #60, which does "appear" to have a scratch; but it "appears" (Emphasis Supplied) to be her left cheek! I'm confused, aren't you? Exhibit #60 was never shown to anybody else, nor was it ever admitted as evidence. Johnson testified under oath, that she saw a scratch on Alannas "right" cheek! Same page 18, states brief! Alanna testified under oath that she suffered no injury! She was not physically hurt! That she initiated contact with her uncle the Appellant by grabbing him and shoving him! That the only reacted by defending himself, that he did not point a knife at her or threaten her with a knife! Alanna has even submitted not one, but two sworn and notarized affidavits stating as much! No threat with a knife and no bodily injury! She did not have a busted lip, it was a fever blister or pimple!

2 of 2

Ground: Nineteen The Evidence Was Legally insufficient The State failed to prove the elements That The victim Was placed in Fear of bodily injury, and/or That There was a Threat of bodily injury, and/or That The Knife used Was a deadly Weapon.

Facts Supporting Ground 19 Lack of Threat. The only person who Testified That Appellant held a Knife in The direction of Alanna McKinney Was Dajuntae Johnson, of whom was caught Lying on The witness Stand several Times, committing perjury. The other Three witnesses; Not included Was The witness That Left before Police arrived, who's name, and/or identity, and testimony were never provided to Appellant, and The other eye witness That Was prevented From Testifying at Trial, Wilma McKinney; said (1) he held The Knife down and never pointed it at anyone or anything (Testimony of Dawn Ayers); (2) That he held The Knife down at his waist and Was Not pointing it or waiving it at anyone (Testimony of Chase Neal) even if one were to believe The Lying witness Dajuntae Johnsen's Testimony about The position of The Knife, There is No evidence before The jury or in The record about how Far Appellant Was from Alanna at This door-opening. On previous occasions, Not just The Appellant, but his sister Roni, her boyfriend Sam, and even Alanna herself have used a Knife to gain entry into That bedroom, as evident From all The prior damage to The door jam (VRR 152-153) So There is probative evidence That The use of The Knife Was innocuous-just to pick The Lock (Emphasis Supplied) (3) That he held The Knife by his side, not Threatening anyone (Testimony of The alleged victim, Alanna McKinney under oath) (VRR 152-153) So There Was an abundance of evidence provided That The use of The Knife Was innocuous/harmless. Then, immediately after Appellant entered The room, The alleged victim shoved Appellant, assaulted him, then grabbed his arm. The arm in whose hand Appellant held The Knife (VRR 143) Then Appellant dropped The Knife in order to defend himself (see; Alanna McKinney's Two Affidavits Exhibits# 1A and 1B Submitted to Perry after Trial) There was No Testimony From any Exhibits# 1A + 1B Alannas Affidavits (Exhibit# 3 Wilma McKinneys Affidavit)

1 of 2

of the witnesses that Appellant made any sort of motion toward the alleged victim with the knife, motions from which could be inferred that he was trying to inflict a knife wound upon the alleged victim, none, period. In other words, there was no evidence that Alanna was threatened with the knife. There was never any evidence presented of a competent nature, or testimony from Alanna that she felt any type of threat or fear on account of the knife. In fact, she denied those emotions and stated that Appellant did not threaten her (VRR 149) No other witness testified that Alanna felt threatened with the knife. In fact, Alanna later provided Appellant with, not one, but two sworn, notarized affidavits, stating as much, inter alia, that she initiated contact with Appellant and that he only defended himself. That he never pointed the knife in her direction, period. Alanna suffered no knife wounds or any other type of injuries, period. No first aid was provided and no one went to the hospital, the evidence is completely lacking. Alanna was not hysterical, nor did she have any injuries. Appellant will provide a sworn notarized affidavit from Wilma Mckinney, another eye witness that was prevented from testifying at trial (Tim Cone told her to not engage the jury) Who better to know what Alanna felt and if she had any injuries than her own grandmother? Whom she has lived with since she was a baby. Alanna never even testified before the grand jury. Whereas, the Indictment was obtained using hearsay statements and illegally obtained evidence, leading to legally insufficient evidence.

Appellant informed all three of his lawyers of these facts; Michael Lewis, Tim Cone, and Lew Dunn. Appellant will provide letters and affidavits as exhibits in proof thereof with this Writ of Habeas Corpus. Appellant made a concerted effort to make sure he preserved error of illegal search and seizure and ineffective assistance of counsel for Appellate review, see also Appellants pro se motion for new trial.

2 of 2

Ground Twenty    Judicial Misconduct - Failure of Trial Judge to report Attorney Misconduct/ Attorney Misconduct - and/or Failure of Attorney to report Attorney Misconduct.

Facts supporting ground Twenty

Notwithstanding the fact that Appellant alleges prosecutorial Misconduct and Ineffective assistance of counsel, both at Trial and on his first appeal. The Trial Judge Not only denied the Motion for New Trial due to Misconduct of the prosecutor namely, Tanya Reed, but the Trial Judge failed to report the Attorney Misconduct to the proper authorities. Furthermore, Appellants Trial Attorney and his Appellate Attorney, even the States Attorney on Appeal, all failed to report the Misconduct, in fact, the Appellant Perry, apparently, is the only one involved in this Travesty of Justice, that actually reported the Misconduct, and to the proper authorities! Appellant avers that he was entitled to a fair and impartial Trial, free from Judicial Misconduct and Prosecutorial Misconduct and Attorney Misconduct. That did not occur in this case. In fact, the violations are of such an egregious nature, that it would be next to impossible for Appellant to now receive a New Trial! Appellant should in all things be acquitted! Whereas, due to the egregious errors in the case at bar, Appellant could never receive a fair and impartial Trial now! In fact, as according to the Court of Appeals erroneous opinion, They were either clueless about the failure of the Trial Judge and Attorneys failure to report the Mis conduct or they just didn't care! No sound Trial strategy!? The Trial Judge showed bias towards the Appellant and favoritism to the Prosecutor!

10 f 1

Ground: #1 Ineffective Assistance of Counsel | Conflict of Interest |
Denial of Discovery | Brady Violations | Denial of Fair and Impartial Trial |
Denial of Right of Appeal

Facts Supporting Ground: #1 Just like his Court Appoint Counsel on Appeal,
The Appellant combines these issues addressed in this ground for argument for
purposes of "judicial economy" since they arise out of the same factual and legal
context. Several issues in this appeal concern ineffective assistance of counsel.
First of all, Michael B. Lewis (Nick name at the jail by prisoners is to wit: Have 'em high-
Lewis) The one and only time Mr. Lewis made contact with the Appellant was to tell
him that the State (Tanya Reed) was offering him 12 years to plead guilty. If not,
and Appellant chose to go to Trial, then the State was going to come at him with
both barrels! Hence, the two 60 year Sentences! Appellant tried to reason with his
Court appointed attorney, to find out what happened to the Examining Trial and Private
Investigator, but Mr. Lewis refused to discuss it, so Appellant terminated his Court
appointed attorney! Some time later Appellant was appointed Tim Cone. Mr. Cone also
failed to adequately communicate with Appellant and deliberately withheld exculpatory
and impeachment evidence from Appellant, like the illegal Search of his home,
and that Police picked up the Knife and took it with them! (False Police Report)
Appellant raised these issues and more in his pro se Motion for New Trial, raising 17
grounds see Lew Dunns letter exhibit #10 Filed April 23, 2013 and letter exhibit #14B
Exhibit #10 was entitled Motion to withdraw as Counsel. Mr. Dunn states in part that
On or about April 2, 2013 Michael Dee Perry, Filed his own pro se Motion for New Trial, rais-
ing (17) issues that, for the most part, are separate and distinct issues from those rais-
ed by counsel. Appellant also requested a hearing on his pro se Motion for New
Trial. Appellant was indeed bench warranted back to the 188th District Court for a
hearing on Motion for New Trial, of which the Judge denied relief, preserving
error for Appellate review! Among other issues, but by no means limiting the
points of disagreement, one of those issues (raised at several points in his

Motion) Concerns Mr. Perry's assertion that Trial Counsel rendered ineffective assistance of Counsel. Counsel disagrees with Mr. Perry about bringing forward that issue on direct Appeal. However, Appellant avers that in Complete Contradiction to the statement made in his letter/Motion for New Trial/Motion to withdraw, Lew Dunn raised (3) grounds of ineffective assistance of Counsel on direct Appeal, but failed to preserve error by not raising this ground in his Motion for New Trial. See page 2, IV. Counsel does not believe that the Conflict can or will be resolved! see exhibit # 14 A Lew Dunns letter; I was, at one time, the Judge of the Longview Municiple Court. Your name is Somewhat familiar to me as someone who appeared before me on Misdemeanors, but I have No recollection about what any of that was about, and I have no preconceptions about you, Appellant maintains that Judge Dunn sentenced Perry/Appellant to Jail dozens of Times in the past and was able to go look up the record in order to refresh his failing recollection! See also Lew Dunns Motion for Hearing Pursuant to Faretta V. California, as to whether or not Michael Dan Perry wishes to represent himself or wants to continue to be represented by Lew Dunn! And if Not, whether Counsel should be dismissed from further representation in the appeal of this case! see exhibit # 12 Faretta V. California. Appellant avers that he also filed pro se a Writ of habeas Corpus access to Courts, attempting to gain access to the County Law Library before Trial, Judge Brabham Conducted a hearing and denied Perry access to the Law Library, but after Perry was sentence to 180 years in Prison, he has him bench Warranted back to Longview twice and tried to force him to represent himself on Appeal, a little late for that, Perry Could have presented numerous issues on Appeal if he would have had the information and knowledge to prepare and present those issues! Unless it was at some point placed into evidence during your Trial, or at pre-Trial hearing See Lew Dunns letter exhibit # 14 F By the way, all of these exhibits and more filed with Mandamus in the Sixth Court of Appeals! All on Record!

2 of 2

Ground: 22 Ineffective Assistance of Counsel/Prosecutorial Misconduct/Abuse of Discretion/Denial of Fair and Impartial Trial/Denial of Due Process/Defective Indictment

Facts Supporting Ground: 22

The Prosecutor Carl L. Dorrough and his assistant Tanya Reed did in fact amend the indictment during Trial, abandoning paragraph A of Count II. However, it is not clear if the State dismissed the entire paragraph or only the bodily injury portion of the paragraph. Whereas, the paragraph states to wit: Defendant did then and there intentionally, knowingly, or recklessly cause bodily injury to A. Mckinney by hitting A. Mckinney with his hand, and the defendant did then and there use or exhibit a deadly weapon, to wit: a knife, during the commission of said assault;

It was clear at Trial that the State failed to prove bodily injury by the applicable burden of proof or that the Knife (demonstrative or otherwise) was a deadly weapon, the evidence was completely lacking. Notwithstanding the complete lack of evidence, but the State failed to First File a Motion to Amend the indictment, and failed to give defendant adequate prior notice. Defendant was never provided a True and Correct Copy of the amended indictment, effectively preventing him from raising points of error in sufficiency of the amended indictment, even on this Writ of habeas corpus! 2½ years later, still No Copy! Proper procedure to amend the indictment is that the Prosecutor should have filed a Motion for Continuance, along with the Motion to amend and a completed, amended indictment, with copies of the same provided to the defendant at least (10) ten days before Trial. The defendants dubious Court Appointed Trial Attorney failed to object to the amended indictment, and/or the lack of Notice! Constituting ineffective Counsel, No Sound Trial Strategy!

1 of 2

However, Mr. Cone did make a Motion for a Directed Verdict of Acquittal citing "No bodily injury as alleged in both counts on the indictment." And also alleged in the Courts charge before the State Amended the indictment and the Court amended the Courts charge to the jury. Whereas, The indictment didn't Cast Violate Double Jeopardy by alleging the same conduct in both Counts. Once the State and the Court were alerted to this Fact and it was made part of the Trial record, They amended the indictment and Courts charge during the Middle of Trial without a Continuance; or objection from Trial Counsel. However, abandoning bodily injury from Count II does not defeat Double Jeopardy. The underlying assault is the gravamen of the Double Jeopardy Violation, That was alleged to have been committed to the same Victim and at the same Time. (What the Court could have charged, does not Factor into a reviewing Courts determination, and cannot serve as a basis of a double Jeopardy Violation = Court of Appeals Opinion "Indeed.") Amending the Indictment during the Middle of Trial Violated Appellants Substantial due process rights; exponentially. Failure of Court appointed Counsel to file a Motion to Quash The Indictment before Trial on Double Jeopardy grounds; and or insufficiency grounds was Not based on Sound Trial Strategy. Had the defendants Court appointed attorney called attention to the governments defective indictment, the State and Court would have only been able to charge the defendant with a Class A Misdemeanor with No enhancement. Furthermore, The Court lacked jurisdiction. The subsequent Imposition of Two 60 year sentences for the very same offense is prejudice, pure and simple. Reasonable probability That, The results of the proceeding would have been different, absent Counsels unprofessional errors, Prosecutor Misconduct, and Abuse of Discretion of the Court; Reasonable probability is a probability sufficient to undermine Confidence in the outcome. Whereas, Appellant did Not receive a Fair and Impartial Trial. Or even an Direct Appeal, For That Matter.

2 of 2

Ground: 23 Ineffective Assistance of Counsel / Abuse of Discretion/
Denial of Due Process / Denial of Fair and Impartial Trial / Insufficient Evidence/
No Deadly Weapon / No Threat with Deadly Weapon

Facts Supporting Ground: 23 First of all, Appellate Attorney Lew Dunn misstates
what is alleged in Appellants indictment. Appellants indictment in part alleged that the
Appellant did then and there intentionally, Or Knowingly, threaten A. McKinney with im-
minent bodily injury; Lets stop right there an examine (Or) Appellants indictment does
not have the word "Or" between intentionally and knowingly. The Indictment clearly
States knowingly and intentionally together, specifically, the Indictment states
To wit: intentionally, knowingly, or recklessly cause bodily injury to A. McKin-
ney. In other words, There's No choice. The State was required to prove that
Appellant committed the crime intentionally and knowingly, or recklessly cause
bodily injury to A. McKinney. Of which the State failed to do by the ap-
plicable burden of proof. See exhibit #5 Perrys Indictment. The State was
required to prove Perry both intentionally and knowingly, and of course reck-
lessly caused bodily injury to A. McKinney and that the knife was a deadly
weapon. And that the victim was threatened with imminent bodily injury
by holding the blade of a knife in her direction, used or exhibited a dead-
ly weapon during the commission of said assault. Of course, There is the word
or between intentionally and knowingly in Count II paragraph B. Go figure.
However, There was No evidence presented at Trial that Appellant caused
A. McKinney bodily injury. It was non-existent. Even all the erroneously ad-
mitted pictures of Alanna did not show any injurys, sorry Typo, injuries.
Immediately after Appellant entered the room, Alanna grabbed his arm and
shoved him. Appellant dropped the knife in order to defend himself. See
Alannas Affidavit Exhibit A. Appellant had No intention of harming his
niece, only to run off the black druggies hid out in Alannas room.
There was No culpability on the Part of Appellant. The State even

6 of 2

erroneously submitted a jailhouse phone call in a vain effort to try to prove culpability on the part of the Appellant, just like they tried to present evidence that Appellant tried to hide "THE KNIFE" in his back pack. As it turns out, there never was a knife in Perrys back pack, something Perry has known all along, after all, its Perrys back pack! Who better to know what it contained? Alanna states in her Affidavit that Appellant did not point the knife in her direction and that she had no injuries. Wilma McKinney also states in her Affidavit that her granddaughter had no injuries and that she was not Hysterical. The black girl, Oajontae was caught lying on the stand several times, shes the only one that said otherwise. The State used subterfuge and hearsay statements, and a false police report to convince the jury otherwise. Even after over 2½ years, the Appellants niece and even her own Grandmother, stedfastly maintaine that Appellant is innocent. Furthermore, the knife from the affray was never placed into evidence, although States Exhibit #1 was placed into evidence for demonstrative purposes, over Appellants objections. It should be pointed out that Lt. Bill Jennings, the States so called expert, was never offered or handed or shown or, in any way else, had his attention drawn to the demonstrative knife. In other words, Lt. Jennings never testified that "THE KNIFE" demonstrative or otherwise was a deadly weapon, Period. While there was testimony about a knife being exhibited, one was never admitted as evidence. No actual injury was done by THE KNIFE, and the victim did not feel threatened. As asserted on Appeal, there was no threatening movements made with a knife. Its somewhat baffling to say the least to consider that the State went to all the trouble to put forward its expert in the case at bar, yet the never testified that the knife at issue was a deadly weapon. Bill Jennings is not even listed on the Expert witness list. Neither is Lisa Chatterton and both were defendants in Appellants Civil Rights lawsuit. See exhibits #A1 and C. Expert witness list Exhibit #B

Grounds: 24 - Prosecutorial Misconduct/Abuse of Discretion/
There Was Reversible Error, When Counsel for the state, with Notice to
Appellant, After Jury Selection and Parties were Ready to begin Evidence, Repudiated the Agreement of the Parties to Suppress Any Evidence of a knife, / Ineffective Assistance of Counsel

Facts Supporting Grounds 24 Appellant, by his Counsel, had reached
what he believed to be an agreement about the knife and recited it to
the court, the same deal he told his client about, Then Startling news
comes from Tanya Reed, Asst. District Attorney: Kings X, There is an
Agreement - but not really, ha! Even the cold record does not mask
the surprise of Appellants Counsel, struggling to comprehend this
unexpected reversal of course, Lew Dean doesn't acknowledge the
Appellants Shock! After all, Appellants the one Serving 120 years in
a Maximum Security Prison! Not his dubious Attorney! And over 1500.00
in Fines & Court Costs! Without giving any rationale Why she thought
the demonstrative use of a knife would now be acceptable (in defiance
of established law on the use of an object for demonstrative purposes)
Mrs. Reed proceeded to represent to the Trial court That This was acceptable, in one blow she (a) blatantly undid the agreement with
Counsel on important discovery (b) and was less than candid with
the Trial court in her reasons for doing so! Both acts are prosecutorial Misconduct and grounds for reversal of the conviction!
Notwithstanding the New facts That were withheld due to Brady
Violations, to wit! THE REAL KNIFE picked up by Police in Appellants
Home, with No Search Warrant! Appellant has a right to a Fair Trial
Free from Prosecutorial bad faith! (reversible error in prosecutors
bad faith, intentionally failing to disclose evidence material to
Defense

10 of 2

Whereas, A lawyer, "any lawyer", shall not assert an issue unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous! Owes a duty of candor to the Tribunal! Has a duty not to obstruct the other party's access to evidence, and has a duty not to knowingly disobey an obligation under the rules of a Tribunal. Appellant contends that the Actions of the prosecutor in the case at bar contributed to denial of a fair trial in several ways. As to the knife (Even considering they used an "ersatz" knife or the wrong knife) First, Ms. Reed unilaterally, and without the required (5) (Five days notice required in the Court's very own in-limine pre-Trial orders, reversed the states agreement about suppression of the knife. But see Ms. Reed's Affidavit Exhibit #2A Page 60 She claims that the state does not have to notify opposing counsel that they intend to use demonstrative evidence! She even lies to the state bar in an Affidavit no less! Once the parties made an agreement concerning evidence, that agreement stands in place of an order from a Suppression hearing and would not permit unilateral amendment without due notice, Appellant was entitled to reasonable notice (5) (Five days at least) So that he can frame a defense. To permit the state (Ms. Reed) to do so was an abuse of discretion. States Counsel (violated the Disciplinary Rules in that she abrogated her agreement with Appellant about the motion to Suppress. Secondly, since the case law on this matter is very clear and unambiguous, Ms. Reed compounded her troubles by not being forth coming with the trial court about controling authority and precedent. Ms. Reed violated the Disciplinary Rules in that she failed to disclose controling authority that was directly adverse to her position. The basis for Ms. Reed's use of the demo knife was frivolous, even criminal, since they covered up taking "THE REAL KNIFE" without a search warrant from Appellant's Home! Duty to Disclose, the knife and its use was the states Ace in the Hole! There were repeated uses made of the "ersate" Knife in the case-in-chief and final argument (VRR 267) For all of these reasons the Appellant should be Acquitted!

Ground: 25  Ineffective Assistance of Counsel / Charge Error /
Abuse of Discretion / Denied Due Process / Denied Fair and Impartial Trial /
Brady Violations / Defensive Theory Courts Charge / Compulsory Process
Facts Supporting Ground: 25  Court Appointed Trial Court Counsel Failed to request jury instruction in Courts charge on defensive theory, and Trial Court erred in Not submitting an instruction to the jury on apparent danger. The jury was denied the chance to consider a defensive issue that was raised by adequate evidence. Because self defense was a closely contested issue, we conclude appellant suffered actual harm. Alanna initiated the contact. See the police report page 6. While booking him in, he advised "res gestae" that Alanna was strung out on drugs, Thats why she attacked me! It was made known at the Trial that Alanna grabbed Appellants arm! What was Not made known at Trial due to Brady Violations, was the fact that Appellant did Not attack Alanna or threaten her with a knife! That he only defended himself against the initial attack by Alanna in order to protect his eye glasses! Alanna has since Trial provided Appellant with a sworn Notorized Affidavit stating as much! There was also evidence brought out at Trial that the other two witnesses, Chase Neal and Oajuntae Johnson previously teamed up and assaulted the Appellant at his own home! Oajuntae even destroyed Appellants $300.00 eye glasses with her hands! Considering the aforesaid, the alleged victim and the two witnesses, Chase Neal and Oajuntae Johnson were guilty of assaulting the Appellant, yet the police and District Attorney never filed charges on any of them! Chase Neal and Oajuntae Johnson were also guilty Criminal Trespass, Twice! There was a "prima facia" showing at Trial that Appellant was previously assaulted by atleast two of the witnesses who testified at Trial. Even considering the Brady Violations and the withholding of both exculpatory and impeachment evidence, and eye witness testimony that would have contradicted all of the hearsay statements and the perjured

1 of 2

Testimony at Trial. Alanna McKinney states in her Affidavit That she initiated Contact with Appellant, That he was defending himself, That he never pointed a knife in her direction. Wilma McKinney also Submitted a Sworn Affidavit, of which Appellant submitted as an Appendix with his pro se P.D.R. Mrs. McKinney, The Grandmother of Alanna states that her granddaughter had No injuries and was Not Hysterical, That she did Not witness an assault, That Police Searched her home without a Valid Search warrant or an informed Consent. Keep in mind That Police Waited until The Appellant was taken away to The Police station in order to prevent him from objecting to The Search of, Not only his back pack, but his home as well. There was No alleged exigent Circumstances remaining or even from The very beginning. The Police needed to get a valid Search warrant, They had plenty of time and opportunity. Bare in mind, if They now claim That They Some how Convinced Alanna to give consent to search and take all of Those pictures, Pick up "THE KNIFE" and take it with them, only later to claim That They found it in Perry's back pack. Well, Alanna was in fact, as according to The District Attorney and Police Officer Nikkie, Super Cop, Williams, "Hysterical"!! Surely a victim That is Hysterical is Not able to give an "informed" (emphasis added) Consent. With all of Those so called, horrific injuries, I'm surprized she was able to speak at All. Not only all of This, Alanna McKinney was still very distraught over her mother just having passed away. And she is unlearned in the law. A very naieve and under educated teenager. The Police used their Power of authority or shall I say, abuse of Authority and Official Oppression, in order to convince her to submit to the search and all of Those pictures. None of which should have been admitted as evidence. Remember, All of the witnesses and the alleged victim refused to give a recorded statement. Of course, they didn't get a statement from Wilma McKinney.

2 of 2

Ground: 26  Prosecutorial Misconduct/ Police Misconduct/
Ineffective Assistance of Counsel at Trial and on Direct Appeal / Abuse of
Discretion / No chain of Custody of THE KNIFE / Illegal Search + Seizure

Facts Supporting Ground: 26 (Inadmissible Evidence) (Demonstrative Knife)
Police Misconduct &  Failure To Hire Private Investigator

Just like his Court Appointed Appellate Counsel, Appellant/Applicant combines these
issues addressed in this ground for argument for purposes of judicial economy,
since they arise out of the same factual and legal context. Several issues in
the Appeal concern the use of a demonstrative knife by the State, at trial and on
Appeal (First, second, third, tenth, twelfth, and thirteenth issues) However, not only
these issues of which are firmly in the record, but also exculpatory and impeachment
evidence that was deliberately withheld, and or covered up, and/or manufactured.
The record seems to show an assumption that the knife that was the subject of an
illegal search of Appellants backpack was the knife used in the incident. The
eye witness testimony was tainted by improper suggestion and the fact that the
Prosecutor showed all the witnesses the demonstrative knife right before trial.
However, nowhere at trial was there ever any evidence that the purported knife
actually used in the States accusation was, in fact, the knife pulled from Appellants
backpack. This is called a chain of custody issue, and nowhere did the state
make that case, where the crucial determination is if the object has been
properly identified. Appellate Counsel erroneously claims that Williams was the
one that searched the backpack and found a steak knife. Thats not true. Tim
Cone came to the jail and showed Appellant a Laptop Computer video of a Police
Car Tape recording of a male Police officer searching the backpack, who's name
and identity was never revealed Appellant, by the State or his dubious Attorney. There
is no evidence that Appellant picked up "the knife" (Emphasis added) and stowed it
in his backpack. The knife was dropped during the altercation with the victim,
Alanna McKinney, who has since trial recanted her accusation in a sworn Affidavit

Wilma McKinney Affidavit Exhibit #3      1062 Alanna McKinney Exhibit #1A + 1B

That is Notorized, exonerating the Appellant and admitting that she, not the Appellant initiated the contact, that Appellant did not point the knife in her direction and that he only defended himself! Since trial another eye witness, who was prevented from testifying at the guilt/innocence portion of trial, has also provided a sworn, notorized Affidavit. Mrs. Mckinney states, inter alia, that Police Officer Nikkie Williams and an unnamed Police Officer search their home without consent and a search warrant, picked up "the knife" Appellant used to pick the lock and took it with them! Whereas, Tim Cone, Prosecutors, and Police covered up this evidence, claiming that they found "THE KNIFE" used in the alleged assault in Appellants back pack! Tim Cone had all of those pictures of the inside of Appellants Home and never disclosed the illegal Search of Appellants Home and never disclosed the fact that Nikkie Williams picked up the Real KNIFE and took it with her! Mrs. Wilma Mckinney, will also testify that her Sweet Granddaughter had no injuries and was not Hysterical and that she did not witness an assault! All of the aforesaid Constitutes a Brady Violation and Tim Cone never filed a Brady Motion! Prosecutors and Police had 5½ months in which to disclose all this to Appellant, but deliberately withheld this exculpatory evidence! They actually tried to prove culpability on the part of Appellant by trying to claim they found "THE KNIFE" in his back pack! Unbelievable! Since when is it considered sound trial stradegy to withhold 'sine qua non' evidence from your client? Its no wonder Tim Cone and Prosecutors didn't want Appellant to have a Private Investigator! A Private Investigator would have talked with Wilma Mckinney and found out about the illegal Search and Seizure and "THE REAL KNIFE"! This is no mere garden-variety blunder! Whereas, if an attorney fails to raise an important, obvious defense without any imaginable strategic or tactical reason for the omission, his performance falls below the standard of proficient representation that the Constitution demands! In other words, because the Suppression of illegally obtained evidence and proof of Police Misconduct was a clear winner and presenting it would have risked nothing, eschewel of it amounted to Constitutionally deficient performance!

Exhibit # 32 Private Investigator Plose 2 of 2

Ground 27     Ineffective Assistance of Counsel / Prosecutorial Misconduct / Brady Violations / Failure to Disclose Recant Statements / Abuse of Discretion

Facts Supporting Ground: 27     Almost from the very beginning the alleged victim, Alanna McKinnie, has repeatedly attempted to recant her alleged accusations of assault on her person by her uncle the Appellant. Notwithstanding all of the hearsay statements, but Alanna went to the District Attorney's office and tried to sign an Affidavit of Non-prosecution. However, the District Attorney told her she would have to first take a 4 to 6 week family violence class and pay the fees. Also, Tim Cone, Appellants trial counsel, recorded a recant statement from Alanna at her home, but never produced it at trial. When Appellant questioned Mr. Cone about it, he told Appellant that he still retains it in his file and he will allow me to listen to it if we can find a practicle way. See Tim Cones letter Exhibit #22A, and my letters to him attached thereto. Appellant will provide this honorable court with exculpatory letters from him, his two court appointed trial attorney's and Appellate counsel, and letters from his own family, that will support this assertions. Not only all of the above said, but the alleged victim Alanna McKinnie has also submitted not one, but two sworn and notorized affidavits recanting the allegations presented in the indictment and that were erroneously asserted at trial by the prosecutor at trial that was based only on hearsay. Remember, there were no recorded statements of the victim or even any of the witnesses presented at trial or admitted into evidence. Appellant submitted Alannas Affidavit with a writ of Habeas Corpus motion for a new trial based on Newly Discovered Evidence, but was denied relief by the court. Appellant also submitted Alannas recant Affidavit as an exhibit with a writ of Mandamus in the Sixth Court of Appeals in Texarkana long before the court issued its memorandum opinion. Alanna also

Exhibit #22A Tim Cones letter          1 of 2 Exhibit #52A Tanya Reeds Affidavit

Tried in vain to tell the truth at Trial, but the Prosecutor, the nefarious and ingenuous Tanya Reed prevented her from doing so. Mrs. Reed continued to badger the victim to the point of intimidation, in fact, testifying for Alanna by repeating the hearsay statements as written by Police Officers. Tanya Reed manipulated the statements and Alanna's testimony in order to inflame the minds of the jury. Even making thrusting motions with the demonstrative knife towards Alanna on the witness stand, something that will not show up in the Trial Transcripts and that Appellants court appointed Trial Attorney failed to object to. Tanya Reed was not seeking the truth or to see that justice was done. Her Creedo was to get a conviction, to portray Appellant is the worse possible light. Guilty until proven Innocent. Never mind the presumption of innocence. Just like her telling the jury at the beginning of Trial that Appellant had already been convicted of Assault Family Violence and against this now recently Dead Sister. The alleged victims mom. Trial Counsel did in fact request a Mistrial, but failed to state why. Of course, it should be obvious from the Context, Right? The Appellant contended on Appeal that the Prosecutor engaged in improper jury argument resulting in error. The Appeals court states that Appellate Counsels objections on Appeal do not comport with the Trial objections, therefore Nothing was preserved for their review. However, the Texas court of Criminal Appeals has stated that it would not hesitate to reverse judgment when the prosecutor engages in conduct calculated to deny the accused a fair and impartial Trial. Where there is serious and continual prosecutorial misconduct that undermines the reliability of the fact finding process, or even worse, Transforms the Trial into a farce and mockery of Justice. Heavy as an engine block, sharp as a razor, like the mouth of an alligator.

Ground: Ineffective Assistance of Counsel at Trial and on Appeal / Prosecutorial Misconduct / Abuse of Discretion / Appeals Court Error Police Misconduct / Illegal Search and Seizure - Person, Home and Back Pack

Facts Supporting Ground: 28 Points of error apparent from context, Preserved! Lew Dunn failed to include Illegal Search and Seizure in Motion for New Trial, Error! Just like his Court Appointed Appellate Counsel, Appellant / Applicant combines these issues addressed in this ground for argument for purposes of judicial economy, since they arise out of the same factual and legal context. First of all, See the Court of Appeals erroneous opinion page 29, ¶2 "It is noted, however, that this use of the knife is what was "explicitly" mentioned when the agreement was stated on the record." The appeals court is in error, whereas, the court states on the very same page to wit: (On appeal, however, Perry argued that the Trial Court erred in admitting the demonstrative knife because (1) the ruling had the effect of revoking the parties agreement and (2) the demonstrative knife should not have been used because the original knife was available. The point of error on appeal must comport with the objection at Trial. Because Perry's complaints on appeal were not asserted below, they do not comport with his objections at Trial and nothing is preserved for our review! We overrule Perry's points of error complaining of the States use and the Trial Courts admission of the demonstrative knife because he failed to preserve them) And Appellant asserts that the Appeals Court tacitly admits ineffective assistance of Trial Counsel and Appellate Counsel! Not only that, but Prosecutorial Misconduct and Judicial Misconduct. Considering the fact that all of this misconduct going on was supposed to be reported to the proper authorities! The Appellant is the only one that reported the Misconduct! The Prosecutor Made a deal with Tim Cone, Not with the Appellant. See p. 27 The Court of Appeals States to wit: Because Perry did not present his complaints to the Trial Court, the issue

See Perry's P.D.R.                    1 of 2 (Exhibit #32 Private Investigator Nose)

The issue of prosecutorial misconduct is not preserved for our review! Perry did, however, complain of the use of the demonstrative knife. And again, Appellant maintains that he is a Writ Writer and knows a great deal about the U.S. Constitution, Texas Constitution and the Code of Criminal procedures. The State, Trial and Appellate Counsel, and even the Court erroneously withheld exculpatory and impeachment evidence from the Appellant in order to keep or prevent them from raising an objection at Trial! Especially to prevent him from raising certain grounds on a Writ of habeas corpus under the contemporaneous objection rule! Whereas, illegal Search and Seizure can't be raised on a Writ of habeas corpus for the first time! Trial Counsel was ineffective for failing to investigate and get an investigator to do so! And or failing to disclose to his client the illegal Search and Seizure before Trial! The Prosecutor had a duty to disclose as well! Appellant had a right to a fair and impartial Trial Free from prosecutorial bad faith (reversible error in prosecutors bad faith, intentionally failing to disclose evidence material to the defense, Whereas, Counsel for the State, as any other opposing counsel, shall not assert an issue unless the Lawyer reasonably believes that there is a basis for doing so that is not frivolous, owe a duty of candor to the Tribunal, has a duty not to obstruct the other parties access to evidence and, has a duty not to knowingly disobey an obligation under the rules of a Tribunal! Prosecutorial misconduct was obvious in many ways! Ms. Reed: Your Honor, I've already spoke to the witnesses (Not Wilma McKinney) telling them not to mention anything about the search of the backpack if they even did know, I spoke to the officer. But I have shown them this and asked them if it look similar to-similar in size, shape, and color to the one they saw Mr. Perry had that particular night. No showing them several different knifes, tainting their testimony, There was no proof that that knife was the actual knife used in the alleged assault (the Actual KNIFE) would have been in admissible! Period!!

2 of 2

Ground: 29 Error was preserved regarding the breach of Agreement regarding the knife and there was Prosecutorial Misconduct and Abuse of Discretion, also Ineffective Assistance of Counsel/Police Misconduct Error Apparent from Context, Therefore, error was preserved for review!

Facts Supporting Ground: 29 Appellant Perry also argues that the State committed prosecutorial misconduct when it introduced a knife to be used for demonstrative purposes, in doing so, it violated an agreement regarding the suppression of the knife. The Court of Appeals dubiously states to wit: Because the Parties agreement was "allegedly" (Emphasis Supplied) violated, Perry argues that the trial court erred in admitting the demonstrative knife. Our review of the record reveals that Perry has failed to preserve these points 'Really? And Appellant maintains that the word: Suppress, when it pertains to evidence in a Criminal Case signifies that the evidence in question was obtained illegally, In violation of the United States Constitution and even the Texas Constitution! The Court goes on to say that Perry Filed a generalized Motion to suppress any evidence during an illegal Search and Seizure, that motion was never heard or ruled on by the Court. THE COURT: Y'all have an agreement on that? (The State): Okay, We... were scheduled for a Motion to Suppress yesterday. It did not go through. I don't know if we want to put something on the record! (Defense Counsel): We do, your honor. Since its my Motion to Suppress, I don't mind stating what I understand the agreement to be. We had a Motion to Suppress evidence that was scheduled for a hearing yesterday afternoon (two days before Trial) Specifically, what the Motion to suppress involved, there was an immediate detention of the defendant by the officer when she arrived on the scene that we're going to hear the evidence about today... At some point a back pack that allegedly the defendant had was searched and there was a steak knife that was found in the back pack. Lets stop right here a moment. There was never any proof that the steak knife, or shall

I say, alleged steak knife was actually found in the backpack! There was never any evidence produced at trial. None of the Police Officers that searched the backpack ever testified at trial! An Eye Witness saw the Police Officers pick up the knife used by Appellant to pick the lock and take it with them! All without a search warrant. Tim Cone knew all along about the illegal search of Perry's Home, not just the backpack! So did the Prosecutor! And it would be a stretch to assume the Court wasn't advised by the Prosecutor, and/or Police of the Search of Perry's home without a warrant, Especially after an elapse of 5½ months before Trial! The only person that wasn't informed, was Perry! Lew Dunn sure found out, look at his Reply brief! Considering all of the Brady violations, failing to preserve error on these points is ridiculous and a moot point.

Its very obvious that there was an illegal Search and Seizure, Not only of the backpack, but Perry's Home too! Even his person (pockets)! Surely if the illegal Search and Seizure of his backpack was recognized by the Prosecutor and Court, then by the same evidence the Search of his Home was illegal too! Right? (Appellant contends that the Trial Court abused its discretion in allowing the use of a knife for demonstrative purposes, over <u>Appellant's objections</u>. That ruling had the effect of revoking the dubious agreement of the parties and unfairly rewarded the State. This was Not a case of a weapon being lost, or its utility degraded, or its never being recovered from a crime scene; it was not an instance where a Criminal throws his knife or pistol in the river. That <u>distinction is critical</u>! In fact, the distinction that Police Officer Nikkie Williams and her partner in crime, the other Police officer (unnamed) searched Perry's Home without a Search Warrant and retrieved the actual knife used by Perry to pick the lock and took it with them, That's the <u>critical distinction</u>! All parties involved in this Subterfuge to cover up all of this misconduct are just as culpable! The Appeals Court also uses an over abundance of Surplusage to claim error was <u>not preserved</u>! Of course There Was Misconduct on every level! No Fair and Impartial Trial, Period!

Exhibit #3 William McInnerys Affidavit 3 2 of 2

Ground: 30 Ineffective Assistance of Counsel / Prosecutorial Misconduct / Police Misconduct / Erroneous Ruling by The Appeals Court / Illegal Search and Seizure / Abuse of Discretion / Police Misconduct

Facts Supporting Ground: 30  Neglect as to Timely Filing and Getting Ruling on Motion to Suppress; In a Case like This - Warrantless arrest; an illegal Search and Seizure, Not only of a back pack on the person in The drive-way, but his Home after he was Taken away by Police. And Seizure of The alleged instrumentality of an alleged crime. A Motion to Suppress Should be Filed and hearing and ruling Made before Trial, holding That defendant has burden of going forward with motion to Suppress with evidence That rebuts presumption of proper police conduct. Here, on February 25, 2013, (day of Voir dire) Counsel for Appellant Filed "Motion to Suppress, scheduled a hearing but cancelled when he Thought he had an agreement with The State. Disastrous results of That mistaken Trust have been adequately discussed and are firmly in The record for Habeas Corpus Review. Whatever Strategic advantage Trial Counsel might have assumed he had gained by The mis-Taken Trust were nullified in the "demonstrative Knife" ruse by the State. There is "No doubt" (Error Preserved) That Trial Counsel did not follow The Customary Course for gaining a ruling on Suppression, You Think. In fact, The results of That permeated The case and caused reversible harm to the Appellant. But for The use of The Knife - which permeated the evidence and States Final Argument - and The lack of limiting instruction, The case would have had a different outcome. Appellant avers, That if The jury had Known about all of The other misconduct as outlined in The previous grounds, They would have found The Appellant Not guilty.
Neglect as to Requesting a Change to The Jury. (Illegal Seizure) Such a neglect of charge Matters has been held as reversible, for instance, In a case before The Court of Criminal Appeals, where Counsel

Exhibit B Motion to Suppress      1 of 2

Failed to get a limited instruction on a written statement from complainant that it could only be considered for impeachment purposes and not as evidence of guilt. In the case at bar the knife and the state's use of the knife were at the heart of its case, even more reason to cover up the illegal search and seizure and police misconduct (the REAL KNIFE) The use of the knife was by the state, theatrical and impressive on the minds of the jury. Without the knife, there would have been no trial! Tim Cone was either incompetent or he suffered from a disability, or his act of not disclosing the facts regarding the illegal search and seizure and the police taking the real knife with them, was malpractice! There could not have been any "strategic" reason for so blatantly violating the state bar rules and the constitutional rights of his client. The same could be said of Michael B. Lewis who failed to obtain an examining trial or hire a private investigator! Since the rules and case law dictates that all of the aforesaid be done! To forego a limited instruction gave the jury no restrictions on how they were to consider the knife, demonstrative or otherwise, in their deliberations, since statutes state it is mandatory! It cannot be said that the failure in giving a limited instruction did not have a profound impact on convincing the jury to convict! With such an instruction, they would have had to temper their deliberations accordingly! Without the knife, hearsay statement, witness statements, the jury would have only been able to rely on the testimony at trial! Of course the outcome of the trial would have been different! Both prongs of Strickland have been satisfied! Tim Cone should have requested that the illegal search and seizure of the knife from Perry's home without a search warrant be included in the courts charge. Failure to do so irreparably injured the rights of Appellant, vitiating the presumption of innocence and denying Perry a fair and impartial trial, and effective assistance of counsel! the instruction was mandatory by law!

Ground: 31 Abuse of Discretion / Denial of Due Process / Violation of Right to be Heard Clause of Bill of Rights / Denial of Right To Examining Trial / Denial of Right of Confrontation

Facts Supporting Ground: 31 As according to the Magistrates Warning and Rights (Exhibit #4A) issued on or about October 15, 2012, Defendant had a right to an Examining Trial. Not only that, but (7) Do you request the appointment of Counsel? Appellant answered, No. Therefore, since Appellant did not request an attorney, and was not appointed an attorney before he filed a pro se Motion for Examining Trial, he was entitled to an Examining Trial. There was No Hybred representation. Appellant filed the initial Motion for Examining Trial in the JP1 Court on October 22, 2012 His Birthday. (7) Seven days after his initial arrest. The subsequent Motion for Examining Trial was filed on October 30, 2012 in the 188th District Court of Gregg County. Both said motions were Timely. Appellants substantial Due Process Rights were violated. Bail was set at $7,500.00 and $1000.00 but there was No Bail set for the Drug Paraphernalia Charge, or even any mention of said charge. However, Bail was set on the Drug Paraphernalia Charge at $500.00 on October 29, 2012. At some point Appellant was Tried, Convicted, and given Credit for 13 days Time Served in absentia. All without any Due Process Whatsoever. Unbelievable. Appellant tried to assert his rights to Due Process, and Right to be Heard, and Rights to Redress Grievances with his Government from the very beginning, the day of his arrest. Appellant makes this observation, if he would have had an Examining Trial from the onset, the Court would have discovered that Police had No Probable Cause and No Warrant to arrest Appellant. In fact, the Court would have (discovered) and I use that term Loosely, that Police arrested Appellant Restrained him of his liberty, then Searched his person, personal pro-se Magistrates Warning Exhibit #4A

perty, and his Home, all without a Valid Search Warrant. The Court would have learned that None of the witnesses gave a recorded statement, not even the alleged victim! That the victim was Not Hysterical, of which would have been painfully obvious on a Video recording, even the fact that the alleged victim had No injuries! Also, the video recording would have shown that all of the witnesses and the alleged victim were extremely intoxicated and high on illicit drugs as Appellant informed the Police Officer, Nikkie Williams when she arrived and that's why Alanna attacked him! The Court would have learned that the alleged victim did Not have a cut on her lip, that the door was Not kicked down or broke down! Also, that Wilma McKinney was a Material witness too! That Police did not get a video statement from her either! Mrs. McKinney would have informed the Court that she did Not witness an assault, that Alanna was Not Hysterical and that she had No injuries! Also, that Police had No Search Warrant and No body gave an informed consent to Search! That Police Officer Nikkie Williams and her fellow Police officer picked up THE KNIFE Appellant dropped and took it with them! That the two black witnesses were Criminally Trespassing, that they previously assaulted Appellant and were not supposed to be in her Home! All of this may have been learned or Discovered in and of an Examining Trial, absent Police Misconduct! Also, that it was Alanna that initiated contact with Appellant and that he only defended himself! The Court would have learned and/or recognized that Appellant did Not request a Court appointed Counsel as is evident by (7) No! On the Magistrate Warning (Exhibit #4A) Again, Appellant had a Fundamental Right to an Examining Trial! Appellant proceeding pro se Timely Filed a Motion for an Examining Trial in the Court of Jurisdiction JP1 Court on October 22, 2012 Which happens to be Appellant's Birthday (see Exhibit #30) Also filed in the 188th District Court (see Exhibit #31) Also (see Probable Cause for Arrest Exhibit #2A). (Magistrates Warning Exhibit #4A)

2 of 2

Ground: 32 Ineffective Assistance of Counsel at Trial and on Direct Appeal / Prosecutorial Misconduct / Brady violations / Abuse of Discretion / Failure to Hire a Private Investigator or to Investigate / Violation of Protective Order #3

Facts Supporting Ground: 32 Ineffective assistance of Counsel on Direct Appeal entitles Appellant to a New Appeal! Just like his court appointed Appellate Counsel, Appellant combines these issues addressed in this ground for argument for purposes of judicial economy since they arise out of the same factual and legal context. Appellant informed both his Trial Attorneys and his Appellate Counsel about certain issues he wanted raised at Trial and on Direct Appeal. For instance, The Theft of Appellants debit card by the alleged victim and her friends that testified against Appellant at his Trial, Appellant has proof that his debit card was found in the victims purse with a Zero balance on it. That Tim Cone recorded a recant statement from the alleged victim exhonerating Appellant, Tim Cone never produced this exculpatory and impeachment evidence at the erroneous Trial! Even the Jailhouse phone call that the Prosecutors setup! The alleged Tape recorded Jailhouse phone call that Prosecutors Set up was not admitted as evidence in the case at bar and was not provided to the defense! The State intended to prove culpability on the part of Appellant, but instead, The victim exhonerated her uncle, The Appellant! But Ms. Reed and Ms. Brown states Council on Appeal, weren't satisfied with this outcome! Both Ms Reed and Ms. Brown completely alter the colloquey of our conversation, only using excerpts of our conversation, They did not follow the rules regarding the prerequisities that are required by law before its use, Violating the Appellants due process rights! Furthermore, that didn't even stop the Court of Appeals from using the Jailhouse phone call either! See Lew Dunns letters exhibits #14F, #14A, to cite just a couple, Appellant has many more! In fact, Appellant wrote many letters to his Trial Attorney and Appellate Attorney, Some of those letters will be submitted as Exhibits with this writ of Habeas Corpus!

See Tim Cones letter Exhibit #22A        1 of 2 (Exhibit #3 Emergency Protective Order)

Also see exhibit #27 Designation of Record on Appeal! There is no record of dozens of pro se motions filed by Appellant; Seems Strange that some of Perry's Motions made it in the record, but not others. Wheres Perrys Motion for New Trial? He was bench warranted all the way from Prison for a Hearing on it. The High Court States that if a District Judge denied the motion in Court with Appellant present, he issued a ruling on the merits, Said motion should be part of the record on Appeal! Even Appellants pro se motions for Examining Trial and motion for Private Investigator, even Tim Cones motion to Suppress! Lew Dunn States to-wit: I will not have a copy of your Trial record until after about 90-120 days from now. So, other than what Mr. Cone has told me about, I do not have access to what happened at your Trial. From the foregoing I believe you can deduce that it would be very problematic for you to add something else to the appellate record! The Court of Appeals is going to look at what is contained in the Trial record and base its opinion on those facts and issues. Yea right! (Pills of Some Kind! Indeed! My own prescriptions) Lew Dunn goes on to say; However, your letter States; I have a great deal of evidence that I believe should be part of my direct appeal! What sort of evidence are you talking about? If it is Newly discovered evidence, that might be useful to look into. However, it has to be evidence that neither you or your lawyer in due diligence could have discovered prior to the Trial. So, has some witness come forward that you did not know about? What are you referring to? Did the State withhold any evidence that would amount to a Brady Violation? If so, what? Not withstanding the Two Tape recordings, but also Alannas two Notorized Affidavits exhonerating Appellant! Wilma McKinneys Notorized Affidavit exhonerating Appellant — the illegal Search and Seizure, that also Tacitly proves not only Police Misconduct, but Prosecutorial Misconduct and Attorney Misconduct at the expense of Appellants Substantial Due Process Rights and a Fair and Impartial Trial! Brady violations!!

See Appellants pro se Motion for New Trial    2 of 2 (Formal Bill of Exceptions.)

Ground: 33    Ineffective Assistance of Counsel/Prosecutorial Misco-
duct/Abuse of Discretion/Denial of Discovery/Brady Violations/
Denial of Due Process/Denial of Fair and Impartial Trial

Facts Supporting Ground: 33 Appellant was entitled to adequate discovery
before, during, and after Trial. "By or on behalf of the defendant."
Whereas, the "Court in which the action is pending" shall order the state
before or during Trial of a criminal action therein pending, or on Trial
to produce and permit inspection and the state shall disclose to the prose
defendant any exculpatory, impeachment or mitigating document, item,
or information in the possession, custody, or control of the state that
tends to negate the guilt of the defendant or would tend to reduce
the punishment for the offense charged. In the case of a pro se
defendant, if the court orders the state to produce and permit the inspect-
ion of a document, item, or information under this subsection, the state
shall permit the pro se defendant to inspect and review the document,
item, or information but is not required to allow electronic duplication.
Notwithstanding the Discovery Rules as outlined in the Texas Code of Criminal
Procedures, Appellant filed two pro se motions for discovery, that are in fact
included in the Designation of Record on Appeal filed in the Clerks of-
fice on March 25, 2013. See Exhibit #27 Designation of Record on Appeal.
However, numerous documents, affidavits, letters, and more were erroneously
omitted from the record, see page 1 paragraphs 1 and 3. Furthermore, there was
no subpoena issued for eye witness Wilma McKinney, nor was she included
as part of the Designated Record on Appeal, see paragraph 7. Mrs. McKinney
was prevented from testifying at Guilt Innocence phase of Trial and
told not to engage the jury, but was later called to testify at the pun-
ishment phase of Trial. In fact, the Court failed to even follow its
own Pre-Trial Standing Discovery Orders, that supposedly Takes the

Pre-Trial Standing Orders Exhibit #8          1 of 2

place of all previously filed motions. The law is very clear on the matter of discovery and unambiguous! In the record on this case, there is no record of Perry's motion for a New Trial pro se or his Affidavit or even the Adendum to Motion for New Trial. Perry was bench warranted to the 188th District Court for a hearing on his pro se Motion for New Trial. The Judge denied the Motion, but issued a ruling on the Merits, preserving error for Appellate review. Furthermore, Appellant instructed his Attorney on Appeal to file a formal Bill of Exception and include his grounds as part of the record on Appeal. There's no mention of the Motion to suppress evidence, there's no mention of the jailhouse phone call tape recording, but that doesn't stop the state from introducing it as evidence of culpability of the defendant in the States brief and then the Court of Appeals uses this same erroneously admitted tainted evidence to deny the Appellant relief, violating his substantial Due Process Rights, causing irreparable harm. Notwithstanding all of the other Discovery Violations, the Police and Prosecutors, even Appellants Court Appointed Attorneys, all withheld exculpatory and impeachment evidence from him before, during, and even after Trial! Police officer Nikkie Williams filed a false Police Report and not until 21 days after the illegal arrest of Appellant. Williams, deliberately, with malice aforethought, omitted many facts from her Police Report, for instance, the search of Appellants Home, the knife she picked up and took with her, all of the other Police officers names and/or identities! Of course, the Court, the Prosecutors, Court appointed Attorneys, and any, and all agents of the Government also withheld, and/or covered up evidence in the case at bar! Brady Violations! There's no record of Perry's request for an Examining Trial! Of course, that would not have been possible because Nikkie Williams did not file her False Police until November 5, 2012, 21 days after Perry's arrest. Even the Emergency Protective Order was not made part of the record on Appeal (Exhibit #3 EPO)

See Discovery Order Exhibit #11      2 of 2      See Standing Pre-Trial Order Exhibit #8

Ground: 34 Ineffective Assistance of Counsel / Abuse of Discretion / Prosecutorial Misconduct / Denial of Due Process / Denial of Fair and Impartial Trial / Malicious Prosecution / Retaliation / Police Misconduct / Civil Rights Violation

Facts Supporting Ground: 34 Appellant / Applicant combines these issues that are addressed in this ground for argument for purposes of judicial economy, just like his Appellate Attorney, since they arose out of the same or similar factual and legal context. Appellant did not plead true to the prior convictions, nor did he stipulate to the prior assault family violence, if Appellants dubious Trial Attorney did, he did it without Appellants knowledge or consent, also see Tim Cones letter Exhibit # 22A. Appellant would make this court know that at the time he plead guilty to the prior assault family violence he was under duress and being denied medical care and his Chronic Medications. Not only does Appellant recieve (SSI) Medicaid, he recieves Treatment from two specialist. One for Chronic Intractable Pain and the other for an anxiety disorder (MHMR). Appellant only plead guilty to get out of jail as soon as possible in order to receive Treatment. Perry was in severe pain and distress. Appellant was not even represented by counsel when he entered his plea. The plea of guilty was not made voluntary with the understanding of the nature and the cause of the action against him and the consequence of his plea. In fact, Appellants Sister, the very one that died of a liver disease actually was losing her mental capacity due to her illness and she is the one that assaulted the Appellant, not the other way around. Appellant will even take a lie detector test to prove his telling the truth. In fact, right after Perrys release, he went right back to taking care of his baby sister right up until she died. Where were all of you? Zoa Brown couldn't even spell Alannas name correctly. (9 times States Brief) Misspelled. The prior Tampering w/ Evidence case was reversed on Appeal, whereas, the sentence was reversed due to an illegal enhancement, a probated sentence can't be used for enhancement purposes unless it was revoked. Appellants was not

See Exhibit # A2 Police Report          1 of 2

The very next day, after arriving back in Gregg County from Prison, Appellant was brought before Judge Brabham and District Attorney Carl Dorrough. Appellant was not represented by Counsel. Appellant was offered a special deal, drop his appeal, plead guilty to Tampering w/ Physical Evidence, and receive Time Served! No fines and No Court Costs! Oh, and No Parole! Appellant went home that very day! One day doing 25 to life, the next day at home! Who wouldn't take that deal? Appellant Maintains that he was arrested for aggravated assault just like the case he is in prison for now! The cases are quite similar! In that, Appellant was again arrested without probable cause and without a warrant - falsely arrested! Appellant not only sued the police officer that arrested him, but the Assistant District Attorneys Brian LeMaire and Jenny Huckle for violating his due process rights. Appellant even sued his Court Appointed Attorney, Kevin Settle. He tried to remove his court appointed Attorney Kevin Settle, and Settle also filed a motion to be removed as Perry's attorney, but the Trial Court refused to do so. Appellant avers that the present case was also the result of an illegal arrest. That there was No Probable Cause, No Search Warrant, and Perry was not read his rights! The Police filed a False Police Report in this case, just like the previous case! The only reason Perry plead guilty to the tampering w/ Evidence case was to get out of Prison! Not that he was guilty! In fact, Appellant had the very same dubious ineffective attorney, on appeal in that case, Tim Cone! Unbelievable! The State never proved that Perry swallowed 15 to 20 pills To wit: "Seroquel," as alleged on the indictment! (Pills of some kind, Indeed!) Lisa Chatterton lied about that as well! The only difference in the prior cases and the case at bar is That Perry will not waist his time and money swing through the vehicle of a frivolous 1983! Tim Cone was ineffective for not Challenging the prior convictions used for enhancement purposes! There was no sound trial strategy at work, and the results of the proceeding would have been different, Appellant would not have been subjected to two enhancements leading to two 60 years.
See Exhibit A (Civil Action 602cv536        2 of 2

Ground: 35 Prosecutorial Misconduct/Abuse of Discretion/Ineffective Assistance of Counsel and/or a Disability/Error Preserved From Context Regarding Breach of the Agreement Regarding the Ersatz Knife and Alleged Knife/Brady Violations

Facts Supporting Ground: 35 Court of Appeals erroneous opinion pp. 25, 26, 27, 28, and 29!

7. No error was preserved regarding the claimed breach of agreement regarding the knife! First of all, the disclaimer! There is no way Applicant can adequately address this issue as outlined in this dubious opinion whereas, just this one point of error takes up (5) Five pages and the Applicant is only allotted (2) Two pages However, Applicant will try to be cogent and coherent! Perry also argues that the state committed prosecutorial Misconduct when it introduced a knife to be used for demonstrative purposes because, in doing so, it violated an agreement regarding the suppression of the knife. Because the parties agreement was (allegedly) violated, Perry argues that the Trial Court erred in admitting the demonstrative knife! Appellant, by his Court appointed counsel, had reached an agreement, or rather, what he lead the Appellant to believe to be an agreement about the knife! (Keep in Mind, the Police picked up and took the actual knife with them from Perry's home! Never disclosing this fact!) 5½ months before Trial - No disclosure! The agreement was recited to the court! Then startling news comes from Asst. D.A. Reed: Kings X, there is an agreement - but Not really! Even the cold record does not mask the surprise of Appellant's dubious counsel, struggling to comprehend this unexpected reversal, or just good acting! Keep in Mind, Mr. Cone knew about the illegal search of the backpack, as well as Perry's home long before Trial, and THE KNIFE! Ruse! Mr. Cone Never told Perry about the illegal Search and Seizure of his home, or even the pictures, or even the drug paraphernalia! Surely he knew about the Actual knife Police took with them from the inside of Perry's home!? Mr. Cone didn't bother telling Perry about the Search of his backpack and an alleged knife being found in it. Subterfuge! Surely the Female Cop, Nikkie Williams

6 of 2

told Ms. Reed about the search of the home and "THE KNIFE they took with them?" The Court: Our review of the record reveals that Perry has failed to preserve these points. Of course Tim Cone talks a lot about the illegal search of the back pack and the alleged knife found in the back pack but he never mentions the illegal search of Perry's home. Nor is it mentioned in the Probable cause Affidavit or Police Report. Subterfuge! "Misdirection". (The State) Thats correct, Your Honor. We are agreeing not to, "With the Police Officer, go into the search of the back pack or the fact the knife was found in the back pack. Note: Because of this part of the agreement, The Applicant did not get to cross-examine the other Police that searched, not only the back pack, but Perrys home as well. Tim cone knew that all along. As did Ms. Reed. And also just for- before we get into it, we do have a knife that we plan on using for demonstrative purposes only, asking the witnesses if it appears to be similar to the knife that they saw that particular night. Lets stop right here for a second. The real knife was immediately dropped by Perry and bounced under the dresser, all of the witnesses were stoned on drugs and Alcohol. They never actually saw the real Knife. Ms. Reed showed them the demonstrative knife right before Trial. Of course they could describe it. Courts opinion pp. 4. All the witnesses were hanging out in Alaskas room - The Party continued late into the night. (Emphasis added.) Irregardless of all the Subterfuges in Misdirection and Surplusage in the Courts Memorandum opinion, There was Prosecutorial Misconduct. The court states because Perry did not secure a ruling on this ground of alleged prosecutorial misconduct, error was not preserved. To preserve a complaint for appellate review, the complaining party must make a specific objection and obtain a ruling on the objection. And the point of error on appeal must comport with the objection made at Trial. Appellant insist that the objection was obvious from the context. Considering all of the Brady violations aforesaid, The entire issue concerning the ruse with the demonstrative knife is moot. The evidence was legally and factually Insufficient.

2062

Ground: 36 Ineffective Assistance of Counsel-Misconduct,and/or a Disability / Abuse of Discretion / Prosecutorial Misconduct/Denial of Due Process and a Fair and Impartial Trial

Facts Supporting Ground: 36 Closing Arguments and Verdict; Since the State waived its opening argument (VI RR 126), Counsel For Appellant gave his dubious and erroneous closing argument on punishment and argued That The jury "should" punish Appellant For This Crime (Emphasis Supplied) not Impose a sentence That was out of balance and stressed Fundamental Fairness (VI RR 132-133), That he had paid The penalty for The Offenses shown in The other convictions, "almost all of which were for lower level offenses (VI RR 135) He also argued That Appellant Should not be punished because he was a "Thorn in The side of Government, That That was not a reason for punishment (VI RR 135) That <u>The jury should only punish Appellant For This Case</u>". Since when is it Considered Sound Trial Stradegy to Tell a jury to punish your Client For a Crime he adamently expresses he did Not Commit? Telling The jury That Appellant is a "<u>Thorn in Governments Side</u>" Wheres The precedence That says This is Sound Trial Stradegy? <u>The Jury Should Punish The Appellant. Indeed</u>!! And its No Wonder The State waived its opening statement/Argument, They had plenty of help From Tim Cone' Notwithstanding The Fact That at The beginning of Trial, The Prosecutor, Tanya Rud, Told the jury That Perry had already "been Convicted of assault Family Violence, and against his recently deceased "Sister, The Victims mother! Unbelievable! And Theres nothing more pathetic Than a Lawyer enjoying "The Luxury of an ex post Facto Conscience, is There? Wallowing in whaTa sensitive soul he is! To defend Those who might be guilty had always meant That a Lawyer could not dwell on Their presumed crimes, or prior Convictions, but on The need to make The Government prove its Case, to question its errors and assumptions, to make The right objections at See Tim Cones Letter Exhibit # 22 A   1 of 2

Trial and/or on Appeal! To ensure that it not convict on supposition, but that the defendant recieve due process, equal protection of law and a fair and impartial trial! One does not need to be a lawyer to analyze the law or the constitution and the inherent need to protect a defendants Due Process Rights and the presumption of innocence! When Prosecutorial Misconduct is intended to "good" the defendant into moving for a mistrial, the Double Jeopardy clause bars further prosecution, especially considering the facts in the case at bar, where Appellant was tried and convicted twice for the same crime involving the very same alleged witness/victim! The Court abused its discretion when it permitted the state, during guilt/innocence stage of trial, the very beginning of Trial, to offer evidence of a prior conviction of Appellant for the offense of assault, family violence (VRR 218) Appellants Court appointed Attorney objected to this prior to the start of voir dire (IV RR 7-8) and during the states opening statement when states counsel referred to the conviction and a mistrial was denied (VRR 24-25) when the evidence, or rather, conviction was placed into evidence (VRR 218) Moreover, several times in final argument the state referred to the prior conviction in arguing for a finding of guilty (VRR 236, 237, and 238!) The prior was against Mr. Perry's sister (5RR24) The defense attorney objected, but did not give a reason for his objection (5RR24) Sound Trial Stradegy, Hardly! Furthermore, Perry did not stipulate to the prior conviction (5RR 219) In Fact, a fingerprint expert was called in to take Perrys fingerprints! Furthermore, in that case, #17, Appellant was not represented by counsel and only plead guilty under duress in order to get out of jail to take care of his dying sister, Roni. Theres a long history of Gregg county officials abusing Appellants civil rights! Thorn in Governments side, Indeed! Furthermore, why on earth would Perry stipulate to the Prior AFV, when he plead Not True? See the Judgment, Not True to the Priors for enhancement and Not Guilty! Perry's Generic objection to the statement,

See Trial Counsels Letter Exhibit # 22A   2 of 2

Ground: 37 Ineffective Assistance of Counsel-Misconduct-Disability, and/or all of the above/Prosecutorial Misconduct/Abuse of Discretion/Brady Violations/Denial of Discovery/Denial of Due Process/Denial of Fair and Impartial Trial.

Facts Supporting Ground: 37 Notwithstanding the subsequent grounds concerning, inter alia, Brady Violations, Appellant further avers that the Government denied the Appellant substantial discovery, effectively preventing him from a fair opportunity to prepare and present an adequate defense, thus, denying him a Fair and Impartial Trial! Both of Appellants Court appointed Trial Attorney's Failed to adequately communicate with Appellant and disclose evidence to him! Withholding, exculpatory evidence, mitigating evidence, and impeachment evidence! This was made very clear just two days before the jury trial when Tim Cone showed up at the jail and showed Appellant a video of the illegal search of his back pack! Never disclosing to Appellant the illegal Search of his Home; The pictures of the inside of his Home, or even the pictures of the Victim! Never disclosing to Appellant the fact that Nikkie Williams and her fellow Police Officers picked up the Actual Knife Appellant used only to pick the lock and took it with them! The Government, Prosecutors, Michael B. Lewis, Tim Cone, and the witnesses had at or about 5½ months to disclose this evidence to Appellant, but instead, deliberately with Malice aforethought Withheld all of this vital evidence! There is No Sound Trial Stradegy in Withholding this evidence from a Defendant. Even Alannas attempts to sign an affidavit of Non-prosecution, the recant recorded statement, her Notorized Affidavit. Michael B. Lewis's only visit to Appellant at the jail, he told Appellant that the State (Tanya Reed) was offering 12 years for a plea of guilty! If the Appellant refused, the State was going to come at him with both barrels! Hence, the Two 60 year sentences. This after, Appellant was Locked up in a Solitary Cell for months, beaten by guards, denied medical treatment, and all the priviledges accorded other prisoners! Perry even filed a Prisoners Civil Rights

See Tim Cones letter Exhibit# 22A        1 of 2 Defendants letters Exhibits# 22 B,C,D,E

Suit! Appellant had a Fundamental Right to Discovery and Due Process and Due Course of Law (One of the minimum constituents without which a thing or a system would not be what it is, The American Judicial System) Although it would be impractical to recite the entire Standing Pre-Trial Order from the 188th District Court, Appellant will recite a portion of it, and the entire document will be included as an exhibit #8. As soon as practicable after the appointment or retention of Counsel, the State shall provide defense counsel with: Lets jump to #2 A copy of all affidavits for the issuance of all search and/or arrest warrants for the Defendant or which resulted in the charges to the defendant or evidence to be used against the defendant or probable cause affidavits if the arrest was without a Warrant. Note: Nikkie Williams Probable Cause Affidavit was Not even written until Long after Appellants illegal arrest and Subsequent illegal Search and Seizure and the Affidavit was based on hearsay and illegally obtained evidence! Evidence That was Not disclosed to the Defendant!

#5. All exculpatory statements (Alannas recant Statement and request to dismiss the erroneous charges) At least Five (5) days prior to the Trial Setting the State shall produce #12 "including demonstrative evidence" (Emphasis Supplied) So you See, Tanya Reed Violate the Courts very own Orders! Of course it was an abuse of discretion to violate your own Pre-Trial Orders! The Motion for a New Trial did Not raise this issue at all! Ineffective Appellate Counsel! The Appellant did raise all of this and More in his pro se Motion for New Trial, even ineffective assistance of Counsel! The specific grounds were apparent from the context, especially to the Court and the Prosecutor, who knew very well That They were in violation! Lew Dunn could have filed a formal Bill of Exception to include this and other exculpatory and impeachment evidence, so called Brady Materials! In the record of the Direct Appeal! #24 That any person connected with this prosecution, a. signed an affidavit of non prosecution, b. desired that Criminal charges against Defendant be dismissed! Indeed!!

Standing Pre-Trial Orders Exhibit #8          2 of 2

Ground: 38 Ineffective Assistance of Counsel / Abuse of Discretion / Prosecutorial Misconduct / Appeal Court Error / Denial of Fair Impartial Trial / Denial of Due Process / Denial of Due Course of Law / No Jurisdiction

Facts Supporting Ground: 38 The Crime scene investigation was Flawed from the very beginning, a Private Investigator would have proven and shown that the criminal investigation was compromised by the mishandling of evidence and the absence of procedures and analyses that should have been done! Even considering the aforesaid, There was absolutely No evidence of bodily injury whatsoever! Remember, Only a bodily-injury assault can be elevated to a Third degree Felony from a Misdemeanor. On a finding that the assault was committed by a household member and that the defendant was previously convicted of assault Family violence. Even considering the Fact that Appellant did Not cause bodily injury in the prior conviction. Nor did he stipulate to the prior conviction as the State erroneously claims in its brief and Appellants own Appellate Attorney counters in Appellates brief! Considering the aforesaid, since the evidence of bodily injury was completely lacking, leading to insufficient evidence, The District Court had No Jurisdiction to try that Count I Assault Family Violence! See, The Court of Appeals erroneous Opinion page 17. Foot Note: Only bodily injury assault can be elevated from a Misdemeanor to a Third degree Felony on a finding that the assault was committed by a household member and that the defendant was previously convicted of assault Family violence! On page 21 The Court erroneously claims that the prior conviction was a jurisdictional enhancement. Perry's previous conviction for assault Family violence raised the level of his assault against McKinney from a Class A Misdemeanor to a Third degree Felony. Because the prior conviction raised the level of the offense, it was a jurisdictional element of the offense that required a finding from the

Exhibit #32 Private Investigator pro Se                    1 of 2

Jury, Perry argues that the Trial Court erred in admitting, during the guilt/innocence phase, a judgment demonstrating that he was previously convicted for family violence. At Trial, Perry objected to the introduction of this previous judgment on the ground that it eviscerated his presumption of innocence! The Court erroneously states that Appellant also stipulated that he had committed the prior offense! No Perry did Not! Perry plead Not True! In fact, a Finger print expert was brought in to take Perry's finger prints in order to prove the prior judgment. In fact, the States brief and the Courts opinion are replete with false allegations and facts that were never proven at trial! Appellants Trial Attorney Not only moved for a Mistrial, but also a Motion for a Directed Verdict of Acquittal, citing insufficient evidence of bodily injury. In fact, it was Completely lacking! Tanya Reed even went so far as to tell the jury that the prior assault was against Perry's sister, who had just died! Even though the judge told the jury to disregard that remark, the skunk had been tossed into the jury box and the smell remained! Denying Perry a Fair and Impartial Trial! The Corner Stone of our judicial system! A Trial Courts decision to admit or exclude evidence is reviewed only for abuse of discretion! Appellant Maintains that it was the Judges duty to grant a Mistrial and report the Prosecutorial Misconduct to the proper authorities! As outlined in Appellants Petition for Discretionary Review! Furthermore, Appellants Trial Attorney, even his initial court appointed Attorney withheld exculpatory and impeachment evidence from their client the Appellant! Perry filed dozens of motions pro se in the Court, Notifying the Court of most of these violations right from the beginning! And throughout the judicial process! Appellant filed his motions for an Examining Trial and Private Investigator long before Nikkie Williams even filed her false Police Report! No Wonder they couldn't conduct any evidentiary hearing! No Police Report filed, yet! No bodily Injury!

Ground: 39  Police Misconduct / Prosecutorial Misconduct /
Perjured Testimony at Trial / Insufficient Evidence / Denied
Compulsory Process / Brady Violations

Facts Supporting Ground: 39    As according to the erroneous
police report filed some 21 days after Appellants arrest, which
is replete with false assertions and misleading facts that are not
based on the known facts, facts that were proven to be erroneous
at Trial on the Merits, and now newly discovered evidence that was
erroneously withheld by Prosecutors, the members of its investigative
Team, and even Court appointed Counsel! The States Star Witness,
The black girl, Oaijuntae, or as she's known on the Street, Tae Tae!
A prisoner in the Cell next to Appellant at Gregg County Jail while
he was waiting on Trial, Fredrick Garland informed Appellant
that he knows Chase Neal and Oaijuntae Johnson (Tae Tae) He
told Appellant that Chase is a Crack Dealer and Tae Tae is a
Crack Head, she goes from house to house to get high! And that
she steals pain pills from her mom and sells them on the Street! He
also tells Appellant that she (Tae Tae) has a history of Calling the
Police on People! (Pills of some kind Indeed!) Appellant file several
Complaint Affidavits with Crime Stoppers, (CID) Criminal Investigat-
ion Division of the Longview Police Department, explaining the Theft
of his debit card, bill fold, food stamp card, and all of his prescrip-
tion Narcotics! (Pills of some kind - Court of Appeals Opinion)
Appellant filed Writs in the Trial Court and even a writ of Mandamus
in the Appeals Court and letters to his Trial Attorney and Appellate
Attorney explaining all of these facts in meticulous detail even
providing his specialists names and addresses, his Medicaid I.D. No.

51042 3949, D.O.B. 10/22/1959, The specific Medications he takes, and even the approximate amount of Money stolen out of his account, at or about $2000.00, a Felony! Tim Lane refused to Subpoena Appellants Bank Records (Exhibit #22A) All of These Facts are Further evidence of "Modus Operandi" Whereas, get Appellant out of The Way by having him put in jail, Then Steal all The Money out of his bank account, And his Food Stamps and Narcotic prescriptions! (Pills of Some kind, Indeed) Appellants Medical records will prove That he has a Valid prescriptions! The Lying black girl, "Tae Tae" is the one That allegedly told Police Officer Nikkie Williams That Appellant Stated to wit! "Bitch, I'm fixing to Stab you! And, Bitch, open The door! You won't find The Word Bitch anywhere in The Police Report! But The Word Bitch was impressive on the jury! Tae Tae was caught lying on the witness Stand Several Times, but Was Not Charged with perjury, Why Not? Appellants serving 120 years in prison behind a bunch of perjury! Tanya Reed knew all along That The Police and the witnesses were Lying - Committing perjury! The Alleged victim and her Grand Mother have both Submitted Sworn Notarized Affidavits That prove The Police filed a False Police Report and Manafactured Evidence! That The Prosecutors use of a Demonstrative Knife at Trial was Not only Frivolous, but erroneous! The Police intentionally omitted The illegal Search of Appellants Home, picking up "THE REAL KNIFE", and taking it with them, and all of The other Police Officers names! Who Were They? Nikkie Williams only refers to Wilma McKinney at Trial as The Old Woman! How disrespectful! She's an eye witness too, but you. I won't find her name in the Police Report or Probable Cause Affidavit.

Ground: 4 @ Ineffective Assistance of Counsel / Denial of Compulsary Process / Denial of Right to Confrontation of adverse witnesses / Denial of Right to Face accusors / Lack of Investigation

Facts Supporting Ground: 4 @ Trial Counsel failed to subpoena numerous witnesses including, but not limited to, Wilma McKinney, the witness that ran off before Police arrived, all of the other Police officers and investigators that were at the scene of the alleged crime! The Appellant would have proved at Trial under Cross-examination that Police lacked Probable cause to Search the Appellant and his home, not Just his back pack! It would also have been proven at Trial that while Police were Searching Appellants house without a Search Warrant, They picked up the actual knife Appellant used to pick the lock on the bedroom door and took it with them, never disclosing this Brady Violation, Only later to erroneously claim They found the knife in Appellants back pack! Unbelievable! Appellate Counsel erroneously and ingenuously claims that the knife Police found in Appellants back pack exists Somewhere in the Police property room or the exhibit room in the District Attorneys Office! Appellant asserts and avers that there was never a knife in his back pack! The Knife they're all referring to came from the inside of Appellants Home! Without a Search Warrant, No Chain of Custody - Illegal Search and Seizure - Contaminated Crime Scene! As a Matter of Fact, You can search the record in vain and you will not see the names of any other Police Officer, aside from Nikkie Williams, like rats from a Sinking Ship, They all vanished! Why? Where are They? Failed to investigate by using an investigator to interview witnesses instead of personally interviewing witnesses and/or failing to interview any witness period! Where the defendant did not show counsel would have learned more helpful information Than his investigator did, provided

6 of 2

of course, counsel hired a private investigator, either Trial or Appellate Counsel! Applicant Maintains that he has made a Prima Facia showing That the witnesses would have offered helpful information and would have been available to testify at Trial! As a matter of fact, the eye witness, Mrs. Wilma Mckinney, did in fact testify at the Punishment phase of Trial, but prevented from testifying at guilt/innocence stage of Trial, the results of the Trial would have been different, Tim Cone told Mrs. Wilma Mckinney Not to engage the jury! In fact, Mrs. Mckinney had No idea That Police and Prosecutors were covering up the illegal search and seizure and The real Knife! Tim Cone knew all along but did Not inform the Appellant or his Mother, Wilma Mckinney! Appellant was blind sided at Trial with all of This! Sound Trial Stradegy? To with hold Mitigating and exculpatory evidence from your own client! To prevent an eye witness from testifying at Trial? Where is the presedence That says this is authorized? In fact, Tim Cone had the pictures of the inside of Appellants Home the entire Time before Trial, never disclosing this fact to Appellant, period! Tim Cone withheld the Tape recorded recant statement by the alleged victim, Alanna Mckinney. Also, the fact That Wilma Mckinney told him about the Police picking up the actual Knife and taking it with Them! Mrs. Mckinney had No idea That Tim Cone never told Appellant about The actual Knife! Trial Counsel Tried to convince Appellant That Police found the actual Knife he used to pick the lock on the door in his back pack! When he knew all along That That was the wrong Knife! The proof is irrefutable! Just look at grounds 1 Through pages 1 to 3 in Reply brief! Appellant does Not make These allegations lightly, The proof is irrefutable! The Appellant was also entitled to a defensive Theory in the Courts charge, the record is replete with evidence of The prior assault on his person by the two witnesses and the victim said she assaulted her uncle First!

Ground: 41  Ineffective Assistance of Counsel/Charge Error/
Prosecutorial Misconduct/Abuse of Discretion/Defensive Theory


Facts Supporting ground. 41  Post-conviction habeas corpus relief
granted for ineffective assistance of Counsel where, inter alia, State
introduced extraneous acts by defendant and Trial Counsel failed
to request either an instruction on the burden of proof or limiting
instruction regarding That evidence, Trial Counsels conduct fell below
an objective Standard of reasonableness. Trial Court would have been
required to give the instructions had counsel requested Them, given the
facts of the case at bar. Failure of the court to give the instruction is
an abuse of discretion, since the instruction is Mandatory. (Prior Con-
victs/Assault Family Violence, Illegal Search and Seizure, Demonstrative Evidence)
Therefore, Trials Counsels performance was deficient for failing to re-
quest either an instruction on the burden of proof or limiting instr-
uction regarding the extraneous act evidence admitted at defendants
Trial (In post-conviction habeas application, court considered Affidavit of
Trial Counsel, which stated failure to request Those instructions was not
sound Trial Strategy, but was result of oversight) To be sure, Appellate
Counsel in the case at bar, failed to include in Motion For New Trial, inter
alia, Ineffective Assistance of Counsel whereas, Trim Lane could have been
Subpoenaed to explain his lack of investigation and failure to request
Courts Charge instruction on several key issues, Why he failed to make
The proper objections in order to preserve error for Direct Appellate Review
but instead leaving the burden of proof on the Appellant Who's serving
a 120 years in a Maximum Security Prison with a Woefully inadequate
Law Library. Since the Ground of Ineffective Assistance of Counsel
was not exhausted on Direct Appeal Applicant is entitled to relief on
1 of 2.

review pursuant to a Post-Conviction Writ of Habeas Corpus. Furthermore, Applicant received ineffective assistance of Counsel on Appeal whereas, The Sixth Court of Appeals states that Counsel failed to include in Motion For New Trial, ineffective assistance of Counsel, and the grounds of error on direct appeal do not comport with the objections made at Trial, inter alia, Illegal Search and Seizure, of which Applicant raised the aforesaid grounds and more in his pro se Motion For New Trial, of which should be in all things available for Appellate review.

Because charge did not contain the appropriate burden of proof for the extraneous act evidence, evidence, and evidence obtained without a valid Search Warrant or Probable Cause, it was reasonable to presume that Jury did not necessarily find beyond a reasonable doubt that extraneous acts were committed by the defendant and that the evidence, demonstrative or otherwise, was obtained by legal means before using that evidence against him. In light of the evidence presented by both the state and defense, Court concluded the defense was prejudiced because the jury did not receive instructions on burden of proof or limiting instructions for the extraneous acts or the illegal Search and Seizure. Or for that matter, the defensive theory 'Supra!'. Defense was prejudiced because the charged offense was similar in nature to the extraneous acts (AFV)(Dead Sister) and the extraneous acts were likely considered as direct evidence of defendants guilt. Also, his chances for being convicted only of a lessor-included offense were severely diminished, even considering the Court refused to include the lessor-included offense instruction in Courts charge! The harm was sufficiently egregious to undermine confidence in the outcome of the Trial. There was a reasonable probability that, but for the error committed by both appointed Trial counsel and Appellate Counsel the results of Trial, and the Appeal would have been different. Applicant is entitled to relief.

2 of 2

Ground: 42 Ineffective Assistance of Counsel / Charge Errors / Denial of Fair and Impartial Trial / Ineffective Assistance of Counsel on Direct Appeal / Abuse of Discretion

Facts Supporting Ground: 42 In the usual case, an Appellant, in order to obtain a reversal of his conviction on the ground of ineffective assistance of counsel, must demonstrate both deficient performance and prejudice. That is, he must demonstrate that; (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) There is a reasonable probability that, but for counsels unprofessional errors, the results of the proceedings would have been different. However, if an Appellant can demonstrate that defense counsel entirely failed to subject the prosecutions case to meaningful adverserial testing, so that there was a Constructive denial of the assistance of counsel altogether, then prejudice is legally presumed. This holds true for Appellate counsel as well. In the case at bar, the Appellate court asserts that Appellants grounds on direct appeal do not comport with the objections made at trial, thereby precluding appellate court review whereas, error was not properly preserved, Nor argued properly on appeal. On habeas corpus action, cause remanded to habeas court for evidentiary hearing on issue of whether appellate counsel rendered effective assistance on matter of informing defendant of rights regarding possibility of review by Court of Criminal appeals after decision of court of appeals. To be sure, Applicants Appellate counsel informed him in numerous letters that the reason he did not include numerous grounds in Appellates brief, inter alia, illegal search and seizure and ineffective assistance of counsel, and in motion for new trial, was risk of no review on habeas because the grounds were already exhausted on direct review. See Lew Dunns letters to Appellant included as exhibits. Notwithstanding all the

Charge errors, but Trial Counsel failed to make an adequate investigation into avenues of defense and the circumstances of the case. The same could be argued about Appellate Counsel. Trial Counsel has the obligation and responsibility to explore all avenues leading to facts relevant to guilt and degree of guilt or penalty. As a result, Trial Counsel was not adequately prepared for Trial, and defendant received ineffective assistance of Counsel at Trial and on Direct Appeal. Whereas, neither Counsel hired a Private Investigator, in fact, Applicant discovered New facts and evidence from his Prison Cell. Trial Counsel referred to Appellant at Trial as a Thorn in Governments Side. Counsel described defendant as fatalistic and uncooperative. Counsel failed to uncover and present evidence of defendants mental health or mental impairment and physical impairment, his family background. Failed to interview witnesses or his Doctors (Perry was in possession of Pills of some kind) Courts Opinion. Prescriptions from Perry's Speciallist, for his disabilities, all Legal. Defendant may be a Thorn in Governments side, but that does not obviate the need for defense Counsel or Appellate Counsel to conduct some sort of Mitigation investigation. Appellate Counsel refused to raise ineffective assistance of Counsel on Direct Appeal or in Motion for New Trial, or at least Thats what Appellant was told by Appellate Counsel, However, in complete Contrast, Appellate Counsel raised ineffective assistance of Counsel on Direct Appeal, but not in Motion for New Trial. However, There is no Merit to states Contention That Claim of ineffective assistance of Counsel must be preserved in Trial Court by hearing on Motion for New Trial, even Considering the fact that the Applicant raised ineffective assistance of Counsel in his Pro Se Motion for New Trial. Applicant was bench Warranted back to Trial Court for a hearing on his pro se Motion for New Trial There by preserving error for Appellate review.

2 of 2

Ground: 43   Attorney Misconduct/Prosecutorial Misconduct/
Judicial Misconduct/Failure To Report this Conduct

Facts Supporting ground: 43

Applicant avers that the Prosecutor Tanya Louise Reed, Zan Colson Brown, and including their boss, The Honorable Carl Dorrough, The Criminal District Attorney, all violated the State Bar Rules! That would of course Tacitly prove That Tim Cone, Michael B. Lewis, and Lew Dunn were all just as culpable, scilicet, failed to maintain the integrity of the profession, whereas, a Lawyer having knowledge That another Lawyer has committed a violation of the applicable rules of professional conduct That raises a Substantial question as to that Lawyers honesty, Trustworthyness, or Fitness as a Lawyer in other respects, shall inform the appropriate disciplinary authorities, And that's exactly what the Applicant did, but no one else, not even the Judge! Again, notwithstanding all of the Brady violations and subterfuges in misdirection, The Prosecutor committed misconduct and violated the state bar rules by using the Jailhouse phone call, and the rules governing such a phone call long before Trial; blatantly failed to keep the agreement with counsel on important discovery, and was less than candid with the Trial Court and Court of Appeals in her reasons for doing so! This Tacitly concedes that the Judges also committed misconduct by failing to report all of this misconduct to the proper authorities as according to the Code of Judicial Conduct. In other words, Applicant has the rights to a Fair and impartial Trial free from Prosecutorial bad faith and Attorney misconduct even Judicial misconduct, guaranteed and protected by the fourteenth Amendment Due Process Clause of the U.S. Constitution and Due Course of Law of the Texas Constitution!

Ground: 44 Ineffective Assistance of Counsel / Abuse of Discretion / Denial of Substantial Due Process / Brady Violations / Denial of Compulsory Process and The right of Confrontation

Facts Supporting Ground: 44 Just like his Court appointed Appellate Counsel, Perry, the Appellant combines these issues addressed in this ground for argument for purposes of judicial economy since they arise out of the same factual and legal context. Several issues in this Appeal concern ineffective assistance of Counsel at Trial and on Appeal. First of all, Appellant was initially Court appointed Mr. Michael B. Lewis, see a letter written to Mr. Lewis on November 13, 2012 by Appellant. Whereas, Mr. Lewis never contacted The Appellant (lack of communication violation of State Bar Rules) wrote this letter marked as exhibit #10, in an effort to obtain an Examining Trial and appointment of a Private Investigator. Contrary to what Tim Cones states in his letter exhibit #11, page 1, paragraph 2, Appellant did timely file said motions and in the proper venue, copies of these motions will be included as exhibits. Appellant made good on his threat to file a writ of mandamus in the Texas Court of Criminal Appeals Writ No. WR-62,970-05 Filed Date 12/19/2012 Appellant requested that the Court, inter alia, issue an order to direct the Courts to file and issue a ruling on his Writs, however, the Court denied the writ without written order. The Appellant maintains that the record is firmly established that he did everything in his power to assure his due process rights were protected. Appellant was entitled to effective assistance of Counsel and his right to have an Examining Trial, before arraignment and before Trial. At the Examining Trial, Appellant would have found out that Police failed to file a report, whereas, the Police report was not printed until November 5, 2012, 21 days after Appellants erroneous arrest. Further, Appellant would have discovered that the Police also searched his Home without a Search Warrant and that Officer Nikkie Williams and her fellow Police officer (No names provided ever) picked up the actual knife that was used to pick the bedroom door lock, that was dropped by Appellant and took it with them. Appellant and the Court would have discovered that

Exhibit #32 Private Investigator fNose    1 of 2 Exhibits #30 +31 Examining Trial

The Police Searched Appellants Home without a valid Search Warrant and removed exculpatory and impeachment Evidence without filing a chain of custody affidavit. Would have obtained all the other Police Officers names and their testimony! If Appellant would have likewise obtained a Private Investigator, he would have discovered that William McKinney, Appellants Mother, did not give an informed consent to Search and neither did her niece, the purported victim. That Police picked up the Knife used to pick the lock and took it with them, never having disclosed this important evidence! In fact, Police Officer Williams filed a false police report. None of this exculpatory or impeachment evidence is even stated on her dubious report. Williams had No probable cause, and/or a valid Search Warrant in order to arrest/detain Appellant and search his person, personal property, or his home! There was never any proof that Appellant committed a crime, just hearsay statements! The Supreme Court has long recognized that when a state brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that a defendant has a fair opportunity to present his defense! Meaningful access to justice has been a consistent theme of these cases. We recognized long ago that mere access to the Courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense! That fundamental Fairness entitles indigent defendants to adequate opportunity to present their claims fairly within the adversary System! Lew Dunn failed to hire a Private Investigator as well! Lew Dunn failed to include ineffective assistance of Counsel in Motion for New Trial! However, Appellant raised ineffective assistance of Counsel in his Pro Se Motion for a New Trial and illegal Search & Seizure! The Court issued a ruling preserving the grounds in Pettys Motion for Appellate review, see Pettys Motion for New Trial included herein as exhibit #24, and Addendum to Motion for New Trial #25

2 of 2

Ground: 45 The Trial Court Reversibly Erred in Permitting The State to Allow Testimony Under an Exception to The Hearsay Rule / The Court of Appeals Analysis of The Exception to the Hearsay Rule is erroneous due to Police Misconduct and Prosecutorial Misconduct / Ineffective Assistance of Counsel / Abuse of Discretion / Denied Compulsory Process ' Facts Supporting Ground: 45 Appellants Trial Attorney objected at Trial Thereby preserving error! The Judge abused his discretion by allowing The State to elicit Testimony from Officer Williams, The very same Police officer That Filed a false Police report and not until 21 days after the arrest of Appellant, November 5, 2012! She left out The illegal search of Appellants Home, picking up The actual Knife and taking it with her, Never disclosing This vital exculpatory and impeachment evidence! Or even the names of The other Police officers involved! Nor did Williams get a recorded statement from the victim or any witnesses as required by Statute! The Court of Appeals erroneously omits That fact from Their dubious opinion! Perry Submitted a Writ of Mandamus with 33 exhibits, including Two Notorized Sworn Affidavits from Witnesses Who state That Alanna Was Not Hysterical! The record at Trial Was Not Complete Due to Many Brady and Constitutional Violations! Wilma McKinney also states in her Affidavit That Alanna Was Not Hysterical, That she had No injuries, That She Was of sound Mind! Wilma McKinney Was prevented from Testifying at The Guilt Innocence phase of Trial! She also States That There was an illegal Search and Seizure! All of the evidence, including The hearsay statements are inadmissible under The exclusionary rule! There Was Not an excited utterance! Alanna McKinney First Spoke with Mrs. Johnson during The Telephone call; she had ample Time to reflect and discuss the case with others, even her Grandmother, Wilma McKinney! The exception is based on The assumption That the declarant is not, at The Time of the statement, capable of the

(See Perry's exhibit #29) (See also 911 phone call Transcript exhibit #4A)

1 of 2

Kind of reflection that would enable him to fabricate information. In fact, and under oath, Alanna Mckinney contradicted the officers recollection about their conversations and stated that she was not hurt physically, she was, in her own words, (emphasis added) mad and upset and emotionally hurt. It was an abuse of discretion for the trial court to allow the testimony. Trial Attorney, Tim Cone, Police, and Prosecutors knew long before the erroneous trial about the illegal search and seizure of Appellants person, property, and Home, but failed to disclose this information to Perry before trial, or even after trial. Even Appellants initial Court appointed Counsel, Michael B. Lewis deliberately withheld this important evidence as well.

Appellant contends that the utterances do not qualify under the test for the hearsay exceptions of either subsections as according to the Rules. There was harmful error and Appellant did not receive a fair and impartial trial. In fact, there was no recorded statements from any witnesses. The Court of Criminal Appeals has approached the question in the following way; In the case of erroneously admitted evidence, we have said that the Appellate Court should consider everything in the record, including any testimony or physical evidence admitted for the jurys consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the States theory and any defensive theories (emphasis added) closing arguments (Tim Cone telling the jury to convict his client.) voir dire, and whether the State emphasized the error. Harm comes from the use thereafter made by the State. Particularly during final argument. Tim Cone failed to request a defensive theory in Courts charge and withheld the fact that Alanna assaulted her uncle, the Appellant first and Appellant only used self defense to the degree necessary to protect himself.
(See, Wilmon Mckinney Affidavit Exhibit #3)(See Alanna Mckinneys Affidavit Exhibits #1A.1B)

P. 2 of 2

Ground: 46 There was Reversible Error when the Trial Court Refused To Include Appellants Requested Charges on Lesser Included Offenses In the Courts Charge on Guilt/Innocence/Abuse of Discretion/ Prosecutorial Misconduct/Brady Violations/Ineffective Counsel

Facts Supporting Ground: 46 In his ninth issue, Appellant avers that the judge should have instructed the jury to consider a Lesser Included offense of assault by offensive contact, which is simple assault by contact, both misdemeanors. These offenses, simple assault and assault by contact in an offensive manner, are the two offenses mentioned by Trial Counsel (as he argued for their inclusion in the charge. (5 RR 226-227) An offense is a lesser-included offense if it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. The states analysis does not hold up. The lesser-included offenses have nothing to do with a prior assault family violence instruction/conviction. You would first have to prove bodily injury in order to elevate the AFV to a 3rd degree felony, otherwise, the subsequent AFV is only a misdemeanor. Since there was not a scintilla of evidence or proof that Appellant caused Alauna any injury or pain, then the jury could only find Appellant guilty of simple assault. There was also no evidence that Alauna was placed in fear of being stabbed with the knife, but there was evidence that she was offended-mad and upset. Emotionally hurt-Not physically hurt. Remember, the state abandoned paragraph A of Count II bodily injury by hitting Alauna with his hand because the state failed to prove bodily injury, it was completely lacking. Alauna contradicted the officers recollections about their conversations and stated under oath that she was not hurt physically; she was, in her own words, mad and upset and emotionally hurt, hence, Offended (In fact, thats what Applicant is referred to as, an Offender.)

1 of 2

The State uses subterfuge and hearsay, in order to convince the jury that the crime happened just exactly like they allege in the indictment. Tanya Reed used coercion and intimidation to manipulate Alanna's testimony at trial knowing full and well that Alanna was under indictment and facing serious felony charges, even considering the pending felony charges. Alanna tried to tell the truth! That she was not injured by her uncle, the Applicant. That he did not point a knife in her direction! That she initiated contact by grabbing and shoving the Applicant! If Wilma McKinney, the other eye witness would have been permitted to testify at guilt/innocence phase of trial, she would have testified that her granddaughter was not hysterical, that she had no injuries (emphasis added) The State gives false testimony in its brief when they state that none of the witnesses speculated on his intent or knowledge! There was no proof of his culpable mental state! Applicant avers that witness Chase Neal testified under oath that Applicant didn't know what he wanted to do hisself. IF "evidence from any source" raises the issue of less-included offense, a charge on that lesser offense must be included in the jury charge, whether the evidence is introduced by the State or by the defense and whether it is strong, weak, impeached, or contradicted! For Count I, there is plenty of evidence that in struggling with Alanna, Applicant did not inflict bodily injury. See, Alanna's testimony (VRR145ff) The only other person supposedly struck by Applicant, Dajontae Johnson, testified that she was not hurt and felt no pain (VRR41, 58-59) If there was assault involved there, it raised the issue of a Class C assault by contact. That evidence is clearly in the record. Count II; Three witnesses - Alanna, Ms. Ayres, and Mr. Neal - testified Appellant did not threaten Alanna with a knife when he came in the door, See, Alanna's sworn affidavit! There is also the complication concerning THE KNIFE (see second issue)(Reply brief p.1-3)(Also see Wilma McKinney's sworn affidavit) There is no evidence that THE KNIFE is a deadly weapon! IF not, then the alleged offense is a class A misdemeanor! Appellant was entitled to lesser-charge instruction!

20 of 2

Ground: 47 Abuse of Discretion / Prosecutorial Misconduct / The Trial Court Erred In Not Granting a Mistrial When The State Referred to a Prior Conviction For Assault Family Violence During Opening Statement Not Element of Offense

Facts Supporting Ground: 47 During The Trial on guilt/innocence The Trial Court permitted The State to offer evidence of a prior Conviction of Appellant for The offense of assault, Family Violence (VRR 218), States Exhibit #17, judgment of Conviction in Cause No. 2011-1557. Appellant objected to The use of The prior conviction at several points during The erroneous Trial. Mistrial Was Improperly Denied! He objected (1) prior to the start of voir dire (IVRR7-8), (2) During The states opening statement When the states counsel referred to the conviction and a Mistrial Was erroneously Denied (VRR 24-25), and When The conviction was placed into evidence (VRR 218); Moreover, several Times in Final argument The State referred to The prior conviction in arguing for a finding of guilt; (VRR 236, 237) and (238) The controlling language in The statute is This: (if) it is shown on The Trial of The offense That The defendant has been previously convicted of an offense. (Emphasis Supplied) The offense is not Couched in Terms of, a person commits an offense. The Court of Criminal Appeals analyzed The differences in such matters Which found That the first phrase meant that the punishment was enhanced, but did not elevate the offense to a higher grade of offense. The lesson to be drawn from This is that The evidence That would enhance punishment is to be left to the punishment phase and Not introduced at guilt/innocence. This did not happen at Appellants Trial. Instead The state placed The introduction of The prior conviction at The very summit of its evidence, introducing it at The close and resting. This served as book-end in its references to States Exhibit #17, since earlier in The Trial The State referred to The prior conviction during voir dire and its opening statement,

(Note: These issues are grouped together and argued Together for The sake of judicial economy and because They arise from a common factual basis.) 1 of 2

It has been held that a prior conviction for assault Family Violence is a sentence enhancement, not an element of the offense! (Emphasis added) The defendant was denied a fair and impartial trial whereas, the admission of States exhibit #17 necessarily tainted the trial by bringing before the jury another conviction for assault Family Violence during guilt/innocence, so that Defendant/Appellant was not tried for the offense for which he was accused, but tried on "general principles", something abhorrent to Fourteenth Amendment Due Process of Law and also against defendants/Appellants Due Course of Law Rights under the Texas Constitution! As Trial Counsel contended, and now the habeas Corpus Applicant, it violated the presumption of innocence! The prior conviction was a major part of the states case at guilt/innocence. Despite the Due Process considerations, the states counsel even placed before the jury certain facts from the prior conviction when, during opening statement, States Counsel told the jury, We're also going to prove to you that (Appellant) has a prior conviction, And during that I think that you've going to hear that the prior was against his Sister." Okay? So keep that in Mind when you go back! The jury was instructed to disregard; however, Counsels motion for Mistrial was overruled (VRR 24-25) That was made up out of the whole cloth by the states counsel, unfairly injecting that into the jury's thinking and gaining their sympathies and bias in favor of the state from the word go! After all, it was brought out that the sister, Alannas Unom, had just died an untimely death! Despite the Trial Courts instruction to disregard, the states counsel came back to the prior conviction with intensity during final argument, emphasizing it three times within about three pages of the record (VRR 236, 237, 238) Heavy as an engine block, sharp as a razor, like the mouth of an alligator! Apparently, any instruction to disregard was futile- especially when the nefarious Tonya Reed wrapped up her case/evidence by placing the conviction before the jury as the crowning piece of its case! The jury saw him as already guilty of Family Violence, must be guilty this time too!

243

Ground: 48     Abuse of Discretion/ Ineffective Assistance of Counsel at Trial and on Direct Appeal/ Court of Appeals Error/ Erroneous requirement for Appellant to pay Court Costs and Fines, but Not Attorney Fees! Go figure!

Facts Supporting Ground: 48. See, Court of Appeals Memorandum Opinion Whereas, "11. Attorneys fees Must be removed from the judgment" (p. 36) A claim of insufficient evidence to support Court Costs and court-appointed attorney fees is reviewable on direct appeal. Perry complains of the Trial Courts and now the Court of Appeals assessment of the $10,000.00 fines on each count and order to pay $324.00 Court Costs and $5,100.00 in attorney fees. The state concedes that Perry is indigent and that the record has no finding by the Trial Court that he had financial resources or was otherwise able to pay the "appointed attorney fees" (emphasis supplied) The Court leaves off Court Costs and Fines from this statement. The Court of Appeals goes on to say that "We have previously held that "Court Costs" may be recovered from indigent defendants. Additionally, while the Texas Code of Criminal Procedures requires a Trial Court to determine whether a defendant has financial resources that enable him or her to offset in part or in whole the cost of "appointed Counsel" (emphasis added), the legislature has not preconditioned the collection of fines on a defendant's ability to pay. A Trial Court has the authority to order the reimbursement of court-appointed attorney fees only if the Court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs." The defendant's financial resources and ability to pay are explicit "critical" elements in the Trial Courts determination of the propriety of ordering reimbursements of costs and fees of legal services provided. Here, the assessment of attorney fees was erroneous and should be removed. And, Again, Applicant Perry would point out that the Court excludes the excessive fines of $20,000.00 and Court Costs of $324.00! We sustain Perry's last point of

1 of 2

error and modify the Trial Courts judgment by deleting the assessment of attorneys fees! And the Applicant avers that the Court of Appeals opinion on this point of error is erroneous whereas, if the evidence proved that Applicant was indigent and unable to offset in part or in whole the costs of the legal services provided, including any expenses and costs! The state claims that there is no support, however to set aside a jurys decision as to the fine! However, Perry asserts that in complete contrast to this statement, and on the very same page of the States brief, page 61. The state says to wit: Appellant argues that because Perry is indigent, he should not have been charged attorney fees or court costs! There is indeed no evidence that Perry had the means to pay the attorney fees or court costs! Applicant further avers that his Appellate Attorney did not object to this erroneous assessment or counter it in the Reply Brief or raise the issue in Motion for New Trial! Of course, why would he, he got his $5000.00! The Court and state can always be reimbursed by tax payers! Applicant further asserts that if by some miracle he lives to be 84 years old, and he actually makes his first Parole in <u>30 years</u>! And as according to the Courts Judgment, Perry will be required to present himself at the Gregg County Court house and set up a payment plan in order to pay off the <u>$20,384.00</u> fines and court costs! Unbelievable! Of course, Perry can devide up his Social Security check and food stamps, provided of course, the court will allow Perry to keep enough money to pay for his geriatric medications and viagra! Ha!

Excessive Fines Clause of Eighth Amendment applies to excessive civil fines since they are punitive in nature, Surely the same can be said of criminal fines, and that they are, indeed, punitive and excessive when the subject is indigent. And serving 180 years in prison for crimes he did not commit! Cruel and unusual Punishment.

Ground: 49  Juxtaposition / No Arrest Warrant / No Probable Cause-
Leading To- Denial of Due Process / No Due Course of Law / False
Imprisonment / Terry Stop / Police Misconduct / Official Oppression
(Terry Stop)

Grounds and Facts in Support Thereof: 49

Appellant was walking down his driveway; minding his own business,
in a Small Town in America (USA), The Land of The Free! However,
Police Officer, Nikkie Williams, upon arrival at Appellants Home,
saw Appellant walking down his driveway, as apposed to running
like he just committed a Crime! Without adducing, and or acquiring
any Facts Whatsoever That Appellant had committed a Crime, Police
Officer Nikkie Williams, restrained the Liberty of Appellant by
First hand cuffing his hands behind his back, Then Search his person
and removing items from his pockets, Then placing him in the back
Seat of her Police Cruiser with the doors Locked! Furthermore, The
Police Officer Never read Appellant his rights (Miranda Warnings)!
At The bare Minimum, Police are required to either have a Valid arrest
Warrant and Probable cause, barring any exigent Circumstances, of
which there were none evident when Police arrived at the scene,
before they can arrest a Suspect-restrain him or her of their Liberty!
Whereas, Police cannot Arbitrarily restrain the Liberty of an American
Citizen without Just Cause, based Solely on Supposition, because they
are a "Thorn in The side of Government"

Fruit of The Poisonous Tree!

1 of 1

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

**OATH BEFORE A NOTARY PUBLIC**

STATE OF TEXAS

COUNTY OF _____

_____, being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS _____ DAY OF _____, 20 _____.

_____
Signature of Notary Public

16

Rev. 01/14/14

## PETITIONER'S INFORMATION

(Applicant) Petitioner's printed name: Michael Dean Perry

State bar number, if applicable: _____

Address: Ellis Unit

1697 Fm 980

Huntsville Tx 77343

Telephone: _____

Fax: _____

## INMATE'S DECLARATION

I, Michael Dean Perry, am the (applicant) / petitioner (circle one) and being presently incarcerated in Texas Department Of Criminal Justice, declare under penalty of perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on May 28, 2015

Michael Dean Perry
Signature of Applicant / Petitioner (circle one)

17

**PETITIONER'S INFORMATION**

*App(icant)*

Petitioner's printed name: Michael Dean Perry

State bar number, if applicable: _____

Address: Ellis Unit

1697 FM 980

Huntsville, Tx 77343

Telephone: _____

Fax: _____

**INMATE'S DECLARATION**

I, Michael Dean Perry _____, am the applicant / petitioner (circle one) and being presently incarcerated in Texas Department of Criminal Justice, declare under penalty of perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on May 26 , 20 15

Michael Dean Perry

Signature of Applicant / Petitioner (circle one)

17

Rev. 01/14/14

**PETITIONER'S INFORMATION**

*[Applicant]*

Petitioner's printed name: _Michael Dean Perry_

Address: _Ellis Unit_

_1697 Fm 980_

_Huntsville, Tx 77343_

Telephone: _____

Fax: _____

Signed on _May 20_, 20 _15_

_Michael Dean Perry_

Signature of Petitioner

18

Rev. 01/14/14



# MAILING BOX
## OR DOMESTIC AND INTERNATIC

PRIORITY MAIL
POSTAGE REQUIRED

FROM: Michael Dean Perry TDCJNo. 1878827
Ellis Unit
1697 FM 980
Huntsville Tx 77343

TO:
Clerk Abel Acosta
Court of Criminal Appeals
P.O. Box 12308, Capitol Station
Austin, Texas 78711

Privileged Inmate Mail
Not Inspected by Texas
Department of Criminal
Justice - Institutional
Division



**UNITED STATES**

VISIT US AT USPS.COM®